135

**NIGHT BOX**
**FILED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

SEP 2 2 2003

CLARENCE ~. ~.... /X
**CLERK, USDC / SDFL / MIA**

RIZALYN BAUTISTA,
etc., et al.        CASE NO.: 03-21642-CIV-SEITZ/BANDSTRA
PAUL PERALTA,       CASE NO.: 03-21643-CIV-SEITZ/BANDSTRA
RAYMOND LOVINO,     CASE NO.: 03-21644-CIV-SEITZ/BANDSTRA
RONALDO MARCELINO,  CASE NO.: 03-21645-CIV-SEITZ/BANDSTRA
ROLANDO TEJERO,     CASE NO.: 03-21646-CIV-SEITZ/BANDSTRA
ABDI COMEDIA,       CASE NO.: 03-21647-CIV-SEITZ/BANDSTRA
CRISTINA L. VALENZUELA,
etc., et al.,       CASE NO.: 03-21648-CIV-SEITZ/BANDSTRA
MARILEN S. BERNAL,  CASE NO.: 03-21649-CIV-SEITZ/BANDSTRA
etc., et al.,
WILLY I. VILLANUEVA,
etc., et al.        CASE NO.: 03-21650-CIV-SEITZ/BANDSTRA
MARIA GRACIA L. ROSA,
etc., et al.,       CASE NO.: 03-21651-CIV-SEITZ/BANDSTRA

                Plaintiff(s),

vs.

NORWEGIAN CRUISE LINE, LTD.,
and STAR CRUISES,

                Defendant(s).
_____ /

**COPY**

                    200 South Biscayne Boulevard
                    Miami, Florida
                    September 12, 2003
                    Friday, 12:00 p.m.

                    VOLUME II

            VIDEOTAPED DEPOSITION OF KJELL HJARTNES
                    (Continued)

        Taken before Jan E. Reyna, Registered
Professional Reporter and Notary Public in and for the
State of Florida at Large, pursuant to Notice of Taking
Deposition filed in the above cause.

                -    -    -

    KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

12:21:38

APPEARANCES:

2

        THE HUGGETT LAWFIRM,
3       By:  WILLIAM HUGGETT, ESQUIRE,
        66 West Flagler Street, Suite 400
4       Miami, Florida  33130
        Appearing on behalf of the Plaintiff(s).

5

        MASE & GASSENHEIMER, P.A.,
6       By:  CURTIS MASE, ESQUIRE, and
             DAN FARKUS, ESQUIRE,
7       80 Southwest 8th Street, Suite 2700
        Miami, Florida  33131
8       Appearing on behalf of the Defendant(s).

9  ALSO PRESENT:

10       MIKE MASS, Videographer,
         Video for the Legal Profession

11

12              I N D E X

13  KJELL HJARTNES                         Page

14

15   DIRECT EXAMINATION (Continued)        138
     BY MR. HUGGETT

16

17

18

19              E X H I B I T S

20

21  Plaintiff's Composite Exhibit No. 2         3

22

23

24

25

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1  THEREUPON:

 2                    KJELL HJARTNES

 3  called as a witness on behalf of the Plaintiffs

 4  herein and, having been first duly sworn, was

 5  examined and testified as follows:                    12:21:41

 6           THE VIDEOGRAPHER:  Standby.  Coming up onto  12:21:41

 7      the video record.                                 12:21:43

 8           And we're on the video record, sir.          12:21:48

 9           MR. HUGGETT:  My name is Bill Huggett, and   12:21:52

10      today is September the 12, 2003.  We're here      12:21:54

11      continuing that depo of Kjell Hjartnes begun      12:21:59

12      yesterday, in the consolidated cases called       12:22:04

13      Bautista versus Norwegian Cruise Lines, and I'm   12:22:10

14      Bill Huggett for the plaintiff.                   12:22:14

15           MR. MACE:  I'm Curtis Mase on behalf of      12:22:16

16      Norwegian Cruise Lines and Star Cruises.  With    12:22:20

17      me is my partner, Dan Farkus, today.              12:22:21

18           MR. HUGGETT:  The court reporter is Jan      12:22:24

19      Reyna.                                            12:22:26

20           Are we ready?                                12:22:26

21           MR. MACE:  I believe so.                     12:22:27

22           Mr. Hjartnes, I'll remind you -- and I know  12:22:29

23      you know this -- you're still under oath.  This   12:22:32

24      is a continuation of yesterday's deposition.      12:22:33

25           THE WITNESS:  Yes, sir.                      12:22:36
```

```
 1              DIRECT EXAMINATION (Continued)
 2   BY MR. HUGGETT:                                    12:22:36
 3        Q.    I think we -- yesterday we went through 12:22:37
 4   these, a list on the Plaintiff's Renotice of Rule 30  12:22:39
 5   (b)(6), and I'll attach that to the deposition --  12:22:44
 6            MR. MASE:  That's fine.                   12:22:46
 7            MR. HUGGETT:  -- as Exhibit 2, before I   12:22:47
 8       forget.                                        12:22:48
 9            (The document referred to was thereupon
10       marked "Plaintiff's Exhibit No. 2 for
11       Identification," a copy was attached thereto.) 12:22:50
12   BY MR. HUGGETT:
13        Q.    Does NCL also own or operate a vessel   12:23:04
14   called Southward?                                  12:23:08
15        A.    No, we do not.                          12:23:10
16        Q.    Did you in the past?                    12:23:12
17        A.    Yes, we did.                            12:23:13
18        Q.    Was that in the '80s?  '86?            12:23:14
19        A.    I can't recall the exact year.          12:23:20
20        Q.    In the '80s?                            12:23:20
21        A.    I would say, yes.                       12:23:22
22        Q.    Okay.                                   12:23:25
23            THE COURT REPORTER:  Can you speak up?    12:23:25
24   BY MR. HUGGETT:
25        Q.    Yesterday we discussed somewhat about the 12:23:33
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

| | | |
|---|---|---|
| 1 | deck and engine crew of which certain of the deceased | 12:23:36 |
| 2 | claimants were in the deck and engine crew.  And I | 12:23:43 |
| 3 | think you voiced the opinion that they were in a | 12:23:47 |
| 4 | union called AMOSUP; do you recall that? | 12:23:49 |
| 5 | A.   Yes, I do. | 12:23:53 |
| 6 | Q.   Okay.  And our discussion showed that NCL | 12:23:56 |
| 7 | had paid certain -- AMOSUP certain dues or benefits | 12:23:59 |
| 8 | for them; is that correct? | 12:24:03 |
| 9 | MR. MASE:  Object to the form. | 12:24:05 |
| 10 | THE WITNESS:  Yes. | 12:24:05 |
| 11 | BY MR. HUGGETT: | |
| 12 | Q.   But that you didn't have any separate or | 12:24:06 |
| 13 | other evidence that they had ever joined that union | 12:24:09 |
| 14 | or were members of that; is that correct? | 12:24:14 |
| 15 | MR. MASE:  Object to the form.  Lack of | 12:24:16 |
| 16 | foundation, inadequate predicate, qualification | 12:24:19 |
| 17 | of the witness. | 12:24:23 |
| 18 | You can answer.  I'm stating these as legal | 12:24:23 |
| 19 | objections, Mr. Hjartnes. | 12:24:27 |
| 20 | THE WITNESS:  That's -- that's correct. | 12:24:28 |
| 21 | BY MR. HUGGETT: | |
| 22 | Q.   Okay.  So to summarize, the only direct | 12:24:29 |
| 23 | evidence or knowledge that you know of, that | 12:24:33 |
| 24 | indicates that they're a member of AMOSUP is the fact | 12:24:36 |
| 25 | that NCL pays AMOSUP some money for their benefits or | 12:24:41 |

```
 1   dues?                                                    12:24:47
 2          MR. MASE:  Objection to form, lack of             12:24:51
 3      qualification, predicate.                             12:24:52
 4          THE WITNESS:  I think they're a part of           12:24:54
 5      evidence, yes.                                        12:24:55
 6   BY MR. HUGGETT:
 7      Q.   Okay.  Now, the fact that NCL pays the           12:25:00
 8   AMOSUP outfit money does not make those people           12:25:06
 9   members, does it?                                        12:25:11
10          MR. MASE:  Objection to the form, lack of         12:25:12
11      qualification, calls for a legal conclusion,          12:25:14
12      inadequate foundation.                                12:25:18
13          THE WITNESS:  In my opinion, it does.             12:25:21
14   BY MR. HUGGETT:
15      Q.   Well, if -- if I were to pay dues for you        12:25:24
16   to the National Rifle Association, that wouldn't make    12:25:28
17   you necessarily a member of the National Rifle           12:25:30
18   Association, would it?                                   12:25:33
19          MR. MASE:  Objection to the form,                 12:25:34
20      argumentative, lack of qualification, calls for      12:25:35
21      a legal conclusion, inadequate foundation.            12:25:38
22          THE WITNESS:  I -- I don't know that.             12:25:40
23   BY MR. HUGGETT:
24      Q.   You don't know that.                             12:25:44
25          Okay.  Well, let's take another example.          12:25:46
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
1   If I were to pay dues for you to the communist party      12:25:48
2   of Cuba, and they were to accept the money, that          12:25:52
3   would not make you a member of the communist party of     12:25:54
4   Cuba, would it?                                            12:25:58
5           MR. MASE:  Same objection.                         12:25:59
6           THE WITNESS:  I don't know.                        12:26:00
7   BY MR. HUGGETT:
8       Q.   You wouldn't want to be a member of the           12:26:01
9   communist party of Cuba simply because I paid dues        12:26:04
10  for you?                                                   12:26:08
11          MR. MASE:  Same objection.  And I don't            12:26:08
12      actually believe he has to answer that.                12:26:10
13          THE WITNESS:  I don't really want to answer        12:26:12
14      that.                                                  12:26:14
15  BY MR. HUGGETT:
16      Q.   So the fact that NCL pays some money to           12:26:15
17  AMOSUP, is that your -- that is your basis for saying      12:26:25
18  that they're in the member -- they're in the union;       12:26:29
19  is that correct?                                           12:26:32
20          MR. MASE:  Objection to form, lack of              12:26:33
21      qualification, inadequate foundation.                  12:26:34
22          THE WITNESS:  Can you rephrase that                12:26:43
23      question, please?                                      12:26:44
24  BY MR. HUGGETT:
25      Q.   Yes.  Your basis for your statement that          12:26:46
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

```
 1   the deck and engine members of the deceased claimants      12:26:51
 2   were in this AMOSUP union is because NCL paid some          12:26:56
 3   money to AMOSUP for their benefits?                         12:27:01
 4           MR. MASE:  Same objection.                          12:27:05
 5           THE WITNESS:  No, not really.  I also -- I          12:27:09
 6      mean, I do have some knowledge of AMOSUP, and I          12:27:12
 7      do have knowledge of Filipino seafarers.                 12:27:14
 8   BY MR. HUGGETT:
 9      Q.   Well, that was the basis you gave us               12:27:18
10   yesterday, was it not?                                      12:27:20
11      A.   That was in response to evidence.                  12:27:22
12      Q.   Okay.  The only evidence or documents that         12:27:24
13   you know of is that -- is that NCL pays AMOSUP,             12:27:28
14   correct?                                                    12:27:34
15      A.   Yes.                                                12:27:34
16           MR. MASE:  Objection to form.                       12:27:34
17   BY MR. HUGGETT:
18      Q.   But you have no evidence and no                    12:27:35
19   knowledge -- no evidence and no personal knowledge         12:27:37
20   that they ever attended a meeting, correct?                12:27:41
21      A.   Correct.                                            12:27:46
22      Q.   No evidence and no knowledge that they ever        12:27:47
23   voted in a union vote?                                      12:27:49
24           MR. MASE:  Objection, repetitive.  This was        12:27:52
25      covered yesterday.                                       12:27:54
```

| | |
|---|---|
| 1  BY MR. HUGGETT: | 12:27:54 |
| 2      Q.   That is correct? | 12:27:55 |
| 3      A.   Correct. | 12:27:56 |
| 4      Q.   No knowledge and no evidence that they ever | 12:27:57 |
| 5  visited the -- were visited by a union | 12:28:01 |
| 6  representative? | 12:28:09 |
| 7          MR. MASE:  Objection, repetitive. | 12:28:10 |
| 8          THE WITNESS:  Correct. | 12:28:10 |
| 9  BY MR. HUGGETT: | 12:28:10 |
| 10     Q.   No knowledge or evidence that they ever | 12:28:10 |
| 11  knew about any advantages or disadvantages of the | 12:28:15 |
| 12  union? | 12:28:17 |
| 13         MR. MASE:  Objection, repetitive. | 12:28:18 |
| 14         THE WITNESS:  Correct. | 12:28:25 |
| 15  BY MR. HUGGETT: | |
| 16     Q.   And no knowledge as to these ten -- as to | 12:28:33 |
| 17  these members in this claim that they had even heard | 12:28:36 |
| 18  of the union? | 12:28:39 |
| 19         MR. MASE:  Objection, repetitive. | 12:28:39 |
| 20         THE WITNESS:  Direct evidence, no. | 12:28:43 |
| 21  BY MR. HUGGETT: | |
| 22     Q.   Okay.  All right. | 12:28:45 |
| 23         And the same is true for the Norwegian | 12:29:02 |
| 24  Seafarers' Union except that they're required to sign | 12:29:10 |
| 25  a piece of paper when the money is taken out? | 12:29:13 |

144

```
 1        A.    Was that a question?                     12:29:21
 2        Q.    Yes.  That's your basis, correct?        12:29:22
 3              I'll restate it, sir.                     12:29:25
 4              You're only -- is it your claim that any of  12:29:31
 5   these ten seamen are in the Norwegian Seamen's Union  12:29:34
 6   or Seafarer's Union?                                 12:29:38
 7              MR. MASE:  Objection, lack of qualification  12:29:40
 8        on the part of the -- well, wait a minute.  Let  12:29:42
 9        me see, your the claim.                         12:29:45
10              Hold on one second, Kjell.                12:29:47
11              Are you asking that as NCL's claim or his  12:30:00
12        personal claim?                                 12:30:03
13              MR. HUGGETT:  Well, let's ask both.       12:30:04
14   BY MR. HUGGETT:
15        Q.    Is it NCL's and is it yours?             12:30:05
16              MR. MASE:  Okay.  You can answer.         12:30:11
17              THE WITNESS:  I'm trying to figure out how  12:30:12
18        to answer that.                                 12:30:15
19              They're part of the CBA which has been    12:30:21
20        negotiated with Norwegian Seafarer's Union.     12:30:25
21        They have been given a copy of the CBA, they are  12:30:29
22        paying union dues.  That's -- I think that's my  12:30:32
23        only claim.                                     12:30:36
24              THE COURT REPORTER:  I think that's my
25        only?
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

145

| | |
|---|---|
| 1 | THE WITNESS:  Claim. | 12:30:36 |
| 2 | BY MR. HUGGETT: | |
| 3 | Q.   Otherwise, you have no evidence and no | 12:30:39 |
| 4 | knowledge that they ever attended a meeting? | 12:30:41 |
| 5 | A.   Do I have evidence, no. | 12:30:50 |
| 6 | Q.   And no evidence and no knowledge that they | 12:30:51 |
| 7 | ever voted in the Norwegian Seafarer's Union? | 12:30:53 |
| 8 | MR. MASE:  Objection, repetitive. | 12:30:56 |
| 9 | THE WITNESS:  To these ten individuals, no. | 12:30:57 |
| 10 | BY MR. HUGGETT: | |
| 11 | Q.   No evidence or no knowledge that they ever | 12:31:00 |
| 12 | were visited by a union representative? | 12:31:05 |
| 13 | MR. MASE:  Objection, repetitive.  And I'm | 12:31:09 |
| 14 | going to note for the record that the Federal | 12:31:11 |
| 15 | Rules of Civil Procedure expressly limit | 12:31:13 |
| 16 | depositions in federal court to four hours. | 12:31:16 |
| 17 | We went for three hours yesterday, and if | 12:31:19 |
| 18 | we keep going over stuff we did yesterday, we're | 12:31:22 |
| 19 | leaving at four hours. | 12:31:24 |
| 20 | MR. HUGGETT:  Go ahead. | 12:31:27 |
| 21 | THE WITNESS:  No evidence, no. | 12:31:27 |
| 22 | BY MR. HUGGETT: | |
| 23 | Q.   Okay.  Yesterday we asked about a | 12:31:28 |
| 24 | Tripartite Group.  The correct name, I believe, is | 12:31:51 |
| 25 | Tripartite Technical Working Group; is that your | 12:31:54 |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

| | | |
|---|---|---|
| 1 | understanding, just so we have the name right? | 12:31:56 |
| 2 | A.   I understand it was called the Tripartite | 12:31:59 |
| 3 | working Group. | 12:32:03 |
| 4 | Q.   Okay.  Let me -- let me show you the | 12:32:03 |
| 5 | affidavit of Attorney Del Rosario from the | 12:32:12 |
| 6 | Philippines, Section 7 there where he discusses it. | 12:32:16 |
| 7 | THE WITNESS:  I then need to borrow the | 12:32:24 |
| 8 | glasses. | |
| 9 | THE COURT REPORTER:  I'm sorry? | |
| 10 | THE WITNESS:  I need to borrow the glasses. | 12:32:27 |
| 11 | MR. MASE:  Mr. Hjartnes didn't bring his | 12:32:27 |
| 12 | reading glass, so regrettably showing my age, | 12:32:30 |
| 13 | I'm handing him mine. | 12:32:33 |
| 14 | THE WITNESS:  Which? | 12:32:36 |
| 15 | MR. HUGGETT:  7. | 12:32:38 |
| 16 | THE WITNESS:  7, it states Tripartite | 12:32:38 |
| 17 | Technical working Group. | 12:32:40 |
| 18 | BY MR. HUGGETT: | |
| 19 | Q.   In our discussions yesterday that's -- | 12:32:42 |
| 20 | that's when we called it Tripartite, and I may have | 12:32:44 |
| 21 | mispronounced it, that's what we're talking about? | 12:32:47 |
| 22 | A.   Yes. | 12:32:49 |
| 23 | Q.   Okay.  I'll take it back, unless you want | 12:32:51 |
| 24 | to read it more. | 12:32:55 |
| 25 | And do you have any knowledge or any | 12:33:13 |

| | | |
|---|---|---|
| 1 | evidence that any of these ten seamen in this case | 12:33:17 |
| 2 | were a member of any religious group that may have | 12:33:24 |
| 3 | participated in the decisions of the Tripartite | 12:33:30 |
| 4 | Technical Working Group? | 12:33:35 |
| 5 | A.   No, I don't. | 12:33:35 |
| 6 | Q.   Do you have any knowledge or any evidence | 12:33:36 |
| 7 | that the ten seamen in this case were members of any | 12:33:38 |
| 8 | civic groups that participated in the decisions of | 12:33:42 |
| 9 | the Tripartite Technical Working Group? | 12:33:48 |
| 10 | A.   No, I don't. | 12:33:50 |
| 11 | MR. HUGGETT:  Do have that affidavit or | |
| 12 | that Exhibit 1 from yesterday? | |
| 13 | THE COURT REPORTER:  Yeah, in that package | |
| 14 | I gave you, in the back. | |
| 15 | MR. MASE:  You mean attached as an exhibit | |
| 16 | per our request yesterday, right? | |
| 17 | THE COURT REPORTER:  Yes.  Imagine that. | |
| 18 | MR. MASE:  Imagine that. | |
| 19 | BY MR. HUGGETT: | 12:34:40 |
| 20 | Q.   I'll tell you what, I'll give you a blowup. | 12:34:41 |
| 21 | Maybe it will make it easier.  Can you read that one? | 12:34:43 |
| 22 | A.   No. | 12:34:44 |
| 23 | Q.   Okay.  Well, then you can have this one | 12:34:45 |
| 24 | from yesterday. | 12:34:47 |
| 25 | MR. HUGGETT:  Be sure you get it back. | 12:34:48 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1              THE WITNESS:  Okay.  I'd rather read this.
 2              MR. HUGGETT:  All right.
 3   BY MR. HUGGETT:
 4       Q.   Department Order No. 4, which is attached      12:35:02
 5   to that, is that part of the documents that the         12:35:05
 6   seamen are given a predeparture orientation on?         12:35:08
 7       A.   Yes, it is.                                    12:35:19
 8              THE COURT REPORTER:  I'm sorry?
 9              THE WITNESS:  Yes, it is.
10   BY MR. HUGGETT:                                         12:35:20
11       Q.   And are they supposed to understand that?     12:35:21
12              MR. MASE:  Objection to the form of the      12:35:23
13         question, lack of qualification on the part of   12:35:24
14         the witness, calls for a legal conclusion,       12:35:27
15         inadequate foundation.                           12:35:29
16              THE WITNESS:  I would presume so, yes.       12:35:41
17   BY MR. HUGGETT:
18       Q.   Do you understand it?                          12:35:44
19              MR. MASE:  Objection to the form of the      12:35:48
20         question, lack of qualification on the part of   12:35:49
21         the witness.                                      12:35:50
22              THE WITNESS:  I -- I believe I do.           12:36:32
23   BY MR. HUGGETT:
24       Q.   All right, sir.
25              THE COURT REPORTER:  I'm sorry?
```

149

```
 1              THE WITNESS:  I believe I do.

 2              THE COURT REPORTER:  Can you speak up.        12:36:33

 3   BY MR. HUGGETT:

 4        Q.   The second paragraph refers to an amended     12:36:38

 5   contract.  Can you tell me where that amended           12:36:43

 6   contract is?                                            12:36:45

 7              MR. MASE:  It's the second --                12:36:48

 8              THE WITNESS:  I'm presuming they're          12:37:02

 9         referring to Annex A, the Standard Terms and      12:37:05

10         Conditions Governing The Employment of Filipino   12:37:09

11         Seafarers On Board Ocean-Going Vessels.           12:37:13

12              MR. MASE:  If you're not sure, you need to   12:37:16

13         tell him that.                                    12:37:17

14              THE WITNESS:  Yeah, I'm not sure what        12:37:20

15         they're referring to, but I -- yeah, I'm not      12:37:23

16         sure what they're referring.                      12:37:25

17   BY MR. HUGGETT:

18        Q.   Okay.  And the next line has amended rules,   12:37:27

19   can you tell me what amended rules they're referring    12:37:29

20   to?                                                     12:37:33

21        A.   No, I can't.                                  12:37:33

22        Q.   And do you know if the seamen who are         12:37:36

23   supposed to read this and understand it know what       12:37:38

24   amended rules they're referring to?                     12:37:44

25        A.   No, I don't.                                  12:37:44
```

| | |
|---|---|
| 1 | MR. MASE:  Objection, no foundation, no | 12:37:44 |
| 2 | predicate. | 12:37:47 |
| 3 | BY MR. HUGGETT: | |
| 4 | Q.   Okay.  The --- looking at the next one, | 12:37:52 |
| 5 | Memorandum Circular No. 9, is that part of the | 12:37:57 |
| 6 | documents that the seamen are supposed to read and | 12:38:02 |
| 7 | understand? | 12:38:07 |
| 8 | A.   Yes, it is. | 12:38:07 |
| 9 | Q.   Okay.  Now -- and I think you told us that | 12:38:09 |
| 10 | part of the NCL's job is insure that the manning | 12:38:22 |
| 11 | agencies do their job of orienting the people and | 12:38:27 |
| 12 | discussing these various documents with them? | 12:38:30 |
| 13 | A.   Can you repeat that, please? | 12:38:34 |
| 14 | Q.   Yes.  Is it part of NCL's duties to insure | 12:38:36 |
| 15 | that their manning agencies require the seamen to | 12:38:41 |
| 16 | read and understand these documents before they come | 12:38:45 |
| 17 | to work with Norwegian Cruise Lines? | 12:38:49 |
| 18 | MR. MASE:  Objection; lack of foundation, | 12:38:50 |
| 19 | lack of qualification. | 12:38:52 |
| 20 | THE WITNESS:  It's -- it's more, in my | 12:38:56 |
| 21 | opinion more a responsibility of the POEA to | 12:38:59 |
| 22 | make sure they follow the -- the guidelines | 12:39:02 |
| 23 | setup by the POEA, and as it is part of their | 12:39:11 |
| 24 | accreditation with POEA. | 12:39:15 |
| 25 | BY MR. HUGGETT: | |

| | | |
|---|---|---|
| 1 | Q.    The manning agencies or NCL? | 12:39:17 |
| 2 | A.    The manning agencies. | 12:39:20 |
| 3 | Q.    Manning agencies are employed by NCL to | 12:39:22 |
| 4 | enforce those rules, or to see that the -- see that | 12:39:27 |
| 5 | the rules are complied with as to the seamen that are | 12:39:32 |
| 6 | going to work on your ships? | 12:39:35 |
| 7 | A.    Yes. | 12:39:41 |
| 8 | Q.    Okay.  And I draw your attention to No. 5, | 12:39:42 |
| 9 | it says, "The manning agencies are directed to | 12:39:44 |
| 10 | include the discussion of the amended Standard Terms | 12:39:46 |
| 11 | and Conditions."  Do you see that one? | 12:39:49 |
| 12 | A.    Yes, I do. | 12:39:50 |
| 13 | Q.    And do you know when the Standard Terms and | 12:39:52 |
| 14 | Conditions were amended? | 12:40:03 |
| 15 | A.    No, I don't. | 12:40:05 |
| 16 | Q.    Can you show me a copy of the amended | 12:40:06 |
| 17 | Standard Terms and Conditions? | 12:40:11 |
| 18 | A.    To my knowledge, this is the amended | 12:40:21 |
| 19 | contract. | 12:40:25 |
| 20 | Q.    Referring to that one attached there to | 12:40:26 |
| 21 | that packet? | 12:40:27 |
| 22 | A.    Yes. | 12:40:28 |
| 23 | Q.    It doesn't say amended, does it, it just | 12:40:29 |
| 24 | says "Standard Terms, Annex A"? | 12:40:31 |
| 25 | A.    Yes, it does. | 12:40:35 |

152

| | | |
|---|---|---|
| 1 | Q.   Is there any way that you can distinguish | 12:40:36 |
| 2 | for us what paragraph five means as a distinction | 12:40:39 |
| 3 | between amended standard terms and the original | 12:40:44 |
| 4 | standard terms? | 12:40:48 |
| 5 | A.   No, there is not. | 12:40:49 |
| 6 | Q.   And do you have any knowledge or way of | 12:40:51 |
| 7 | knowing whether the manning agencies acting on behalf | 12:40:56 |
| 8 | of NCL included a discussion of the amended or the | 12:41:00 |
| 9 | regular or original standard terms? | 12:41:03 |
| 10 | A.   Can you restate that? | 12:41:19 |
| 11 | Q.   Do you have any knowledge or documentation | 12:41:19 |
| 12 | to show whether the manning agencies which discussed | 12:41:22 |
| 13 | the contracts with the seafarers employed by NCL | 12:41:28 |
| 14 | actually discussed the amended standard terms or the | 12:41:32 |
| 15 | original standard terms? | 12:41:34 |
| 16 | A.   Again, if they are referring to this, this | 12:41:41 |
| 17 | has been given to the crew members and is part of the | 12:41:48 |
| 18 | predeparture orientation.  They'd have to discuss | 12:41:51 |
| 19 | this with them. | 12:41:56 |
| 20 | Q.   Now this, you are pointing to the -- what's | 12:41:58 |
| 21 | called Standard Terms and Conditions that are | 12:42:01 |
| 22 | attached to the packet there? | 12:42:04 |
| 23 | A.   Yes, sir. | 12:42:05 |
| 24 | Q.   And -- and we -- so the only thing you can | 12:42:07 |
| 25 | say is that those that are attached are supposed to | 12:42:10 |

| | | |
|---|---|---|
| 1 | be the ones discussed? | 12:42:13 |
| 2 | A.   Yes. | 12:42:15 |
| 3 | Q.   And we don't know -- and you don't know | 12:42:15 |
| 4 | whether those are the amended or the original, do | 12:42:18 |
| 5 | you? | 12:42:20 |
| 6 | A.   I know that these are the ones that are in | 12:42:21 |
| 7 | effect now. | 12:42:24 |
| 8 | Q.   Okay.  And how do you know that? | 12:42:24 |
| 9 | A.   I have been given a copy of this.  I was | 12:42:32 |
| 10 | sent a copy of this from the manning agent. | 12:42:34 |
| 11 | Q.   All right.  Now, let me go back to my | 12:42:40 |
| 12 | question, which is:  Do you know whether the manning | 12:42:43 |
| 13 | agencies discuss the amended one or the original one | 12:42:47 |
| 14 | with the seamen? | 12:42:49 |
| 15 | A.   I can't answer that, because I wasn't | 12:42:54 |
| 16 | there. | 12:42:55 |
| 17 | Q.   Okay.  The No. 2 says that effective June | 12:42:56 |
| 18 | 25, 2000, that manning agencies would use a certain | 12:43:31 |
| 19 | text of seafarers contracts.  Do you see that? | 12:43:38 |
| 20 | A.   I'm sorry.  What are you referring to now? | 12:43:41 |
| 21 | Q.   Memorandum Circular 9. | 12:43:44 |
| 22 | A.   Yes. | 12:43:51 |
| 23 | Q.   And paragraph two. | 12:43:51 |
| 24 | A.   Okay. | 12:43:54 |
| 25 | Q.   It says, "Effective June 25, 2000, manning | 12:43:55 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1   agencies shall use a certain text of the seafarer's      12:43:59
 2   employment contract."  See that paragraph?               12:44:05
 3       A.   Yes.                                            12:44:11
 4       Q.   You discussed, I believe, yesterday, that       12:44:12
 5   you began a position and dealt with this at the end      12:44:17
 6   of '99, the beginning of 2000.                           12:44:20
 7            My question is:  Do you recall what was         12:44:22
 8   used prior to June 25, 2000?                             12:44:25
 9       A.   No, I do not.                                   12:44:28
10       Q.   Now, I'd like to turn to those standard         12:45:22
11   terms that you have a copy of there in that packet.      12:45:25
12            Is it your understanding from looking at        12:45:31
13   them that those are the ones that are in effect in --    12:45:34
14   for these ten seamen in question?                        12:45:37
15       A.   Yes, it is.                                     12:45:41
16       Q.   Okay.  And is it part of the duty of the        12:45:53
17   manning agency acting for NCL to insure that they        12:45:57
18   read and understand this?                                12:46:00
19            MR. MASE:  Objection to the form of the         12:46:01
20       question.                                            12:46:02
21            MR. HUGGETT:  Is the answer "yes"?              12:46:03
22            THE WITNESS:  Yes.                              12:46:04
23   BY MR. HUGGETT:
24       Q.   Let's look at a couple of paragraphs here.      12:46:17
25   Let me refer you to page five.  On the left-hand         12:46:19
```

| | | |
|---|---|---|
| 1 | column, it's listing certain problems and so forth | 12:46:25 |
| 2 | that the seamen may get something for.  Do you see | 12:46:31 |
| 3 | 18, 19 and 20? | 12:46:37 |
| 4 | A.    Yes. | 12:46:43 |
| 5 | Q.    Could you read us those three, please? | 12:46:43 |
| 6 | A.    18? | 12:46:47 |
| 7 | Q.    Yes. | 12:46:48 |
| 8 | A.    "Pulmonary Tuberculosis:  In addition to | 12:46:49 |
| 9 | working" -- I think I need stronger glasses -- "to | 12:47:00 |
| 10 | working conditions already listed under the | 12:47:01 |
| 11 | Philippine Decree No. 626, as amended, any occupation | 12:47:05 |
| 12 | involving constant exposure to harmful substance -- | 12:47:12 |
| 13 | substances in the working environment, in the form of | 12:47:17 |
| 14 | gases, fumes, vapors, and dust, as in chemicals" -- | 12:47:21 |
| 15 | THE COURT REPORTER:  I'm sorry? | |
| 16 | THE WITNESS:  -- "as in chemicals and | 12:47:33 |
| 17 | textile factories, overwork or fatigue, and | 12:47:37 |
| 18 | exposure to rapid" -- | 12:47:44 |
| 19 | I can't see it. | 12:47:45 |
| 20 | BY MR. HUGGETT: | 12:47:46 |
| 21 | Q.    It's variations? | 12:47:46 |
| 22 | A.    -- "variations in temperature, high degree | 12:47:47 |
| 23 | of humidity, and bad weather conditions." | 12:47:50 |
| 24 | Q.    If you could just read the next two, | 12:47:55 |
| 25 | please. | 12:47:58 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | A.    Okay.   "Viral hepatitis:   In addition to | 12:47:58 |
| 2 | working conditions already listed under Philippine | 12:48:02 |
| 3 | Decree No. 626, as amended, any occupation involving | 12:48:05 |
| 4 | exposure to a source of infection through ingestion | 12:48:11 |
| 5 | of water, milk or other foods contaminated with | 12:48:19 |
| 6 | hepatitis virus, provided that the physician | 12:48:24 |
| 7 | determining the casual relationship between the | 12:48:30 |
| 8 | employment and the illness should be able to" -- | 12:48:34 |
| 9 |        Can you see what it says? | 12:48:41 |
| 10 | Q.    Indicate. | 12:48:42 |
| 11 | A.    -- "to indicate whether the disease of the | 12:48:43 |
| 12 | affected worker manifested itself while he was so | 12:48:47 |
| 13 | employed, knowing the incubation period thereof." | 12:48:53 |
| 14 | Q.    And 20. | 12:48:56 |
| 15 | A.    "Essential hypertension:   Hypertension | 12:49:00 |
| 16 | classified as primary or essential is considered | 12:49:03 |
| 17 | compensatable if it causes impairment of function of | 12:49:09 |
| 18 | body, of body organs like kidney, heart, eyes and | 12:49:15 |
| 19 | brain, resulting in permanent disability, provided | 12:49:19 |
| 20 | that the following documents" -- | 12:49:23 |
| 21 |        what's it say? | 12:49:29 |
| 22 | Q.    Substantiate it. | |
| 23 | A.    -- "substantiate it.  A, chest x-ray | 12:49:31 |
| 24 | report; B, EGG report; C, blood chemistry report, | 12:49:35 |
| 25 | D" -- | |

| | | |
|---|---|---|
| 1 | What does it say?  I can't read it. | 12:49:47 |
| 2 | Q.  It says F-U-N-D-U-S-C-O-P-Y. | 12:49:49 |
| 3 | A.  Okay. | 12:49:54 |
| 4 | -- "funduscopy report, and CT scan." | 12:49:54 |
| 5 | Q.  Are the requirements that the manning | 12:50:06 |
| 6 | agency familiarize the seamen with things like that? | 12:50:10 |
| 7 | A.  Familiarize them with them, yes. | 12:50:12 |
| 8 | Q.  Okay.  And do you, as the person here at | 12:50:14 |
| 9 | NCL, understand those, too? | 12:50:20 |
| 10 | MR. MASE:  Objection to form. | 12:50:21 |
| 11 | THE WITNESS:  In broad terms, yes. | 12:50:25 |
| 12 | BY MR. HUGGETT: | |
| 13 | Q.  Okay.  Can you -- and can you tell us what | 12:50:27 |
| 14 | is essential hypertension? | 12:50:31 |
| 15 | A.  I know what hypertension is, yes. | 12:50:39 |
| 16 | Q.  And do you know what's the difference is in | 12:50:42 |
| 17 | hypertension and essential hypertension? | 12:50:45 |
| 18 | A.  No, I don't. | 12:50:47 |
| 19 | Q.  Do you know how or a why you would | 12:50:48 |
| 20 | substantiate hypertension with a chest x-ray? | 12:50:51 |
| 21 | A.  No, I don't. | 12:50:54 |
| 22 | Q.  Then do you think the seamen do? | 12:50:55 |
| 23 | A.  I can't answer that. | 12:50:57 |
| 24 | MR. MASE:  Objection to the form. | 12:50:59 |
| 25 | BY MR. HUGGETT: | |

```
 1      Q.   Okay.
 2           MR. MASE:  Careful --                          12:51:01
 3           THE WITNESS:  Thank you.                       12:51:04
 4  BY MR. HUGGETT:
 5      Q.   I direct your attention to page three.  Is    12:51:21
 6  Section 29 the section that concerns the arbitration?  12:51:53
 7           MR. MASE:  Objection to the form; calls for    12:51:59
 8      a legal conclusion, lack of qualification.          12:52:03
 9           THE WITNESS:  In my opinion, yes.              12:52:11
10  BY MR. HUGGETT:
11      Q.   Okay.  Could -- and Section 31, how does       12:52:13
12  that apply?                                             12:52:21
13           MR. MASE:  Same objection.                     12:52:23
14           THE WITNESS:  I'm sorry.  Can you repeat       12:52:42
15      the question?                                        12:52:44
16  BY MR. HUGGETT:
17      Q.   Yeah.  Section 31, Applicable Law, how does    12:52:45
18  that apply to this matter?                              12:52:48
19      A.   It applies as it's stated, that any claim      12:52:51
20  has to -- has to be governed by the law of the          12:52:54
21  Republic of the Philippines.                            12:53:01
22      Q.   Okay.  Could you -- could you read into the    12:53:03
23  record Section 29 and Section 31?                       12:53:04
24      A.   Now I wish I had my own glasses.               12:53:13
25           MR. MASE:  Yeah, I hear you.                   12:53:16
```

| | | |
|---|---|---|
| 1 | THE WITNESS: "Section 29. Dispute | 12:53:17 |
| 2 | Settlement Procedures. In cases of claims and | 12:53:20 |
| 3 | disputes arising from the employment, the | 12:53:23 |
| 4 | parties covered by the Collective Bargaining | 12:53:27 |
| 5 | Agreement shall submit the claim or dispute to | 12:53:30 |
| 6 | the original and exclusive jurisdiction of the | 12:53:33 |
| 7 | voluntary arbitration, arbitrator or panel of | 12:53:37 |
| 8 | arbitrators. | 12:53:42 |
| 9 | "If the parties are not covered by a | 12:53:42 |
| 10 | collective bargaining agreement, the parties | 12:53:45 |
| 11 | may, at their option, submit the claim or | 12:53:48 |
| 12 | dispute to either the original and exclusive | 12:53:52 |
| 13 | jurisdiction of the National Labor Relations | 12:53:57 |
| 14 | Commission (NLRC), pursuant to Republic Act (RA) | 12:54:04 |
| 15 | 9042, otherwise known as the Migrant Workers and | 12:54:11 |
| 16 | Overseas Filipino Act of 1995 or to the original | 12:54:16 |
| 17 | and exclusive jurisdiction of the voluntary | 12:54:21 |
| 18 | arbitrator or panel of arbitrators, if there is | 12:54:29 |
| 19 | no provision as to the voluntary arbitrators to | 12:54:29 |
| 20 | be appointed by the parties, the same shall be | 12:54:31 |
| 21 | appointed from the accredited voluntary | 12:54:38 |
| 22 | arbitrators of the National Conciliation and | 12:54:41 |
| 23 | Mediation Board of the Department of Labor and | 12:54:46 |
| 24 | Employment. | |
| 25 | "The Philippines Overseas Employment | 12:54:51 |

160

1       Administration (POEA), shall exercise original     12:54:55
2       and exclusive jurisdiction to hear and decide      12:54:58
3       discrepancy -- disciplinary action on cases,       12:55:04
4       which are administrative in character, involving   12:55:07
5       or arising out of violations of recruitment        12:55:10
6       laws, rules and regulations involving employers,   12:55:16
7       principals, contracting partners and Filipino      12:55:20
8       seafarers."                                         12:55:26
9   BY MR. HUGGETT:
10      Q.   And Section 31?                                12:55:27
11      A.   "Section 31.  Applicable law.  Any             12:55:28
12  unresolved dispute, claim or grievance arising out of  12:55:34
13  or in connection with this contract, including the     12:55:38
14  annexes thereof, shall be governed by the laws of the  12:55:41
15  Republic of the Philippines, international             12:55:45
16  conventions, treaties, and conventions whereto the     12:55:49
17  Philippines is a signatory."                           12:55:54
18      Q.   Is it -- does NCL undertake to insure that    12:55:56
19  its manning agencies make the seamen aware of these    12:56:03
20  provisions?                                             12:56:21
21      A.   That's -- yes and no, because once the        12:56:21
22  manning agents are accredited with POEA, it is POEA's  12:56:25
23  responsibility to make sure that the manning agents    12:56:32
24  follow the provisions set out by the POEA.             12:56:37
25      Q.   Does NCL make any attempt to see that their   12:56:45

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1  manning agencies make sure that the seamen understand    12:56:47
 2  that and read it?                                         12:56:51
 3      A.   Yeah, I think do.                                12:57:05
 4      Q.   Okay.
 5      A.   I think we make sure that the manning            12:57:07
 6  agents follow the applicable laws.                        12:57:09
 7      Q.   And aside from the applicable laws, do you       12:57:10
 8  attempt to make sure that they -- that the manning        12:57:13
 9  agencies make sure that the seamen reads and              12:57:16
10  understand those paragraphs?                              12:57:18
11      A.   That's part of the requirement of the           12:57:24
12  manning agent.                                            12:57:31
13      Q.   And when the manning agents are acting on       12:57:31
14  NCL's behalf in orienting the seamen, does NCL make       12:57:34
15  any attempt to insure that the manning agencies make      12:57:38
16  the seamen read and understand those provisions?          12:57:41
17           MR. MASE:  Object, and asked and answered.      12:57:47
18           THE WITNESS:  I think we make sure they         12:57:51
19      follow the requirements.                              12:57:53
20  BY MR. HUGGETT:
21      Q.   Let me try to be a little more specific, if     12:57:55
22  I can.  My question is:  Does NCL make any attempt to     12:57:58
23  insure that the manning agencies make the seamen read     12:58:03
24  and understand Section 29 and Section 31?                 12:58:06
25           MR. MASE:  Object to the form.                  12:58:09
```

| | | |
|---|---|---|
| 1 | THE WITNESS:  Do they physically oversee | 12:58:11 |
| 2 | it, no. | 12:58:13 |
| 3 | BY MR. HUGGETT: | |
| 4 | Q.   By any means, does NCL attempt to make sure | 12:58:15 |
| 5 | that the manning agencies that it hires insure that | 12:58:18 |
| 6 | the seaman reads and understands Section 29 and 31? | 12:58:22 |
| 7 | A.   We make sure that we use accredited manning | 12:58:25 |
| 8 | agents. | 12:58:30 |
| 9 | Q.   I understand that.  And you've told me | 12:58:30 |
| 10 | that.  Let me see if I can narrow my question a | 12:58:33 |
| 11 | little bit. | 12:58:35 |
| 12 | A.   Okay. | 12:58:36 |
| 13 | Q.   And I'm going to restrict it to Section 29 | 12:58:36 |
| 14 | and 31 that you've just read. | 12:58:39 |
| 15 | A.   Okay. | |
| 16 | Q.   Does NCL make any attempt to insure that | 12:58:42 |
| 17 | the manning agencies that it employs, insure that the | 12:58:44 |
| 18 | seamen read and understand those two sections? | 12:58:48 |
| 19 | MR. MASE:  Objection, repetitive, asked and | 12:58:50 |
| 20 | answered. | 12:58:52 |
| 21 | THE WITNESS:  We make sure they are in | 12:58:54 |
| 22 | compliance with the requirements. | 12:58:56 |
| 23 | BY MR. HUGGETT: | |
| 24 | Q.   And does that apply to Section 29 and 31? | 12:58:58 |
| 25 | A.   Yes. | 12:59:02 |

```
 1       Q.    Okay.  So do I understand it then, it would      12:59:04
 2   be NCL's intent that the manning agencies explain          12:59:06
 3   those two sections to the seamen?                          12:59:11
 4            MR. MASE:  Objection to the form, lack of          12:59:13
 5       foundation.                                            12:59:15
 6            THE WITNESS:  Yes.                                12:59:16
 7   BY MR. HUGGETT:
 8       Q.    And in Section 29, the second sentence --        12:59:25
 9   the second line refers to a dispute; can you tell me       12:59:28
10   what is a dispute that would be subject to this?          12:59:31
11       A.    Any disagreement on contractual issues.         12:59:39
12       Q.    On contractual issues.  Would that apply to      12:59:42
13   negligent torts?                                          12:59:47
14            MR. MASE:  Objection, lack of                     12:59:47
15       qualification, form.                                  12:59:50
16            THE WITNESS:  In my opinion, it would be --       12:59:52
17       it would apply to any disagreement arising from       12:59:55
18       the contract.                                         13:00:02
19   BY MR. HUGGETT:
20       Q.    I think you told me that.  My question is       13:00:02
21   now:  This contract that NCL -- NCL is using this         13:00:05
22   particular contract; is it not?                           13:00:09
23       A.    Yes.                                            13:00:10
24       Q.    And it's requiring the seamen to have it        13:00:11
25   attached to their page front contract?                    13:00:16
```

164

```
1        A.    Yes.                                        13:00:19

2        Q.    It's at least the intent of NCL that this   13:00:19

3   contract be followed in dealing with these ten         13:00:23

4   seamen?                                                 13:00:26

5              MR. MASE:  Objection to form, lack of        13:00:27

6        qualification.                                     13:00:30

7              THE WITNESS:  Yes, with every Filipino       13:00:30

8        seafarer.                                          13:00:33

9   BY MR. HUGGETT:

10       Q.    My question is, as the person representing   13:00:34

11  NCL here, does dispute include a Jones Act?  Does a     13:00:38

12  dispute include a claim for injuries or death due to    13:00:48

13  negligence?                                             13:00:52

14             MR. MASE:  Same objection.                   13:00:53

15             THE WITNESS:  I think it includes any        13:00:57

16       dispute.                                           13:00:59

17  BY MR. HUGGETT:

18       Q.    And does that include one for negligence    13:00:59

19  and --                                                  13:01:02

20       A.    I'm not a lawyer and I can't -- can't        13:01:02

21  answer that.                                            13:01:05

22       Q.    So you don't know?                           13:01:08

23       A.    I don't know.                                13:01:08

24       Q.    All right, sir.  And do you think the        13:01:08

25  seamen know?                                            13:01:11
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | MR. MASE:  Objection, lack of | 13:01:11 |
| 2 | qualification, no foundation. | 13:01:14 |
| 3 | THE WITNESS:  I can't answer for the | 13:01:14 |
| 4 | seafarers. | 13:01:16 |
| 5 | BY MR. HUGGETT: | |
| 6 | Q.   Okay.  Do you know whether that's explained | 13:01:17 |
| 7 | to the seafarers, the difference between a dispute | 13:01:19 |
| 8 | arising from the contract and one from negligent -- | 13:01:23 |
| 9 | negligence which results in injury or death? | 13:01:26 |
| 10 | A.   I don't know. | 13:01:29 |
| 11 | Q.   And do you know -- is there a difference | 13:01:50 |
| 12 | between a claim and a dispute? | 13:01:52 |
| 13 | MR. MASE:  Same objection, lack of | 13:01:56 |
| 14 | qualification on the part of the witness. | 13:01:59 |
| 15 | THE WITNESS:  No.  I think it means the | 13:02:12 |
| 16 | same thing.  It's a disagreement on contractual | 13:02:13 |
| 17 | issues. | 13:02:17 |
| 18 | BY MR. HUGGETT: | |
| 19 | Q.   Difference of opinion on contractual | 13:02:19 |
| 20 | issues.  All right, sir. | 13:02:21 |
| 21 | And does, in your -- in your opinion, could | 13:02:23 |
| 22 | contractual issues include negligence claims? | 13:02:26 |
| 23 | A.   I don't know. | 13:02:29 |
| 24 | MR. MASE:  Objection. | 13:02:30 |
| 25 | BY MR. HUGGETT: | |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

```
 1        Q.   Okay.  Is it supposed to include claims or    13:02:31
 2   disputes when the seamen is injured or killed due to    13:02:38
 3   negligence?                                             13:02:41
 4            MR. MASE:  Objection to the form of the        13:02:42
 5        question, lack of qualification and predicate.     13:02:44
 6            THE WITNESS:  I'm not qualified to answer       13:02:46
 7        that.
 8   BY MR. HUGGETT:
 9        Q.   Okay.  Do you think the seamen are            13:02:49
10   qualified to answer that?                               13:02:51
11        A.   I can't answer.                               13:02:52
12            MR. MASE:  Same objection.                     13:02:53
13   BY MR. HUGGETT:
14        Q.   Do you think the seamen know?                 13:02:54
15        A.   I can't answer for that -- for them.          13:02:55
16        Q.   Do you know whether the manning agencies      13:02:57
17   who explain this to the seamen make any attempt to      13:02:59
18   make that distinction for the seamen?                   13:03:02
19        A.   I don't know.                                 13:03:05
20        Q.   Okay.                                         13:03:20
21            MR. MASE:  Let me know if you want a break,    13:03:20
22        you need to stretch your knee                      13:03:23
23            THE WITNESS:  I'm afraid I'm going to fall     13:03:24
24        off the chair.                                     13:03:26
25   BY MR. HUGGETT:
```

| | | |
|---|---|---|
| 1 | Q.    Yesterday we talked about, and I | 13:03:43 |
| 2 | mispronounced a man named Happy "Ballonga"? | 13:03:46 |
| 3 | A.    Ballaga. | |
| 4 | Q.    Ballaga.  Okay.  I'll try to get it right. | 13:03:54 |
| 5 | MR. MASE:  You did it again today. | 13:03:55 |
| 6 | MR. HUGGETT:  Did it again. | 13:03:56 |
| 7 | BY MR. HUGGETT: | |
| 8 | Q.    And you know Happy Ballaga, right? | 13:03:58 |
| 9 | A.    Yes, I do. | 13:04:00 |
| 10 | Q.    And have you had a chance yet to read the | 13:04:01 |
| 11 | affidavit which Happy Ballaga filed in this case on | 13:04:07 |
| 12 | behalf of Norwegian Cruise Lines? | 13:04:10 |
| 13 | A.    No, I have not. | 13:04:11 |
| 14 | Q.    Okay.  He's the -- to your knowledge, he's | 13:04:13 |
| 15 | a manager of CF Sharp, one of the manning agencies? | 13:04:15 |
| 16 | A.    Yes. | 13:04:21 |
| 17 | Q.    Okay.  I'm looking at paragraph 10 of that | 13:04:38 |
| 18 | affidavit, if your lawyer wants to look.  Paragraph | 13:04:40 |
| 19 | 10 of that affidavit says, it's describing the | 13:04:54 |
| 20 | signing and explaining process.  Would Happy Ballaga | 13:04:58 |
| 21 | be a person to know about that process? | 13:05:06 |
| 22 | MR. MASE:  Objection to the form, lack of | 13:05:09 |
| 23 | qualification on the part of the witness to | 13:05:11 |
| 24 | answer that, no foundation. | 13:05:12 |
| 25 | THE WITNESS:  In my opinion, yes. | 13:05:18 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1  BY MR. HUGGETT:                                   13:05:19

 2      Q.   Okay.  He says that before this -- I'm   13:05:19

 3  sorry.  "Seafarers are actually deployed to the   13:05:22

 4  vessel NORWAY.  They were made to execute employment  13:05:24

 5  contracts which incorporate and made integral part  13:05:32

 6  thereof the Standard Terms."                       13:05:37

 7           I have highlighted that little paragraph  13:05:39

 8  10.  You see it there?                             13:05:41

 9      A.   Yes.                                      13:05:51

10      Q.   Do you know what means they use to make  13:05:52

11  them execute the contracts?                        13:05:55

12      A.   I -- I can't speak for Mr. Ballaga.      13:05:59

13      Q.   And do you give them any direction or    13:06:03

14  guidance on how they use to make them execute the  13:06:06

15  contract?                                          13:06:11

16      A.   No, we don't.                            13:06:11

17      Q.   You would agree with me that made to     13:06:13

18  execute a contract gives no option or leeway for   13:06:17

19  dialogue to the seamen?                            13:06:24

20           MR. MASE:  Objection to the form of the  13:06:25

21      question.                                      13:06:27

22           THE WITNESS:  I -- like I said, I can't  13:06:28

23      read his mind or what he -- or how he was     13:06:29

24      thinking when he expressed himself that way.  13:06:32

25  BY MR. HUGGETT:
```

1    Q.   Okay.  Well, what -- are your instructions    13:06:37

2  to the manning agencies, or your overseeing or    13:06:40

3  guidance, that they're to make them execute    13:06:44

4  contracts?    13:06:46

5    A.   Our instructions to them is make sure that    13:06:47

6  we are following all applicable laws, and that we    13:06:48

7  follow the instructions and requirement from POEA.    13:06:51

8    Q.   And does that -- do you tell them anything    13:06:54

9  about making them execute employment contracts?    13:06:57

10    A.   No. I think we make them make sure they    13:06:59

11  have a contract before they join the ship.    13:07:02

12    Q.   Okay.  In this description of what he does,    13:07:05

13  I notice that he doesn't put anywhere the word    13:07:20

14  "arbitrate."    13:07:25

15      Does NCL ask that they explain to them what    13:07:26

16  arbitration mean?    13:07:30

17      MR. MASE:  Objection, lack of qualification    13:07:30

18      and foundation.    13:07:32

19      THE WITNESS:  That is a requirement by    13:07:33

20      POEA.    13:07:35

21  BY MR. HUGGETT:

22    Q.   Okay.  And does NCL -- have you, or anyone    13:07:36

23  that you know of, ever said to your manning agencies    13:07:40

24  that you employ and pay that they are to discuss    13:07:43

25  arbitration with the men?    13:07:47

| | | |
|---|---|---|
| 1 | MR. MASE:  Objection, lack of foundation. | 13:07:48 |
| 2 | THE WITNESS:  They are required to follow | 13:07:57 |
| 3 | the POEA rules. | 13:07:59 |
| 4 | BY MR. HUGGETT: | |
| 5 | Q.  Okay.  Now, my question is:  Do you know | 13:08:01 |
| 6 | yourself or have any evidence that NCL tells its | 13:08:04 |
| 7 | manning agencies or asks, reviews, that they | 13:08:07 |
| 8 | specifically discuss arbitration? | 13:08:11 |
| 9 | A.  Do we go paragraph by paragraph, no, we do | 13:08:13 |
| 10 | not.  We tell them to follow all the requirements by | 13:08:16 |
| 11 | POEA. | 13:08:20 |
| 12 | Q.  So you have no evidence and no knowledge | 13:08:20 |
| 13 | that the manning agencies ever mention the word | 13:08:23 |
| 14 | "arbitration"? | 13:08:27 |
| 15 | A.  No, I don't. | 13:08:27 |
| 16 | Q.  Okay.  Now, No. 11 of this affidavit says | 13:08:34 |
| 17 | that as a standard operating procedure of the | 13:08:48 |
| 18 | company, the contents of the standard employment | 13:09:05 |
| 19 | contract with its terms and conditions are explained | 13:09:08 |
| 20 | by the crewing manager of the seafarers in the | 13:09:11 |
| 21 | Filipino language. | 13:09:15 |
| 22 | Have you -- are you aware that they do | 13:09:16 |
| 23 | that? | 13:09:19 |
| 24 | A.  I think I testified to that yesterday. | 13:09:19 |
| 25 | Q.  Okay.  Why would they explain it in the | 13:09:21 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | |
|---|---|
| 1 | Filipino language and have it written in the English | 13:09:24 |
| 2 | language? | 13:09:27 |
| 3 |        MR. MASE:  Objection, lack of | 13:09:28 |
| 4 |    qualification, no foundation, inadequate | 13:09:29 |
| 5 |    predicate. | 13:09:31 |
| 6 |        THE WITNESS:  I can't answer that. | 13:09:31 |
| 7 |        MR. MASE:  Argumentative. | 13:09:34 |
| 8 | BY MR. HUGGETT: | |
| 9 |    Q.   Do you think the seaman understands better | 13:09:35 |
| 10 | in the Filipino language? | 13:09:37 |
| 11 |        MR. MASE:  Same objection. | 13:09:39 |
| 12 |        THE WITNESS:  I don't know. | 13:09:42 |
| 13 | BY MR. HUGGETT: | |
| 14 |    Q.   Okay.  Would that be the purpose that you | 13:09:43 |
| 15 | would be using a native language of someone, so that | 13:09:44 |
| 16 | he better understands? | 13:09:47 |
| 17 |        MR. MASE:  Same objection. | 13:09:49 |
| 18 |        THE WITNESS:  I would think it would be | 13:09:49 |
| 19 |    easier to explain it to them in their own | 13:09:51 |
| 20 |    language. | |
| 21 | BY MR. HUGGETT: | |
| 22 |    Q.   And would it also be easier for him to | 13:09:54 |
| 23 | understand if it's written in the Filipino language? | 13:09:57 |
| 24 |        MR. MASE:  Objection, same objection. | 13:10:04 |
| 25 |    Want to go off for a second? | 13:10:07 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1           THE VIDEOGRAPHER:  And we're off the      13:10:09
 2      record.
 3           (Thereupon, a brief discussion was held off   13:12:14
 4      the record.)
 5           THE VIDEOGRAPHER:  We're back on the      13:17:25
 6      record, sir.                                    13:17:27
 7  BY MR. HUGGETT:
 8      Q.   Okay.  The last question was, would it be    13:17:44
 9  easier for the seaman to understand if the contract   13:17:46
10  were written in Filipino, his native language?        13:17:49
11           MR. MASE:  Note my same line of objections   13:17:53
12      that I've been making beforehand.                13:17:55
13           THE WITNESS:  I don't know.                 13:18:01
14  BY MR. HUGGETT:
15      Q.   Okay.  Now, that No. 11 of that affidavit,   13:18:13
16  Mr. Ballaga --                                       13:18:16
17           MR. MASE:  Just call him Happy.             13:18:19
18  BY MR. HUGGETT:
19      Q.   Happy, states, continuing, is the standard   13:18:21
20  operating procedure of the company, the contents of   13:18:30
21  the standard employment contract with its terms and   13:18:33
22  conditions are explained by the crewing manager to   13:18:37
23  the seafarers in the Filipino language, and the      13:18:40
24  seafarers are required to read and understand the    13:18:43
25  provisions.                                          13:18:47
```

| | | |
|---|---|---|
| 1 | I'll show you No. 11. | 13:18:48 |
| 2 | A.    Okay. | 13:19:01 |
| 3 | Q.    Do you know how they require them to | 13:19:02 |
| 4 | understand? | 13:19:05 |
| 5 | A.    No, I don't. | 13:19:05 |
| 6 | Q.    Do you give them any guidance when you ask | 13:19:08 |
| 7 | them to comply with the rules and the regulations as | 13:19:11 |
| 8 | to how to require someone to understand? | 13:19:15 |
| 9 | MR. MASE:  Note my same objection, | 13:19:19 |
| 10 | objections. | 13:19:22 |
| 11 | THE WITNESS:  The requirement we have on | 13:19:24 |
| 12 | them is that they follow the requirements from | 13:19:27 |
| 13 | POEA, which includes explaining the terms and | 13:19:33 |
| 14 | conditions of the contract. | 13:19:37 |
| 15 | BY MR. HUGGETT: | |
| 16 | Q.    You don't really think that the seamen | 13:19:39 |
| 17 | understand all of that standard terms, do you? | 13:19:41 |
| 18 | MR. MASE:  Objection, lack of | 13:19:44 |
| 19 | qualification, lack of predicate, lack of | 13:19:45 |
| 20 | foundation. | 13:19:48 |
| 21 | THE WITNESS:  I don't know. | 13:19:49 |
| 22 | BY MR. HUGGETT: | |
| 23 | Q.    Well, we've gone over there some parts that | 13:19:49 |
| 24 | you don't even understand, so you wouldn't expect a | 13:19:51 |
| 25 | seaman to, would you? | 13:19:56 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

174

```
 1      A.    They may be smarter than me, I don't know.    13:19:56
 2      Q.    You don't really think they all understand    13:19:58
 3  it all?                                                  13:20:00
 4            MR. MASE:  Objection, asked and answered.      13:20:01
 5            THE WITNESS:  I don't know.                    13:20:03
 6  BY MR. HUGGETT:
 7      Q.    Okay.  Section 13, the next one, says that     13:20:18
 8  Happy knows for a fact that they have read,              13:20:22
 9  understood and agreed to the terms.                      13:20:24
10            Do you have any means of insuring or           13:20:29
11  telling us how he knows for a fact that they             13:20:32
12  understand?                                              13:20:36
13      A.    No, I don't.                                   13:20:36
14            MR. MASE:  Same objection.                     13:20:37
15  BY MR. HUGGETT:
16      Q.    And do you know how he knows for a fact        13:20:41
17  that they agree?                                         13:20:44
18            MR. MASE:  Same objection.                     13:20:45
19            THE WITNESS:  No, I don't.                     13:20:46
20  BY MR. HUGGETT:
21      Q.    It is NCL's position that they sign the        13:20:50
22  contract as written or they don't get a job, correct?   13:20:54
23            MR. MASE:  Asked and answered.                 13:20:59
24            THE WITNESS:  I'm sorry.  Repeat that.         13:21:00
25  BY MR. HUGGETT:
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | Q.   It's NCL's position, when hiring these | 13:21:02 |
| 2 | seamen, that they sign this packet that you have a | 13:21:05 |
| 3 | copy of in your hand, as is, correct? | 13:21:09 |
| 4 | A.   Yeah, we don't have the prerogative of | 13:21:13 |
| 5 | changing it. | 13:21:16 |
| 6 | Q.   You don't allow any variations? | 13:21:16 |
| 7 | A.   No, we don't. | 13:21:19 |
| 8 | Q.   So he takes it or he leaves it as it is? | 13:21:23 |
| 9 | A.   That's correct.  And that's not only our | 13:21:26 |
| 10 | requirement, that's Filipino law.  It's required by | 13:21:29 |
| 11 | law that they sign the contract with the terms and | 13:21:33 |
| 12 | conditions as they are. | 13:21:40 |
| 13 | Q.   Okay.  And is part of NCL's job to insure | 13:21:41 |
| 14 | that your manning agencies and your seamen are in | 13:21:45 |
| 15 | compliance with that law? | 13:21:49 |
| 16 | A.   That's correct. | 13:21:51 |
| 17 | Q.   Okay.  Now, this provision that you have | 13:21:51 |
| 18 | right in front of you, Section 29, refers to a | 13:22:15 |
| 19 | Republic Act 8042.  Do you know where I mean? | 13:22:19 |
| 20 | A.   Yes. | 13:22:23 |
| 21 | Q.   Is that act given to the seafarers as part | 13:22:24 |
| 22 | of their contract? | 13:22:27 |
| 23 | A.   I don't know. | 13:22:31 |
| 24 | Q.   Do you know what that act says? | 13:22:34 |
| 25 | A.   No, I don't. | 13:22:37 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | Q.   We've just read one or two provisions.  Do | 13:22:38 |
| 2 | you know how long it takes the average seaman to read | 13:22:48 |
| 3 | and understand this contract? | 13:22:53 |
| 4 | A.   No, I don't. | 13:22:55 |
| 5 | Q.   You think it would take a long time, having | 13:22:58 |
| 6 | just read a few portions yourself? | 13:23:00 |
| 7 | A.   I think that's reasonable to say. | 13:23:03 |
| 8 | Q.   Well, on page four of that contract in | 13:23:12 |
| 9 | front of you it lists some terms and there's a column | 13:23:14 |
| 10 | that says Gr. 1, Gr. 7, Gr. 10.  Do you see where I | 13:23:29 |
| 11 | mean? | 13:23:35 |
| 12 | A.   Yes. | 13:23:35 |
| 13 | Q.   What does that mean?  What does that stand | 13:23:38 |
| 14 | for; do you know? | 13:23:41 |
| 15 | A.   It refers to the schedule of disability | 13:23:47 |
| 16 | allowance. | |
| 17 | THE COURT REPORTER:  Refers to the schedule | |
| 18 | of? | |
| 19 | THE WITNESS: Disability allowance. | |
| 20 | BY MR. HUGGETT: | 13:23:51 |
| 21 | Q.   And what does GR mean? | 13:23:52 |
| 22 | A.   Impediment grade. | 13:23:57 |
| 23 | THE COURT REPORTER:  I'm sorry? | |
| 24 | THE WITNESS:  Impediment grade.  Or | |
| 25 | impediment grade, I suppose. | |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

177

```
 1   BY MR. HUGGETT:                                        13:24:03
 2        Q.   And do you know what the seamen is told      13:24:03
 3   that that means?                                       13:24:05
 4        A.   No, I don't.                                 13:24:18
 5        Q.   Looking in the right-hand column of that     13:24:19
 6   page, there's a column that says "impediment grade,"   13:24:22
 7   and under it has 1 through 14.  You see where I'm      13:24:25
 8   talking about?                                         13:24:29
 9        A.   Yes.                                          13:24:29
10        Q.   And then it says, the next column is         13:24:30
11   US 50,000?                                             13:24:32
12        A.   Yes.                                          13:24:35
13        Q.   Is US 50,000, times 120 percent the maximum  13:24:39
14   that a seaman can recover under this contract?         13:24:43
15             MR. MASE:  Objection, lack of qualification  13:24:46
16        and foundation.                                   13:24:48
17             THE WITNESS:  With respect to disability,    13:24:58
18        it appears to be that.                            13:25:00
19   BY MR. HUGGETT:
20        Q.   And how much do you get for a burn?          13:25:05
21             MR. MASE:  Objection, lack of                13:25:09
22        qualification, foundation.                        13:25:11
23             THE WITNESS:  I don't know.                   13:25:13
24   BY MR. HUGGETT:
25        Q.   Does it even mention burns in this entire    13:25:14
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | contract? | 13:25:19 |
| 2 | A.   I don't know. | 13:25:21 |
| 3 | Q.   Does this contract and this schedule of | 13:25:32 |
| 4 | disability also cover death? | 13:25:34 |
| 5 | MR. MASE:  Same objection. | 13:25:47 |
| 6 | THE WITNESS:  I believe that's covered in a | 13:26:11 |
| 7 | separate section. | 13:26:14 |
| 8 | BY MR. HUGGETT: | |
| 9 | Q.   Which section is that or page? | 13:26:14 |
| 10 | A.   Section 20. | 13:27:12 |
| 11 | Q.   20, okay. | 13:27:13 |
| 12 | Is it your understanding that the maximum | 13:27:35 |
| 13 | that can be received for a death, if it's work | 13:27:37 |
| 14 | related, is $50,000 US? | 13:27:42 |
| 15 | A.   Under Section 20, yes. | 13:27:47 |
| 16 | Q.   Are there any other sections that he | 13:27:49 |
| 17 | receives additional money for or his family? | 13:27:52 |
| 18 | A.   Our CBA exceeds these compensation regs. | 13:27:56 |
| 19 | Q.   Are they also entitled to bring a claim | 13:28:03 |
| 20 | under your CBA, meaning Collective Bargaining | 13:28:07 |
| 21 | Agreement? | 13:28:11 |
| 22 | MR. MASE:  Objection, calls for a legal | 13:28:11 |
| 23 | conclusion, lack of qualification. | 13:28:13 |
| 24 | THE WITNESS:  I can't answer that. | 13:28:17 |
| 25 | BY MR. HUGGETT: | |

```
1        Q.    Is it your understanding that seamen are        13:28:21
2   limited to claims or disputes to bringing it,              13:28:23
3   pursuant to this contract, with the POEA?                  13:28:27
4        A.    Yes.                                            13:28:29
5              MR. MASE:  Same objection.                      13:28:30
6   BY MR. HUGGETT:
7        Q.    And so is there any other means for them to     13:28:31
8   obtain any other benefits besides what's listed here?      13:28:35
9              MR. MASE:  Same objection.                      13:28:41
10             THE WITNESS:  There are other benefits          13:28:46
11        available to them in the Philippines.                13:28:49
12  BY MR. HUGGETT:
13       Q.    Okay.  Can you tell me what those are?          13:28:50
14       A.    No, I cannot.                                   13:28:52
15       Q.    Is it another means of compensation?            13:28:54
16  Another form, like a lawsuit, or a claim under the         13:29:01
17  CBA which you mentioned?                                   13:29:05
18       A.    I don't know.                                   13:29:08
19       Q.    Do they have a right to a claim under the       13:29:09
20  CBA that's different from this one under the POEA?         13:29:13
21             MR. MASE:  Same objection.                      13:29:15
22             THE WITNESS:  The compensation limits in        13:29:23
23        the CBA are higher than what they are in the         13:29:25
24        Standard Terms and Conditions.                       13:29:31
25  BY MR. HUGGETT:
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

| | | |
|---|---|---|
| 1 | Q. Okay. And would the seamen have to bring a | 13:29:32 |
| 2 | separate or a different claim to get those higher | 13:29:35 |
| 3 | limits under the CBA? | 13:29:37 |
| 4 | A. No. | 13:29:40 |
| 5 | Q. So he goes under this same contract? | 13:29:40 |
| 6 | A. Yes. | 13:29:43 |
| 7 | Q. So evidently there are other things or | 13:29:43 |
| 8 | documents which modify this basic contract in terms | 13:29:47 |
| 9 | of the rights of the seamen? | 13:29:50 |
| 10 | A. It exceeds the minimum required terms and | 13:30:02 |
| 11 | conditions. | 13:30:06 |
| 12 | Q. And my question is: To find that, you | 13:30:06 |
| 13 | would have to refer to another document besides these | 13:30:08 |
| 14 | packets which the seamen is given? | 13:30:12 |
| 15 | A. Yes. | 13:30:16 |
| 16 | Q. And that would be your Collective | 13:30:17 |
| 17 | Bargaining Agreement? | 13:30:21 |
| 18 | A. Yes. | 13:30:22 |
| 19 | Q. Okay. Are there any other things or ways | 13:30:22 |
| 20 | that the seamen can recover besides making a claim | 13:30:25 |
| 21 | under this POEA or the CBA? | 13:30:28 |
| 22 | A. Yes, there are. | 13:30:30 |
| 23 | Q. What are they? | 13:30:31 |
| 24 | A. I don't know. | 13:30:33 |
| 25 | Q. Okay. Does one of those include a regular | 13:30:34 |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

```
1   lawsuit?                                                    13:30:40

2        A.    Not under this contract.                         13:30:40

3        Q.    Not under this contract.  Okay.  Good            13:30:42

4   point.

5              Is this contract limited to contract             13:30:47

6   work-related claims?                                        13:30:50

7              MR. MASE:  Objection, lack of qualification       13:30:54

8        and foundation.                                        13:30:55

9              THE WITNESS:  I'm sorry.  Can you rephrase         13:30:56

10       that question?                                          13:30:59

11  BY MR. HUGGETT:

12       Q.    Yes.  The claims that can be brought under        13:31:02

13  this POEA contract, are they contractual claims for         13:31:05

14  work-related disputes?                                       13:31:11

15             MR. MASE:  Same objection.                        13:31:16

16             THE WITNESS:  I don't think I understand          13:31:17

17       your question.                                          13:31:19

18  BY MR. HUGGETT:

19       Q.    Can you bring a tort claim under this, a          13:31:19

20  claim for negligence under this POEA contract?              13:31:23

21             MR. MASE:  Same objection.                        13:31:27

22             THE WITNESS:  I don't know.                        13:31:30

23  BY MR. HUGGETT:

24       Q.    Are the seamen ever told the difference in        13:31:32

25  bringing a negligence-related claim and a contract          13:31:38
```

182

```
 1   work-related claim?                                    13:31:43
 2       A.   I don't know.                                 13:31:48
 3       Q.   Do the seamen have a right to maintenance     13:31:53
 4   and cure on Norwegian Cruise Line ships?               13:31:59
 5           MR. MASE:  Objection, lack of qualification     13:32:00
 6       on the part of the witness to answer, calls for     13:32:01
 7       a legal conclusion, speculative, inadequate         13:32:04
 8       predicate, inadequate foundation.                   13:32:07
 9           MR. HUGGETT:  That's it.                        13:32:10
10           THE WITNESS:  Do you want me to answer?         13:32:16
11           MR. MASE:  Sure.                                13:32:18
12           THE WITNESS:  Yes, under the CBA.               13:32:18
13   BY MR. HUGGETT:                                         13:32:18
14       Q.   Okay.  Are they all -- and does the CBA        13:32:20
15   provide for maintenance and cure?                       13:32:24
16       A.   Yes, it does.                                  13:32:25
17       Q.   And does the POEA contract provide for         13:32:26
18   maintenance and cure?                                   13:32:31
19       A.   Yes, it does.                                  13:32:39
20       Q.   And what is the source of your knowledge of    13:32:44
21   that?                                                   13:32:46
22       A.   Knowledge of what?                             13:32:47
23       Q.   That they have a right to bring a claim for    13:32:48
24   maintenance and cure under this POEA contract as well   13:32:53
25   as the CBA contract?                                    13:32:56
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

```
1              MR. MASE:  Same objection.                    13:32:57

2              THE WITNESS:  I'm familiar with both.         13:32:59

3   BY MR. HUGGETT:

4        Q.    Okay.  And do you know whether they have a    13:33:01

5   right to bring a claim under US law for your vessels     13:33:03

6   doing business in Miami, Florida?                        13:33:09

7              MR. MASE:  Same objection.                    13:33:10

8              THE WITNESS:  No, I don't.                    13:33:11

9   BY MR. HUGGETT:

10       Q.    Okay.  Do you know this fellow Nicholas C.    13:33:13

11  Torres?                                                  13:34:29

12       A.    Yes, I do.                                    13:34:29

13       Q.    And who is he?                                13:34:30

14       A.    I believe he's the attorney for CF Sharp.     13:34:31

15       Q.    His affidavit says he's legal and claims      13:34:35

16  manager for CF Sharp.  Would you understand he's also    13:34:40

17  that?                                                    13:34:43

18       A.    If that's what he claims to be, yes.          13:34:44

19       Q.    Now, in Section 10 of his affidavit he says   13:35:04

20  that if there is any dispute arising out of the          13:35:12

21  employment pursuant to Section 29, the parties may,      13:35:15

22  at their option, submit the claim to other kinds of      13:35:23

23  arbitration.                                             

24              Let me hand you that so you can see it.      13:35:33

25       A.    Okay.                                         13:36:11
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

1      Q.    Do you agree with that?                          13:36:11

2      A.    I'm not a lawyer, so I can't really say yes      13:36:12

3  or no.                                                     13:36:15

4      Q.    Okay.  When he says, "They may at their          13:36:16

5  option submit the claim," does that indicate to you       13:36:20

6  that there's an option, that there's discretion?          13:36:22

7           MR. MASE:  Objection to form, calls for a         13:36:27

8      legal conclusion, lack of qualification.               13:36:32

9           THE WITNESS:  I believe that's what he's          13:36:35

10     stating.  I can't --                                   13:36:38

11 BY MR. HUGGETT:

12     Q.    Okay.  Now, let's then look at 29, which is      13:36:39

13 the contract that you're familiar with, the Standard      13:36:42

14 Terms and Conditions.  Do you have 29 there, page         13:36:54

15 three.

16     A.    Is that it?

17     Q.    Would you agree that the first sentence          13:37:00

18 states that if there is a collective bargaining            13:37:03

19 agreement, the parties shall submit their claim or         13:37:13

20 dispute to a voluntary arbitrator?                         13:37:17

21          MR. MASE:  Same objections.                       13:37:23

22          THE WITNESS:  Yes.                                13:37:26

23 BY MR. HUGGETT:

24     Q.    Okay.  Does it disting -- does it say who        13:37:28

25 the voluntary arbitrator must be?                          13:37:31

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

| | | |
|---|---|---|
| 1 | A.    No, it does not. | 13:37:36 |
| 2 | Q.    Would you agree that there is a collective | 13:37:38 |
| 3 | bargaining agreement in place here? | 13:37:42 |
| 4 | A.    Yes. | 13:37:44 |
| 5 | Q.    Okay.  And would you agree that, therefore, | 13:37:45 |
| 6 | pursuant to the first sentence of that, they, the | 13:37:47 |
| 7 | parties, may submit to a voluntary arbitrator? | 13:37:50 |
| 8 | MR. MASE:  Same objection. | 13:37:55 |
| 9 | THE WITNESS:  I'm not a lawyer, so I can't | 13:38:00 |
| 10 | speculate on that. | 13:38:02 |
| 11 | BY MR. HUGGETT: | |
| 12 | Q.    You have participated in formulating the | 13:38:02 |
| 13 | Collective Bargaining Agreement, have you not? | 13:38:07 |
| 14 | A.    Yes, I have. | 13:38:09 |
| 15 | Q.    And it's your understanding that that | 13:38:11 |
| 16 | Collective Bargaining Agreement sets up a means for | 13:38:20 |
| 17 | designating arbitrators, does it not? | |
| 18 | A.    Yes, it does. | 13:38:27 |
| 19 | Q.    And therefore, if it sets up a means for | 13:38:40 |
| 20 | designating arbitrators, pursuant to the first | 13:38:44 |
| 21 | paragraph, that a seaman could then follow that and | 13:38:45 |
| 22 | have a voluntary arbitrator set up pursuant to the | 13:38:49 |
| 23 | means specified in the CBA? | 13:38:53 |
| 24 | A.    That's how I understand it, yes. | 13:39:00 |
| 25 | Q.    Okay.  You interpret it that that must | 13:39:12 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1  therefore be the POEA arbitrator?                    13:39:14
 2       A.    Again, I'm not lawyer.  I can't interpret 13:39:20
 3  it.                                                   13:39:23
 4       Q.    The second sentence says if the parties are 13:39:23
 5  not covered by a collective bargaining agreement,    13:39:25
 6  then they shall submit the claim to the exclusive    13:39:28
 7  jurisdiction of the NLRC, National Labor Relation    13:39:32
 8  Commission, pursuant to such and such an act.        13:39:38
 9            You see what I mean, where I'm speaking?   13:39:41
10            MR. MASE:  The question is:  Does he see   13:39:43
11       where you're speaking?                          13:39:45
12            MR. HUGGETT:  Yeah, does he see where I'm  13:39:47
13       reading.                                        13:39:49
14            THE WITNESS:  Yes, I do.                    13:39:49
15  BY MR. HUGGETT:
16       Q.    So, in this case, is it your understanding 13:39:50
17  that there is a collective bargaining agreement in   13:39:57
18  place, and that they shall submit to a voluntary     13:40:01
19  arbitrator or panel, and that the second sentence    13:40:08
20  does not apply?                                       13:40:10
21            MR. MASE:  Objection to the form of the    13:40:11
22       question, lack of qualification on the part of  13:40:12
23       the witness, lack of foundation.                13:40:14
24            THE WITNESS:  I can't draw legal           13:40:15
25       conclusions.
```

187

```
1              THE COURT REPORTER:  I can't?
2              THE WITNESS:  Draw legal conclusions.        13:40:21
3    BY MR. HUGGETT:
4         Q.    Your answer is you don't know?            13:40:21
5         A.    I don't know.                             13:40:23
6         Q.    Okay.  And do think that the seaman knows? 13:40:24
7         A.    I can't speak for the seaman.             13:40:26
8         Q.    Okay.  If you don't know, you can certainly 13:40:27
9    assume that a seaman doesn't know, correct?          13:40:29
10        A.    I can't assume.                           13:40:32
11        Q.    Okay.  But the plain language of the word, 13:40:33
12   whether you are a seaman or a lawyer, says that if   13:40:38
13   they're not covered by a collective bargaining       13:40:40
14   agreement then they shall follow certain steps.      13:40:44
15             You see that, correct?                     13:40:49
16             MR. MASE:  The same objection.             13:40:50
17             THE WITNESS:  Yes, sir.  I'm reading it the 13:40:55
18        same as you are.                                13:40:56
19   BY MR. HUGGETT:
20        Q.    And in this case you're telling us that   13:40:57
21   they are covered by a collective bargaining          13:40:59
22   agreement?                                           13:41:02
23        A.    Yes, they are.                            13:41:03
24        Q.    So if the seaman is reading the plain     13:41:06
25   language of that, he would not need to submit his    13:41:09
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | claim to the National Labor or Labor Commission, | 13:41:11 |
| 2 | would he? | 13:41:17 |
| 3 | MR. MASE:  Objection, same objection. | 13:41:17 |
| 4 | THE WITNESS:  I can't draw legal | 13:41:38 |
| 5 | conclusions. | 13:41:39 |
| 6 | BY MR. HUGGETT: | |
| 7 | Q.   Is the answer you don't know? | 13:41:40 |
| 8 | A.   I don't know. | 13:41:41 |
| 9 | Q.   And did you -- and therefore, you don't | 13:41:42 |
| 10 | think the seamen would know either, correct? | 13:41:42 |
| 11 | A.   No, that's not my testimony. | 13:41:44 |
| 12 | Q.   You don't know if the seaman knows? | 13:41:46 |
| 13 | A.   I don't know. | 13:41:48 |
| 14 | Q.   And you make no attempt or you have no | 13:41:49 |
| 15 | knowledge of whether the -- your agents, the manning | 13:41:52 |
| 16 | agency, explains that difference to the seamen, do | 13:41:57 |
| 17 | you? | 13:42:00 |
| 18 | A.   I -- no, I don't. | 13:42:01 |
| 19 | Q.   And does the -- we discussed then briefly | 13:42:05 |
| 20 | that the CBA has a provision for the appointment of | 13:42:18 |
| 21 | arbitrators; is that correct?  Could you tell me what | 13:42:22 |
| 22 | provision that is? | 13:42:27 |
| 23 | A.   I would have to read it. | 13:42:28 |
| 24 | Q.   Okay.  I'll help you find it. | 13:42:29 |
| 25 | I'm looking at Annex 3 to the one that your | 13:42:32 |

| | | |
|---|---|---|
| 1 | counsel have attached to the pleadings, and I'll hand | 13:42:35 |
| 2 | it to you. | 13:42:39 |
| 3 | It says, under Section 7:  Grievance | 13:42:41 |
| 4 | committee shall resolve any dispute, and the same | 13:42:52 |
| 5 | shall be referred to a voluntary arbitration | 13:42:55 |
| 6 | committee.  And then it goes on about impartial | 13:42:58 |
| 7 | arbitrators. | |
| 8 | Would that be the section you are | 13:43:02 |
| 9 | referring to?  And I'll hand you my copy.  It may be | 13:43:04 |
| 10 | a little smaller.  Your lawyer might have a bigger | 13:43:06 |
| 11 | one, but that's the one they gave us. | 13:43:09 |
| 12 | A.   Yes. | 13:43:17 |
| 13 | Q.   Okay.  So would you agree then that in | 13:43:18 |
| 14 | Section 29 of the Dispute Settlement Procedures, that | 13:43:23 |
| 15 | where the sentence says "if there is no provision as | 13:43:30 |
| 16 | to voluntary arbitrators" would not apply because you | 13:43:34 |
| 17 | do have a provision for the selection of voluntary | 13:43:37 |
| 18 | arbitrators? | 13:43:41 |
| 19 | MR. MASE:  Same objection. | 13:43:41 |
| 20 | THE WITNESS:  I can't, just by looking at | 13:43:45 |
| 21 | that, draw that conclusion, so... | 13:43:48 |
| 22 | BY MR. HUGGETT: | |
| 23 | Q.   You don't know? | 13:43:49 |
| 24 | A.   I don't know. | 13:43:50 |
| 25 | Q.   And you don't know whether the seamen | 13:43:50 |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

| | | |
|---|---|---|
| 1 | knows? | 13:43:52 |
| 2 | A.    NO. | 13:43:53 |
| 3 | Q.    Okay.  And you don't know whether the | 13:43:56 |
| 4 | manning agencies make any attempt to explain that | 13:43:57 |
| 5 | difference? | 13:44:01 |
| 6 | A.    I can't speak for them. | 13:44:02 |
| 7 | Q.    The answer is you don't know? | 13:44:04 |
| 8 | A.    I don't know. | 13:44:06 |
| 9 | Q.    Okay.  But certainly you would agree that | 13:44:06 |
| 10 | the CBA, the Collective Bargaining Agreement that you | 13:44:10 |
| 11 | are familiar with, and that you have had a hand in | 13:44:14 |
| 12 | formulating, does provide for the appointment of | 13:44:17 |
| 13 | arbitrators, a method and a means? | 13:44:21 |
| 14 | A.    Yes, it does. | 13:44:22 |
| 15 | Q.    Okay.  Thank you. | 13:44:24 |
| 16 | MR. MASE:  Want a break? | |
| 17 | THE WITNESS:  No. | |
| 18 | BY MR. HUGGETT: | |
| 19 | Q.    Have you ever been through that | 13:46:17 |
| 20 | provision -- or that process of appointment of | 13:46:20 |
| 21 | voluntary arbitrators in your work with the company | 13:46:24 |
| 22 | pursuant to the CBA? | 13:46:27 |
| 23 | A.    No, I have not. | 13:46:28 |
| 24 | Q.    Do you know of any of your colleagues that | 13:46:30 |
| 25 | have done that? | 13:46:33 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | A.    No, I don't. | 13:46:33 |
| 2 | Q.    Do you know whether it's ever happened that | 13:46:34 |
| 3 | anyone has evoked the CBA provisions to appoint | 13:46:38 |
| 4 | voluntary arbitrators? | 13:46:42 |
| 5 | A.    No, I don't. | 13:46:43 |
| 6 | Q.    But you would agree that it's in the CBA, a | 13:46:44 |
| 7 | provision for doing so, even though it may not have | 13:46:48 |
| 8 | been invoked to your knowledge? | 13:46:50 |
| 9 | A.    Yes, it is. | 13:46:51 |
| 10 | Q.    That's a "yes"? | 13:46:52 |
| 11 | A.    Yes. | 13:46:53 |
| 12 | Q.    Okay.  Can you tell me who worked with you | 13:46:53 |
| 13 | or assisted you in formulating that CBA, Collective | 13:47:08 |
| 14 | Bargaining Agreement? | 13:47:14 |
| 15 | A.    All the names are listed in the C -- in the | 13:47:17 |
| 16 | protocol. | 13:47:26 |
| 17 | Q.    Oh, that's the protocol.  Yes, yes, we'll | 13:47:27 |
| 18 | go back to that. | 13:47:30 |
| 19 | As I recall, Niles Nordh, from -- | 13:47:32 |
| 20 | A.    Star Cruises. | 13:47:37 |
| 21 | Q.    -- Star Cruises; Mr. Lara, from Curtis | 13:47:38 |
| 22 | Mase's office; Robert Kritzman, from the -- one of | 13:47:43 |
| 23 | the general counsel of the company? | 13:47:46 |
| 24 | A.    That's correct. | 13:47:49 |
| 25 | Q.    And who else was there? | 13:47:49 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

192

```
 1        A.    (No response.)
 2        Q.    Well, I'll come back to that.                    13:48:23
 3              But you didn't formulate it on your own,         13:48:25
 4    that was the consensus of all the people; is that         13:48:27
 5    correct?                                                   13:48:31
 6        A.    Yes.                                             13:48:31
 7        Q.    Okay.  There it is.
 8              Sigve Bru was there also, right?                 13:49:03
 9        A.    Yes, he was.                                     13:49:06
10        Q.    Do you know where he is now?  Is he still       13:49:08
11    in Miami?                                                  13:49:11
12        A.    No, I believe he lives in Norway.               13:49:11
13        Q.    Near Oslo?                                       13:49:13
14        A.    I'm not sure.                                    13:49:15
15        Q.    Do you stay in contact with him?                13:49:16
16        A.    No.                                             13:49:19
17        Q.    Okay.  Have you ever been on a voyage of        13:49:47
18    the Norway or any of the other ships while they're at     13:49:50
19    sea on a regular voyage?                                  13:49:55
20        A.    Yes, I have.                                     13:49:57
21        Q.    Okay.  Are many or most of the passengers       13:49:59
22    American?                                                  13:50:02
23        A.    Yes, they are.                                   13:50:06
24        Q.    And does NCL have a base of operations in       13:50:07
25    Miami?                                                     13:50:15
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

193

| | | |
|---|---|---|
| 1 | A.    Yes, we do. | 13:50:15 |
| 2 | Q.    Most, to your knowledge, most of the | 13:50:18 |
| 3 | operations are run from the base of operations in | 13:50:21 |
| 4 | Miami; is that accurate? | 13:50:24 |
| 5 | A.    Yes, that would be accurate. | 13:50:29 |
| 6 | THE COURT REPORTER:  I'm sorry? | |
| 7 | THE WITNESS:  That would be accurate. | |
| 8 | BY MR. HUGGETT: | 13:50:30 |
| 9 | Q.    And depending upon the season, many of the | 13:50:35 |
| 10 | vessels' home port is here in Miami? | 13:50:38 |
| 11 | A.    On occasions, yes. | 13:50:43 |
| 12 | Q.    And NCL is a foreign company, it is not an | 13:50:51 |
| 13 | American company? | 13:50:55 |
| 14 | A.    Legally, I don't know. | 13:50:56 |
| 15 | Q.    Does it fly -- the ships fly a Bermuda | 13:50:58 |
| 16 | flag? | 13:51:03 |
| 17 | A.    No, we do not.  We do not. | 13:51:03 |
| 18 | Q.    What do you fly? | 13:51:05 |
| 19 | A.    Bahamas. | 13:51:06 |
| 20 | Q.    A Bahamas flag, okay. | 13:51:07 |
| 21 | Do you know where the company is | 13:51:10 |
| 22 | registered? | 13:51:12 |
| 23 | A.    In Bermuda. | 13:51:12 |
| 24 | Q.    In Bermuda, okay. | 13:51:14 |
| 25 | Do you know why they fly a Bahamas flag if | 13:51:17 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1  they are registered in Bermuda, if the company --      13:51:18
 2      A.   I don't know.  I don't know.                   13:51:22
 3      Q.   To your knowledge, neither the flag -- none    13:51:24
 4  of the ships fly an American flag?                      13:51:27
 5      A.   At this point, no.                             13:51:29
 6      Q.   And to your knowledge, the company, none --    13:51:31
 7  the company, nor any of its related companies, is       13:51:34
 8  registered in the United States as an American          13:51:37
 9  company?                                                13:51:39
10      A.   I don't know.                                  13:51:40
11      Q.   You don't know of any that are?               13:51:42
12      A.   I don't know if there are any.                 13:51:45
13           MR. MASE:  Actually, I'm willing to            13:51:46
14      stipulate that a related company is registered      13:51:49
15      in the United States and does fly an American       13:51:51
16      flag.                                               13:51:53
17  BY MR. HUGGETT:
18      Q.   Is NCL, the company that is NCL, Limited, a    13:52:00
19  foreign company, to your knowledge?                     13:52:05
20      A.   I don't know.                                  13:52:08
21      Q.   You don't know, okay.                          13:52:08
22           Do you know if -- Norwegian Cruise Lines       13:52:10
23  Limited does not pay any American income tax, do        13:52:21
24  they?                                                   13:52:24
25      A.   I have no idea.                                13:52:24
```

195

| | | |
|---|---|---|
| 1 | Q.    Okay.  And are you an American citizen? | 13:52:25 |
| 2 | A.    No, I'm not. | 13:52:31 |
| 3 | Q.    What is your status? | 13:52:32 |
| 4 | A.    I am a permanent resident. | 13:52:33 |
| 5 | Q.    Permanent resident, okay. | 13:52:37 |
| 6 | And do the land-based employees of NCL have | 13:52:47 |
| 7 | to pay American income tax? | 13:52:51 |
| 8 | A.    We follow the US laws. | 13:52:53 |
| 9 | MR. MASE:  Objection, calls for a legal | 13:52:55 |
| 10 | conclusion. | 13:52:57 |
| 11 | BY MR. HUGGETT: | |
| 12 | Q.    Do you pay American income tax? | 13:52:58 |
| 13 | A.    I'm sorry, I pay.  I follow US tax laws. | 13:53:00 |
| 14 | Q.    Okay.  Now, the Filipino seamen onboard, do | 13:53:04 |
| 15 | they pay American income taxes? | 13:53:06 |
| 16 | A.    No, they do not. | 13:53:09 |
| 17 | Q.    Does NCL withhold any American income taxes | 13:53:11 |
| 18 | for those seamen? | 13:53:16 |
| 19 | A.    No, we do not. | 13:53:18 |
| 20 | Q.    And does Norwegian Cruise Lines in its | 13:53:19 |
| 21 | business compete with other American tourism? | 13:53:24 |
| 22 | A.    That's not my area of expertise.  I can't | 13:53:30 |
| 23 | answer that. | 13:53:32 |
| 24 | Q.    You've been with the company 20 years.  Is | 13:53:33 |
| 25 | it your opinion that they do compete, from your | 13:53:35 |

| | |
|---|---|
| 1 | general knowledge? | 13:53:38 |
| 2 | MR. MASE:  He's just answered the question. | 13:53:39 |
| 3 | BY MR. HUGGETT: | |
| 4 | Q.   Go ahead. | 13:53:44 |
| 5 | A.   Yes. | 13:53:45 |
| 6 | Q.   Okay.  Can you tell us as an employee -- | 13:53:57 |
| 7 | from time to time do you review any company | 13:54:01 |
| 8 | documents, financial documents? | 13:54:06 |
| 9 | A.   Can you be more specific? | 13:54:12 |
| 10 | Q.   Yeah.  A lot of companies like, for | 13:54:14 |
| 11 | instance, Carnival put out a financial document every | 13:54:16 |
| 12 | year. | 13:54:20 |
| 13 | A.   Yes, I see them. | 13:54:20 |
| 14 | Q.   Okay.  Can you tell me the gross revenue | 13:54:22 |
| 15 | for NCL for the last year? | 13:54:24 |
| 16 | A.   No, I cannot. | 13:54:26 |
| 17 | Q.   Is it over a half billion dollars? | 13:54:27 |
| 18 | MR. MASE:  Don't answer that question. | 13:54:30 |
| 19 | Financial discovery is not permitted at this | 13:54:32 |
| 20 | stage.  I move for a protective order pursuant | 13:54:33 |
| 21 | Rule 26 of the Federal Rules of Civil Procedure. | 13:54:36 |
| 22 | MR. HUGGETT:  You'll will find it -- | 13:54:39 |
| 23 | MR. Mase:  Beg your pardon? | 13:54:41 |
| 24 | MR. HUGGETT:  I don't agree with you. | 13:54:42 |
| 25 | MR. MASE:  No, I understand you don't agree | 13:54:43 |

```
 1        as to the question.  I just believe, you know,        13:54:45
 2        in good faith, and I'll make a good faith             13:54:47
 3        proffer for the record, I believe that financial      13:54:49
 4        discovery at this stage in the proceedings is         13:54:50
 5        inappropriate, and on that basis I move for           13:54:53
 6        protective order.                                     13:54:56
 7   BY MR. HUGGETT:
 8        Q.   The monies that NCL makes from its               13:54:59
 9   Miami-based business largely comes from Americans,         13:55:05
10   does it not?                                               13:55:11
11        A.   I don't know.                                    13:55:12
12        Q.   Since most of the passengers are Americans       13:55:13
13   on the ship, as you told us earlier when you had           13:55:15
14   ridden on the ships?                                       13:55:20
15        A.   I don't know if that's what I said, but          13:55:20
16   it's my understanding that most of the passengers are      13:55:22
17   Americans.                                                 13:55:25
18        Q.   Okay.  And NCL would makes its money from        13:55:26
19   American passengers paying the price of the ticket?        13:55:30
20        A.   From everybody paying the price of the           13:55:36
21   ticket.                                                    13:55:39
22        Q.   Okay.  Now, would you agree that NCL does        13:55:50
23   compete with other American tourism that does pay          13:55:55
24   American income tax?                                       13:55:58
25        A.   I don't know that.                               13:56:01
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | Q. Okay. You have no evidence to the | 13:56:02 |
| 2 | contrary, or no knowledge? | 13:56:07 |
| 3 | A. I have no knowledge. | 13:56:09 |
| 4 | MR. MASE: Object to the form. | 13:56:09 |
| 5 | THE COURT REPORTER: I'm sorry? | 13:56:11 |
| 6 | THE WITNESS: I have no knowledge of that. | 13:56:11 |
| 7 | BY MR. HUGGETT: | |
| 8 | Q. Okay. Let's talk about what percentage | 13:56:14 |
| 9 | roughly your -- when you were -- your last job was | 13:56:27 |
| 10 | superintendent of shipboard personnel. | 13:56:31 |
| 11 | Can you give me an estimate of the | 13:56:37 |
| 12 | percentage of the shipboard personnel that are | 13:56:39 |
| 13 | Filipino? | 13:56:43 |
| 14 | A. At this point in time? | 13:56:43 |
| 15 | Q. Sure. | 13:56:45 |
| 16 | A. Approximately 30, 30 percent. | 13:56:50 |
| 17 | Q. Thirty percent. | |
| 18 | And what percentage would be American? | 13:56:59 |
| 19 | A. I don't know. | 13:57:02 |
| 20 | Q. Would it generally be limited to people | 13:57:02 |
| 21 | like the band and entertainers and maybe cruise | 13:57:05 |
| 22 | directors? | 13:57:09 |
| 23 | A. No, I wouldn't say that. | 13:57:15 |
| 24 | Q. You don't know the percent? | 13:57:17 |
| 25 | A. No, I don't. | 13:57:18 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

199

```
 1        Q.    Would it be a much smaller percent than the    13:57:18
 2    number of Filipinos?                                      13:57:21
 3        A.    I would assume, yes.                            13:57:23
 4        Q.    And roughly what would be the total number      13:57:29
 5    of onboard personnel on the fleet at this time?           13:57:32
 6        A.    Approximately 11,000.                           13:57:37
 7        Q.    So 30 percent of 11,000 would be the number     13:57:39
 8    Filipinos, roughly?                                       13:57:43
 9        A.    Roughly.                                        13:57:44
10        Q.    Do most of the Filipinos make similar wages     13:58:30
11    to what the ten involved in this case do?                 13:58:34
12        A.    Without seeing their salaries, I can't          13:58:37
13    testify.                                                  13:58:44
14        Q.    Most of the men made between 500 and 600,       13:58:44
15    $650 a month that are involved in this case.  Would       13:58:49
16    that be typical of the Filipino wages?                    13:58:53
17        A.    No.  And I beg to differ with your estimate     13:58:56
18    of their income.                                          13:59:01
19        Q.    Okay.  You want to take a look at the front     13:59:01
20    page of the document in front of you?  This               13:59:04
21    particular man was a fairly long-time employee,           13:59:17
22    wasn't he, compared to the others?                        13:59:21
23        A.    I don't know.                                   13:59:23
24        Q.    Okay.  Is this particular man's basic wage      13:59:27
25    $366 a month?                                             13:59:32
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

200

```
 1      A.    Basic wage, yes.                          13:59:32

 2      Q.    And his overtime guarantee is 334?        13:59:34

 3      A.    Yes.                                       13:59:37

 4      Q.    Would you say that would be typical of the 13:59:38

 5 wages of the seamen, the Filipino seamen?            13:59:40

 6      A.    No, I can't -- I can't make that statement. 13:59:44

 7      Q.    Can't make that?                           13:59:46

 8      A.    No.                                        13:59:47

 9      Q.    Okay.  You think it's more or less?        13:59:48

10      A.    More.                                      13:59:51

11      Q.    More, okay.                                13:59:51

12            Do you know how much the seaman Paul       14:01:36

13 Peralta made?

14      A.    No, I don't.

15            THE COURT REPORTER:  I'm sorry?

16            MR. HUGGETT:  P-E-R-A-L-T-A.               14:01:43

17 BY MR. HUGGETT:

18      Q.    Do you know how much the seaman Marcelino  14:01:45

19 -- Ronaldo Marcelino made?

20      A.    Off the top of my head, no.  Unless I see 14:01:50

21 the payroll records, I can't give you that figure.   14:01:57

22      Q.    Okay.  Why does NCL hire Filipinos?        14:02:08

23            MR. MASE:  Asked and answered, I think.    14:02:13

24            THE WITNESS:  Well, I can tell you one of  14:02:16

25      the reasons is that --                           14:02:18
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1  BY MR. HUGGETT:
 2       Q.    Okay.                                        14:02:19
 3       A.    -- the Philippines is extremely well         14:02:21
 4  organized and regulated when it comes to their          14:02:27
 5  overseas workers.                                       14:02:30
 6       Q.    Okay.                                        14:02:31
 7       A.    They have a very good -- they have good      14:02:31
 8  work ethics.  They're loyal people and they have a      14:02:38
 9  reliable system when it comes to documentation,         14:02:44
10  authentication of the licenses, and things like that.   14:02:49
11       Q.    In general, you say -- you included the      14:02:54
12  work ethics of workers themselves.  They work hard,     14:02:56
13  is that what you mean, they work well?                  14:03:00
14       A.    They work well.                              14:03:03
15       Q.    And they're loyal, by that you mean that     14:03:04
16  they stick with the company, they -- they follow the    14:03:07
17  rules and regulations?                                  14:03:09
18       A.    Yes, they do.                                14:03:10
19       Q.    And do they adapt well to the discipline of  14:03:11
20  shipboard life?                                         14:03:15
21       A.    For the most part, yes.                      14:03:16
22       Q.    Okay.  And they're nice people and they      14:03:18
23  work hard?                                              14:03:25
24       A.    Yes, they're nice people and they work       14:03:28
25  well.                                                   14:03:33
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | |
|---|---|
| 1 | Q.   And they would be cheaper to hire than | 14:03:33 |
| 2 | Americans? | 14:03:37 |
| 3 | A.   Is that a statement or -- or is that a | 14:03:39 |
| 4 | question? | 14:03:41 |
| 5 | Q.   I'm asking. | 14:03:41 |
| 6 | A.   I have no basis for making a comparison. | 14:03:42 |
| 7 | Q.   Well, in your duties when you were director | 14:03:46 |
| 8 | of shipboard personnel, did you hire people from many | 14:03:49 |
| 9 | different countries? | 14:03:54 |
| 10 | A.   Yes, I did. | 14:03:55 |
| 11 | Q.   And did that include any Americans? | 14:03:55 |
| 12 | A.   Yes, it did. | 14:03:57 |
| 13 | Q.   And were most of the Americans paid more | 14:03:58 |
| 14 | than most of the Filipinos? | 14:04:02 |
| 15 | A.   We follow the pay scale in the CBA | 14:04:03 |
| 16 | regardless of nationality. | 14:04:07 |
| 17 | Q.   My question is:  Do you know, or maybe you | 14:04:09 |
| 18 | don't know, whether most of the Americans were paid | 14:04:11 |
| 19 | more than most of the Filipinos? | 14:04:15 |
| 20 | A.   Well, you're comparing different positions. | 14:04:16 |
| 21 | Yes, in general I would say yes. | 14:04:19 |
| 22 | Q.   Okay.  And do you have Europeans onboard? | 14:04:21 |
| 23 | A.   Yes, we do. | 14:04:27 |
| 24 | Q.   Are most of the Europeans paid more than | 14:04:28 |
| 25 | most of the Filipinos? | 14:04:32 |

| | | |
|---|---|---|
| 1 | A.    No. | 14:04:34 |
| 2 | Q.    They're not? | 14:04:35 |
| 3 | A.    No. | 14:04:36 |
| 4 | Q.    When the ship is in port, are Filipinos | 14:04:46 |
| 5 | allowed to come into the city to send money home or | 14:04:49 |
| 6 | buy something? | 14:04:54 |
| 7 | A.    Filipinos, like everybody else, any | 14:04:55 |
| 8 | nationality. | 14:04:59 |
| 9 | Q.    Okay.  And they're -- they, to your | 14:05:00 |
| 10 | knowledge, they do come into Miami and make purchases | 14:05:02 |
| 11 | and buy a hamburger or something like that? | 14:05:05 |
| 12 | A.    Yes, they do. | 14:05:08 |
| 13 | Q.    Are they given any Filipino holidays off? | 14:05:31 |
| 14 | A.    Yes, they are. | 14:05:35 |
| 15 | Q.    And they don't have to work on those days, | 14:05:36 |
| 16 | or are they paid for them? | 14:05:38 |
| 17 | A.    They're paid.  If they work, they're paid | 14:05:40 |
| 18 | overtime. | 14:05:45 |
| 19 | Q.    So they work all the Philippine holidays, | 14:05:45 |
| 20 | whatever they may be, but your statement is they're | 14:05:49 |
| 21 | paid overtime for that? | 14:05:51 |
| 22 | A.    That was not my statement, no. | 14:05:52 |
| 23 | Q.    Okay. | |
| 24 | A.    They're paid over time if they work on | 14:05:53 |
| 25 | Filipino holidays. | 14:05:56 |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

204

```
 1        Q.    Okay.  And they do work on the Philippine   14:05:56
 2   holidays, don't they?                                  14:06:00
 3        A.    I don't know that.                          14:06:02
 4        Q.    You don't know?
 5              THE COURT REPORTER:  I'm sorry?
 6              THE WITNESS:  I don't know that.
 7   BY MR. HUGGETT:
 8        Q.    Well --                                     14:06:06
 9        A.    My statement was:  If they do, they are     14:06:06
10   paid for it.                                           14:06:11
11        Q.    Looking at that protocol again that we      14:06:18
12   discussed yesterday, you listed certain holidays that  14:06:22
13   were Philippine holidays, correct?                     14:06:27
14        A.    Yes.                                        14:06:29
15        Q.    And is the intent that they should -- that  14:06:30
16   they may have off those days if they wish to?          14:06:35
17        A.    No.                                         14:06:38
18        Q.    Oh, okay.  What is the intent of the        14:06:39
19   designated Philippine holidays for?                    14:06:43
20        A.    The intent is if the workload permits and   14:06:45
21   they wish to have the day off, they should be          14:06:49
22   permitted to do that.  If they have to work, they're   14:06:52
23   paid overtime for it.                                  14:06:55
24        Q.    Can you tell me the difference in a junior  14:07:13
25   deck and engine officer and a non-junior deck and      14:07:15
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1   engine officer?                                        14:07:20
 2       A.   They're different positions and they fall    14:07:22
 3   under different CBAs.                                  14:07:24
 4       Q.   Regular deck and engine officers are higher  14:07:26
 5   or lower than junior?                                 14:07:29
 6       A.   Higher.                                       14:07:30
 7       Q.   Higher.  Okay.  And what are the actual       14:07:31
 8   ranks in the deck and engine room?                    14:07:38
 9       A.   You want me to list all the positions?        14:07:43
10       Q.   Yeah.                                          14:07:45
11       A.   Okay.  Start with the Captain, Staff          14:07:45
12   Captain, chief officer, first officer, second         14:07:49
13   officer -- you want me to go down the list on the     14:08:03
14   ratings?                                               14:08:03
15       Q.   Yes.                                           14:08:03
16       A.   Bosun, carpenter, repairman, AB, OS, deck    14:08:12
17   boy.
18            THE COURT REPORTER:  Deck?
19            THE WITNESS:  Deck boy.
20   BY MR. HUGGETT:                                        14:08:18
21       Q.   Where do you draw the line for junior deck    14:08:21
22   and engine officers and more senior deck and engine   14:08:23
23   officers in this list?                                14:08:30
24       A.   Usually after first officer.                  14:08:31
25       Q.   First officer?                                14:08:33
```

| | | |
|---|---|---|
| 1 | A.   Yes. | 14:08:34 |
| 2 | Q.   So from second officer down would be the | 14:08:35 |
| 3 | junior, and non-juniors would be from the first | 14:08:38 |
| 4 | officer up? | 14:08:42 |
| 5 | A.   Yes. | 14:08:43 |
| 6 | Q.   In your fleet of 11,000, are any Filipinos | 14:08:47 |
| 7 | Captain? | 14:08:51 |
| 8 | MR. MASE:   Asked and answered yesterday. | 14:08:51 |
| 9 | MR. HUGGETT:   That's no? | 14:08:54 |
| 10 | THE WITNESS:   No. | 14:08:54 |
| 11 | BY MR. HUGGETT: | |
| 12 | Q.   In your fleet of 11,000, are any of them | 14:08:55 |
| 13 | Staff Captain? | 14:08:58 |
| 14 | A.   No. | 14:09:00 |
| 15 | Q.   In your fleet of 11,000, are any of them | 14:09:02 |
| 16 | chief -- I put CO. That's chief officer? | 14:09:06 |
| 17 | A.   Chief officer.  We had one.  He resigned. | 14:09:10 |
| 18 | Q.   Okay.  Do you have any at this time? | 14:09:13 |
| 19 | A.   No. | 14:09:15 |
| 20 | Q.   Okay.  Are, in the fleet of 11,000, any | 14:09:16 |
| 21 | Filipinos first officer? | 14:09:19 |
| 22 | A.   Yes.  I believe we have one. | 14:09:20 |
| 23 | Q.   One, okay.  But the other 30 percent are | 14:09:23 |
| 24 | all second officer and down? | 14:09:30 |
| 25 | A.   That was certainly not my testimony. | 14:09:35 |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

| | | |
|---|---|---|
| 1 | Q.   Okay.  As I understood your testimony, they | 14:09:37 |
| 2 | had -- at the present time you have one that's a | 14:09:42 |
| 3 | first officer; is that correct? | 14:09:44 |
| 4 | A.   Yes. | 14:09:45 |
| 5 | Q.   And none Captain, none the Staff Captain, | 14:09:47 |
| 6 | and none the chief officer? | 14:09:50 |
| 7 | A.   Correct. | 14:09:52 |
| 8 | Q.   So may I assume that, therefore, except for | 14:09:52 |
| 9 | that one, all Filipinos are either second officer, | 14:09:56 |
| 10 | bosun, carpenter, repairman, AB -- | 14:10:01 |
| 11 | THE COURT REPORTER:  Second officer -- | |
| 12 | BY MR. HUGGETT: | |
| 13 | Q.   From second officer on down? | 14:10:03 |
| 14 | A.   No.  You're talking solely about the deck | 14:10:05 |
| 15 | department. | 14:10:08 |
| 16 | Q.   Okay.  We'll start with that. | 14:10:08 |
| 17 | A.   Okay. | |
| 18 | Q.   All right.  In this list that you gave me, | 14:10:09 |
| 19 | that I wrote down, and you drew a -- you drew a line | 14:10:14 |
| 20 | between first officer, Chief Officer, Staff Captain, | 14:10:18 |
| 21 | and Captain, right? | 14:10:22 |
| 22 | A.   Yes. | 14:10:23 |
| 23 | Q.   The ones below that line are junior | 14:10:24 |
| 24 | officers? | 14:10:27 |
| 25 | A.   Yes. | 14:10:27 |

| | | |
|---|---|---|
| 1 | Q. Or regular ranks? | 14:10:27 |
| 2 | A. Yes. | 14:10:29 |
| 3 | Q. Is it true that only one Filipino is in the | 14:10:30 |
| 4 | ranks of first officer and above? | 14:10:34 |
| 5 | A. Yes. | 14:10:36 |
| 6 | Q. Okay. And therefore, in the deck and | 14:10:39 |
| 7 | engine crew of those that are the following ranks, | 14:10:43 |
| 8 | they're all junior officer, down -- | 14:10:45 |
| 9 | A. Yes. | 14:10:48 |
| 10 | Q. Second officer, down? | 14:10:49 |
| 11 | When the term in the contract of employment | 14:11:16 |
| 12 | is up, whatever it is, ten months for the one we have | 14:11:18 |
| 13 | in front us, does the seaman receive any more pay or | 14:11:21 |
| 14 | benefits from NCL? | 14:11:29 |
| 15 | Well, let's start with pay. Does he | 14:11:31 |
| 16 | receive any more pay after the ten months is up? | 14:11:33 |
| 17 | MR. MASE: I'm sorry. I don't understand | 14:11:36 |
| 18 | that. Do you mean like a bonus or continuation? | 14:11:38 |
| 19 | What exactly are you asking, because I'm | 14:11:40 |
| 20 | confused with the question. | 14:11:41 |
| 21 | MR. HUGGETT: I'll ask it again. | 14:11:42 |
| 22 | MR. MASE: Thank you. | |
| 23 | BY MR. HUGGETT: | |
| 24 | Q. Referring to Mr. Abdi Comedia, you have a | 14:11:43 |
| 25 | copy of his contract right there in front of you | 14:11:48 |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

209

```
 1  there.
 2      A.   Uh-hmm.                                    14:11:51
 3           MR. HUGGETT:   Put that down a little bit  14:11:51
 4      where you can see.   Just a -- okay.            14:11:54
 5  BY MR. HUGGETT:
 6      Q.   His duration of contract is ten months,   14:11:54
 7  correct?                                            14:11:57
 8      A.   Yes.                                        14:11:57
 9      Q.   And after the ten months is up, is he     14:11:58
10  entitled to any further pay?                        14:12:01
11      A.   Providing he fulfills his contract and    14:12:04
12  signs off, no.
13      Q.   Okay.   Does NCL have any obligation to   14:12:08
14  rehire him?                                         14:12:16
15      A.   No, we do not.                             14:12:17
16      Q.   Would he have to go back through the      14:12:20
17  manning agency hiring process to get another job with  14:12:23
18  NCL?                                                14:12:32
19      A.   Go through the hiring process, you mean the  14:12:32
20  interviewing process --                             14:12:35
21      Q.   Yes.
22      A.   -- selection process?   No.               14:12:36
23      Q.   He can just come straight to NCL?         14:12:38
24      A.   If he is to be rehired by NCL, yes.       14:12:42
25      Q.   Okay.   Well, my question was:   Do you have  14:12:46
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

```
 1   a provision for rehiring people?  If this Mr. Abdi        14:12:47

 2   Comedia's ten months is up, I think you told me you       14:12:54

 3   have no -- NCL has no obligation to rehire him --         14:12:58

 4        A.   Exactly.

 5        Q.   -- if they don't wish to?                        14:13:01

 6        A.   If -- if we don't wish to, we have no           14:13:02

 7   obligation to rehire him.                                 14:13:09

 8        Q.   Okay.  And if Abdi Comedia, or any man in a     14:13:10

 9   similar position, wants to come back and work for the     14:13:18

10   ship again, he would have to get another contract and     14:13:21

11   another visa letter?                                      14:13:24

12        A.   Yes.                                            14:13:25

13        Q.   Okay.  The -- the visa letter or guarantee      14:13:37

14   of employment is what allows the seaman to enter this     14:13:39

15   country and get on the vessel?                            14:13:44

16        A.   A combination.  It allows them to obtain a      14:13:51

17   C-1, D --                                                 14:13:54

18            THE COURT REPORTER:  I'm sorry.  Speak up.

19        Combination --

20            THE WITNESS:  Combination.  It allows them

21        to obtain a C-1, D, seaman's visa.                   14:13:54

22   BY MR. HUGGETT:

23        Q.   All right.  To get that, they have to have      14:13:56

24   a letter of employment; is that correct?                  14:13:59

25        A.   Yes.                                            14:14:00
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

211

| | | |
|---|---|---|
| 1 | Q.    And if NCL doesn't get issued a letter of | 14:14:00 |
| 2 | employment, the seaman cannot get a seaman's or C-1 | 14:14:05 |
| 3 | or D-1 visa? | 14:14:09 |
| 4 | A.    The letter may be, also may be issued by | 14:14:12 |
| 5 | the manning agent. | 14:14:16 |
| 6 | Q.    Okay, but he has to have that in order to | 14:14:16 |
| 7 | get the visa? | 14:14:18 |
| 8 | A.    Yes. | 14:14:19 |
| 9 | Q.    So without the letter of employment, he | 14:14:20 |
| 10 | can't get in the U.S.; is that your understanding? | 14:14:21 |
| 11 | A.    If he doesn't have a visa, yes. | 14:14:27 |
| 12 | Q.    Okay.  And to get that C-1 or D-1, which is | 14:14:30 |
| 13 | a seaman's visa, he needs that letter of employment? | 14:14:35 |
| 14 | A.    Yes. | 14:14:37 |
| 15 | Q.    So NCL would control his entry into the | 14:14:40 |
| 16 | United States? | 14:14:47 |
| 17 | MR. MASE:  Objection to the form of the | 14:14:47 |
| 18 | question. | 14:14:47 |
| 19 | THE WITNESS:  No. | 14:14:47 |
| 20 | BY MR. HUGGETT: | |
| 21 | Q.    If you didn't give that letter of | 14:14:47 |
| 22 | employment, he couldn't get here, could he? | 14:14:49 |
| 23 | A.    He could get it from anybody else. | 14:14:52 |
| 24 | Q.    I understand.  But if he wants -- if he | 14:14:53 |
| 25 | wants to get one from NCL, he has to get that in | 14:14:53 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

212

```
 1  order to enter?                                    14:14:56
 2      A.    To obtain his visa, yes, that's correct.  14:14:58
 3            THE COURT REPORTER:  I'm sorry, to --
 4            THE WITNESS:  Obtain his visa.            14:15:11
 5            MR. HUGGETT:  Okay.  Let's take five      14:15:11
 6      minutes.
 7            THE VIDEOGRAPHER:  Standby to go off the  14:15:12
 8      record.  We're off the record.                 14:15:15
 9            (Thereupon, a brief recess was taken, after
10  which the following proceedings were had:)
11            THE VIDEOGRAPHER:  All right.  Standby,   14:25:31
12      please.  One moment, complete.                 14:25:33
13            And we're back on record.  This is       14:25:38
14      videotape number two for today.                14:25:41
15            MR. HUGGETT:  In the depo of Kjell        14:25:42
16      Hjartnes, September the 12th.                   14:25:51
17  BY MR. HUGGETT:
18      Q.    A Mr. Herbert A. Tria (phonetic), who is a  14:26:08
19  six-year lawyer associate in the firm of Del Rosario  14:26:11
20  & Del Rosario, filed an affidavit.  Did you get to   14:26:16
21  read that yet?                                      14:26:19
22      A.    No, I did not.                            14:26:20
23      Q.    And in that he lists some cases that have  14:26:28
24  been filed by Filipinos.  And then he states that 47  14:26:33
25  percent of those have been claims by Filipino       14:26:44
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | overseas seafarers. | 14:26:51 |
| 2 | Do you also -- here, I'll show you that if | 14:27:03 |
| 3 | you want to see it.  There's more.  Wow.  Take a | 14:27:06 |
| 4 | break. | 14:28:40 |
| 5 | THE VIDEOGRAPHER:  Standby to go off the | 14:28:41 |
| 6 | record.  And we're off. | 14:28:45 |
| 7 | (Thereupon, a brief recess was taken, after | |
| 8 | which the following proceedings were had:) | 14:30:26 |
| 9 | MR. HUGGETT:  Ready? | 14:30:27 |
| 10 | THE VIDEOGRAPHER:  Standby, sir.  One | 14:30:30 |
| 11 | moment.  And we're back on the record. | 14:30:34 |
| 12 | BY MR. HUGGETT: | |
| 13 | Q.   Mr. Tria is listing some claims filed with | 14:30:36 |
| 14 | the national NLRC.  Do you also receive any reports | 14:30:42 |
| 15 | of claims filed? | 14:30:48 |
| 16 | A.   Statistics you mean? | 14:30:54 |
| 17 | Q.   Yeah, the case or statistics or what have | 14:30:56 |
| 18 | you. | 14:30:58 |
| 19 | A.   I'm usually copied on them, yes. | 14:30:58 |
| 20 | Q.   Can you tell us of these numbers that he's | 14:31:05 |
| 21 | listed, or of any numbers, how many involve U.S. | 14:31:15 |
| 22 | based cruise ships? | 14:31:17 |
| 23 | A.   I have no idea. | 14:31:21 |
| 24 | Q.   Do you know the number of claims filed, if | 14:31:22 |
| 25 | any, against -- this year, let's say, by NCL | 14:31:25 |

214

```
 1   seafarers, against NCL?                                14:31:30
 2        A.   No, I do not.                                14:31:35
 3        Q.   Can you tell me whether -- what percentage   14:31:37
 4   of these claims filed were won by the seafarer?        14:31:43
 5        A.   I don't know.                                14:31:50
 6        Q.   Can you tell me, of these claims filed, how  14:31:51
 7   many seafarers ever received any monies?               14:31:54
 8        A.   No, I cannot.                                14:31:58
 9        Q.   Do you know whether, of the total claims     14:32:18
10   filed what percent involved disputes about a job       14:32:21
11   position or what percent involved a death or what      14:32:28
12   percent involved a burn, any of that kind of numbers?  14:32:33
13        A.   No, I cannot.                                14:32:36
14        Q.   Do you know if any of these involved         14:32:38
15   contract disputes that did not involve an injury?      14:32:45
16        A.   No, I do not.                                14:32:49
17        Q.   Do you get reports from -- what's the name   14:32:52
18   of the agency that you get reports from?               14:32:56
19        A.   CF Sharp or Magsaysay.                       14:33:00
20        Q.   I imagine they're the ones that forward it   14:33:08
21   to you, but I mean who is the report from?  Is it --   14:33:10
22   do you get them from the --                            14:33:11
23             MR. MASE:  He wants to know who makes the    14:33:11
24        report.                                           14:33:15
25             THE WITNESS:  More than likely, it would be  14:33:15
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

215

| | | |
|---|---|---|
| 1 | from their attorneys. | 14:33:16 |
| 2 | BY MR. HUGGETT: | |
| 3 | Q.   Well, I thought you said yesterday, and | 14:33:24 |
| 4 | maybe I didn't -- you got decisions of the National | 14:33:26 |
| 5 | Arbitration, the Labor Arbitration Board; is that | 14:33:27 |
| 6 | accurate? | 14:33:31 |
| 7 | A.   Yeah, that's -- that's accurate.  I get the | 14:33:40 |
| 8 | -- I don't know if I get all of them.  I get some of | 14:33:41 |
| 9 | them. | 14:33:44 |
| 10 | Q.   You get some? | 14:33:44 |
| 11 | A.   Yes. | 14:33:45 |
| 12 | Q.   Is that the same thing as the POEA or the | 14:33:49 |
| 13 | National Labor Relations Commission? | 14:33:52 |
| 14 | A.   Yes, NLRC, National Labor Arbitration | 14:33:57 |
| 15 | Commission. | 14:34:01 |
| 16 | Q.   Okay. | |
| 17 | THE COURT REPORTER:  I'm sorry, National -- | |
| 18 | THE WITNESS:  Labor Arbitration Committee. | 14:34:04 |
| 19 | BY MR. HUGGETT: | |
| 20 | Q.   Okay.  And do you know whether NCL has paid | 14:34:23 |
| 21 | any that involve a personal injury as a result of | 14:34:27 |
| 22 | negligence? | 14:34:33 |
| 23 | A.   I don't know. | 14:34:33 |
| 24 | Q.   Okay.  Do you have any statistics or | 14:34:34 |
| 25 | knowledge, or do you know of anybody within your | 14:34:54 |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

```
1   company that has any knowledge or statistics of how        14:34:56
2   much money either individually or in the aggregate         14:35:03
3   has been paid to seafarers making personal injury          14:35:09
4   claims under the National Labor -- NLRC?                    14:35:13
5       A.   That would be handled by our legal                14:35:21
6   department.                                                 14:35:23
7       Q.   The legal department, okay.                       14:35:23
8            And do you know whether there are any -- do        14:35:27
9   you know whether the -- well, I'm sorry, I didn't ask       14:35:30
10  it thoroughly.  Good answer.                                14:35:33
11           Do you know whether they keep statistics of        14:35:34
12  that?                                                       14:35:36
13      A.   No, I don't.                                       14:35:36
14      Q.   Okay.  And do you know whether they keep           14:35:37
15  any track or relation of the number of personal            14:35:41
16  injury or death claims that have been paid through          14:35:47
17  the American tort system here in Miami?                     14:35:50
18      A.   No, I don't.                                       14:35:53
19      Q.   Okay.  We do know that there are many such         14:35:58
20  claims against NCL by seamen?                               14:36:01
21           MR. MASE:  Objection to form.                      14:36:04
22           THE WITNESS:  Are you telling me I know            14:36:06
23      that or are you asking me if I know?                    14:36:08
24  BY MR. HUGGETT:
25      Q.   Do you know that?                                  14:36:10
```

| | | |
|---|---|---|
| 1 | A.    I know there are cases. | 14:36:10 |
| 2 | Q.    If NCL were able to shift all of those | 14:36:22 |
| 3 | cases that are brought against it, lawsuits here in | 14:36:26 |
| 4 | the United States, to the Philippines under the NLRC, | 14:36:30 |
| 5 | it would save the Philippines -- it would save NCL a | 14:36:34 |
| 6 | lot of money, would it not? | 14:36:38 |
| 7 | MR. MASE:  Objection to form.  Lack of | 14:36:39 |
| 8 | qualification on the part of witness. | 14:36:41 |
| 9 | THE WITNESS:  I have no idea. | 14:36:43 |
| 10 | BY MR. HUGGETT: | |
| 11 | Q.    Okay.  If NCL were to transfer all of these | 14:36:44 |
| 12 | cases to the Philippines, do you think it would give | 14:36:58 |
| 13 | them a competitive advantage over other American | 14:37:02 |
| 14 | tourism? | 14:37:07 |
| 15 | MR. MASE:  Objection to form, lack of | 14:37:07 |
| 16 | qualification on the part of the witness, lack | 14:37:07 |
| 17 | of foundation. | 14:37:08 |
| 18 | THE WITNESS:  Again, I don't know. | 14:37:09 |
| 19 | BY MR. HUGGETT: | |
| 20 | Q.    Okay.  These ten men, is your understanding | 14:37:11 |
| 21 | of that -- the four men that are alive, are they, to | 14:37:20 |
| 22 | your understanding, limited in their recovery to the | 14:37:25 |
| 23 | schedule set forth in the standard terms which you | 14:37:31 |
| 24 | have in front of you -- | 14:37:33 |
| 25 | MR. MASE:  Objection to form. | 14:37:34 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
1   BY MR. HUGGETT:
2       Q.   -- if they recover in the arbitration in        14:37:35
3   the Philippines?                                          14:37:38
4       A.   I don't have any legal opinion.                  14:37:39
5       Q.   Well, this document which you have, and is       14:37:42
6   attached to the contract of Abdi Comedia, filed by        14:37:51
7   your attorneys, lists a series of numbers from -- as      14:37:55
8   a percentage of 50,000 for claims, doesn't it?            14:37:59
9       A.   Yes.                                             14:38:09
10      Q.   It starts at 50,000, and from there on down      14:38:10
11  it's some percentage of that, correct?                    14:38:15
12      A.   That's correct.                                  14:38:17
13      Q.   Can you tell me what is the maximum death        14:38:23
14  claim under the collective bargaining agreement that      14:38:26
15  you participated in making?                               14:38:31
16      A.   In the CBA, it's $60,000 to the spouse, and      14:38:41
17  15,000 to each child under the age of 20.                 14:38:50
18      Q.   Okay.                                            14:38:56
19      A.   Limited to four.                                 14:38:59
20           THE COURT REPORTER:  Limited?
21           THE WITNESS:  Limited to four children.
22  BY MR. HUGGETT:
23      Q.   Do you know how many of these widows have        14:39:04
24  children under 20?                                        14:39:07
25      A.   No, I do not.                                    14:39:09
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

1    Q.    The -- putting aside for the moment the          14:39:10

2    children, if each of these widows were to receive       14:39:43

3    60,000 under the Collective Bargaining Agreement, and   14:39:48

4    each of the live seamen were to receive the maximum     14:39:51

5    of 50,000, would that come to a total of 760,000?       14:39:57

6    A.    I don't know.                                      14:40:04

7    Q.    Well, I have added up six 60s to get              14:40:05

8    360,000.  Aside from the math, I'm trying to see if     14:40:11

9    you follow the procedure.                               14:40:17

10        MR. MASE:  Mr. Huggett, you noticed a Rule          14:40:18

11        30 (b)(6) deposition in this case, and you set      14:40:20

12        out, I believe, 13 areas of inquiry about which     14:40:25

13        you asked that NCL produce a corporate              14:40:31

14        representative, and I think that I have been        14:40:37

15        beyond indulgent and patient in allowing you to     14:40:39

16        go far beyond the scope of the noticed              14:40:42

17        deposition.

18        What you're doing now is you're -- I don't          14:40:44

19        know what you're doing, making some form of a       14:40:48

20        closing argument using a witness, asking him to     14:40:50

21        form calculations that you can certainly perform    14:40:53

22        yourself, and it isn't testimony.                   14:40:56

23        You're beyond, you have exceeded the                14:40:58

24        permissible time period under the Federal Rules     14:41:01

25        of Civil Procedure without leave of court for       14:41:04

| | | |
|---|---|---|
| 1 | taking deposition. | |
| 2 | And again, because of the gravity and | 14:41:05 |
| 3 | seriousness of the case and our time | 14:41:07 |
| 4 | constraints, I've been indulgent, but I'm | 14:41:09 |
| 5 | beginning to think that your plan here is simply | 14:41:13 |
| 6 | to harass, annoy, and to some extent goad the | 14:41:16 |
| 7 | witness and me into terminating this deposition. | 14:41:21 |
| 8 | I move for protective order now on this | 14:41:23 |
| 9 | record pursuant to Rule 26 to prevent you from | 14:41:27 |
| 10 | asking, harassing, inappropriate, | 14:41:30 |
| 11 | far-beyond-the-scope questions, not designed to | 14:41:35 |
| 12 | elicit relevant or material evidence from a | 14:41:37 |
| 13 | witness, who clearly it's inappropriate to ask | 14:41:39 |
| 14 | questions from. | 14:41:42 |
| 15 | If you persist, I'll terminate the | 14:41:42 |
| 16 | deposition. | 14:41:45 |
| 17 | BY MR. HUGGETT: | |
| 18 | Q.   Sir, assume that, for me, the moment that | 14:41:46 |
| 19 | the -- each of the widows received the maximum of 60, | 14:41:50 |
| 20 | and that total is 360 -- | 14:41:54 |
| 21 | THE COURT REPORTER:   And that total is? | 14:41:58 |
| 22 | MR. HUGGETT:   360. | |
| 23 | BY MR. HUGGETT: | |
| 24 | Q.   And assume for the moment that each of the | 14:41:58 |
| 25 | live men received fifty, which is a total of 200,000. | 14:42:01 |

| | |
|---|---|
| 1 | Assume my math is correct for a moment, that it's a | 14:42:11 |
| 2 | total of 760,000, assume that's correct. | 14:42:15 |
| 3 |     A.    Okay. | 14:42:18 |
| 4 |     Q.    That would be far less than the $2 million | 14:42:18 |
| 5 | that the attorneys have estimated the cases are worth | 14:42:23 |
| 6 | in these courts, would it not? | 14:42:26 |
| 7 |         MR. MASE:  Objection to the form of the | 14:42:29 |
| 8 |     question.  The witness lacks the qualification | 14:42:31 |
| 9 |     and has no foundation upon which to answer that. | 14:42:34 |
| 10 |         He is not a lawyer by training or otherwise | 14:42:35 |
| 11 |     and can't express an opinion on what the people | 14:42:39 |
| 12 |     could recover in these courts. | 14:42:42 |
| 13 |         It's beyond the scope of the Rule 30 (b)(6) | 14:42:43 |
| 14 |     deposition notice as well. | 14:42:47 |
| 15 |         If you know the answer, you may answer. | 14:42:49 |
| 16 |         THE WITNESS:  Simple math.  Yes, of course. | 14:42:51 |
| 17 | BY MR. HUGGETT: | |
| 18 |     Q.    Okay. | 14:42:54 |
| 19 |         MR. MASE:  You need a break, you let us | 14:43:27 |
| 20 |     know. | |
| 21 | BY MR. HUGGETT: | |
| 22 |     Q.    Do you have any -- as the director of human | 14:43:29 |
| 23 | resources, or one of the directors, would it -- would | 14:43:38 |
| 24 | your company save money by having all of these, all | 14:43:48 |
| 25 | personal injury claims resolved in the Philippines | 14:43:53 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1   pursuant to the Philippine POEA process?                14:43:56
 2           MR. MASE:  Objection to the form of the          14:43:59
 3       question, lack of qualification on the part of       14:44:00
 4       the witness to answer the question; lack of          14:44:03
 5       foundation, inadequate predicate, speculative.       14:44:05
 6           THE WITNESS:  I cannot speculate.                 14:44:12
 7   BY MR. HUGGETT:
 8       Q.   You don't know.                                  14:44:14
 9       A.   No, I don't know.                                14:44:14
10       Q.   Okay.  If a seaman, these ten -- if these       14:45:04
11   live seamen were injured aboard your ship, and their     14:45:06
12   injuries resulted in a loss of earning capacity, are     14:45:11
13   their claims for loss of earning capacity subject to     14:45:19
14   arbitration before the NLRC?                             14:45:22
15           MR. MASE:  Objection to the form of the          14:45:25
16       question; lack of qualification and predicate,       14:45:25
17       speculative.                                          14:45:30
18           THE WITNESS:  I can't -- I can't speculate       14:45:30
19       on that.                                              14:45:34
20   BY MR. HUGGETT:
21       Q.   You don't know?                                 14:45:34
22       A.   No, I don't know.                                14:45:35
23       Q.   You do receive from time to time various        14:45:37
24   opinions of that National Labor or Labor Commission      14:45:40
25   though?                                                   14:45:43
```

```
 1      A.    Yes, I do.                                    14:45:43
 2      Q.    And have you received the Supreme Court       14:45:49
 3  case, very recent of April 10, 2003, called Tolosa      14:46:07
 4  versus National Labor, Labor Commission, Asia Bulk      14:46:17
 5  Carriers, et cetera.  And I'll hand you a copy.         14:46:26
 6      A.    No, I have not.  If I have, I have not read   14:46:26
 7  it.                                                     14:46:29
 8      Q.    Is it the policy of NCL to try to comply      14:46:40
 9  with the laws of the Philippines as it relates to       14:46:44
10  POEA claims?                                            14:46:47
11      A.    Yes, it is.                                   14:46:53
12      Q.    Okay.  And would you agree that the Supreme   14:47:01
13  Court has found that in this case -- and I've yellow    14:47:04
14  highlighted the places for you -- that in a claim for   14:47:07
15  negligence resulting in loss of -- and death and loss  14:47:11
16  of earnings, that the Supreme Court found that the      14:47:15
17  POEA had no jurisdiction?                               14:47:19
18          MR. MASE:  Okay.  I object.                     14:47:21
19          THE WITNESS:  I --                              14:47:23
20          MR. MASE:  Mr. Hjartnes is not a lawyer.        14:47:25
21      He is not qualified to interpret U.S. law or        14:47:26
22      Philippine law.  He lacks qualification, he         14:47:30
23      lacks education.  There is no foundation for        14:47:30
24      this question.  There's no predicate.               14:47:33
25          THE WITNESS:  I have no idea what this case     14:47:37
```

```
 1        is about, so I can't answer your question.          14:47:38
 2   BY MR. HUGGETT:
 3        Q.   It is -- it is your job, and NCL's intent      14:47:42
 4   when they draw these contracts, and when you            14:47:48
 5   supervise your manning agencies, to comply with         14:47:54
 6   whatever are the applicable laws for the seaman; is     14:47:57
 7   that correct?                                            14:48:01
 8             MR. MASE:  Objection, asked and answered,      14:48:01
 9        about three times now.                              14:48:03
10             THE WITNESS:  That's the purposes --           14:48:05
11        purpose of having a manning agent.                  14:48:07
12   BY MR. HUGGETT:
13        Q.   Okay.  And if the Philippine Supreme Court     14:48:09
14   found that there was no jurisdiction for claims for     14:48:21
15   loss of earnings as a result of negligent or tort,      14:48:26
16   would you follow that case?                              14:48:32
17             MR. MASE:  Objection to the form of the        14:48:34
18        question.  Mr. -- lack of qualification, lack of   14:48:35
19        predicate.                                          14:48:39
20             It's also asking him to express an opinion     14:48:40
21        on what the company would do legally.  I don't     14:48:42
22        think that's appropriate.  And you know what       14:48:44
23        else, the only basis from which he could know      14:48:47
24        whether or not the company would fall the law of   14:48:49
25        the Philippines would be communications from       14:48:51
```

225

| | | |
|---|---|---|
| 1 | NCL's counsel and NCL's general counsel. | 14:48:53 |
| 2 | On the basis of privilege, I instruct him | 14:48:53 |
| 3 | not to answer.  Don't answer that question. | 14:48:57 |
| 4 | Attorney/client privilege. | 14:49:00 |
| 5 | MR. HUGGETT:  Oh, you're going to lose | 14:49:01 |
| 6 | that. | 14:49:03 |
| 7 | MR. MASE:  Well, then I'll -- I'll put a | 14:49:04 |
| 8 | little second alternative basis. | 14:49:05 |
| 9 | Pursuant to Rule 26, I move for protective | 14:49:06 |
| 10 | order as to that question as being harassing, | 14:49:09 |
| 11 | burdensome, beyond the scope of the deposition | 14:49:12 |
| 12 | notice.  But in the event I'm wrong, let me hear | 14:49:16 |
| 13 | it back again one more time. | 14:49:21 |
| 14 | Can I hear it. | |
| 15 | THE COURT REPORTER:  Your objection? | 14:49:52 |
| 16 | MR. MASE:  Yeah, I just -- no, I want to | 14:49:54 |
| 17 | hear the question.  I don't want to go through | |
| 18 | the experience again. | |
| 19 | (Thereupon, the pending question was read | |
| 20 | by the reporter as above-recorded.) | |
| 21 | MR. MASE:  Yeah, I'll let him answer.  My | 14:49:54 |
| 22 | objection, however, is lack of predicate, lack | 14:49:56 |
| 23 | of qualification, lack of foundation, | 14:49:58 |
| 24 | speculative. | 14:50:00 |
| 25 | You can answer if you know. | 14:50:00 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | THE WITNESS:  It would be pure speculation | 14:50:01 |
| 2 | on my part, and I can't answer it. | 14:50:04 |
| 3 | BY MR. HUGGETT: | |
| 4 | Q.   Okay.  Is -- does the -- does the company | 14:50:07 |
| 5 | and human resources department of which you are the | 14:50:19 |
| 6 | director attempt to comply with regulations and rules | 14:50:23 |
| 7 | of the Supreme Court as it affects the seaman's | 14:50:26 |
| 8 | claims? | 14:50:31 |
| 9 | A.   No.   That's the job of our legal | 14:50:31 |
| 10 | department.   Legal and claims department deal with | 14:50:36 |
| 11 | all those issues. | 14:50:39 |
| 12 | Q.   Okay.  And -- but it is the company's | 14:50:40 |
| 13 | policy as a whole, regardless of through which | 14:50:41 |
| 14 | particular department, to comply with the rules and | 14:50:45 |
| 15 | regulations of the POEA and the Philippines for | 14:50:48 |
| 16 | seamen's claims which you employ? | 14:50:53 |
| 17 | A.   Yes. | 14:50:54 |
| 18 | MR. HUGGETT:  Okay.  Why don't we attach | 14:51:11 |
| 19 | that case to the deposition as Exhibit 2. | 14:51:12 |
| 20 | (Informal discussion off the record.) | |
| 21 | THE WITNESS:  I don't read these opinions, | 14:51:36 |
| 22 | so -- like that. | 14:51:39 |
| 23 | MR. MASE:  We will attach it.  It was | 14:51:44 |
| 24 | whatever is, 2 or whatever. | 14:51:45 |
| 25 | MR. HUGGETT:  It should be 3. | 14:51:47 |

227

```
 1              (The document referred to was thereupon
 2         marked "Plaintiff's Exhibit No. 3 for
 3         Identification," a copy of which is attached
 4         hereto.)                                        14:51:48
 5   BY MR. HUGGETT:
 6         Q.   Now, you do get opinions, you told us, from  14:51:49
 7   the National Labor Relations Commission?             14:51:51
 8         A.   In cases --                                14:51:53
 9         Q.   In cases?                                  14:51:54
10         A.   -- rendered against Norwegian Cruise Line,  14:51:56
11   yes.                                                  14:51:59
12         Q.   Okay.
13         A.   Yes.
14         Q.   And you -- what's the purpose of you       14:51:59
15   getting those and taking those into account?         14:52:00
16         A.   Courtesy, I suppose.  I'm just copied on   14:52:03
17   them.                                                 14:52:07
18         Q.   And what do you -- do you attempt to follow  14:52:08
19   them?  You mean just read them like the comic books  14:52:11
20   or what's -- why do you keep them and get them;      14:52:14
21   what's that purpose?                                  14:52:16
22         A.   I'm copied on them.                        14:52:17
23              MR. MASE:  Object to the form of the       14:52:17
24         question.                                       14:52:19
25              THE WITNESS:  They are sent to our legal   14:52:19
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

228

```
 1        department with a copy to me.                    14:52:21
 2   BY MR. HUGGETT:
 3        Q.    And why is it copied to you?               14:52:23
 4        A.    You have to ask the sender that.           14:52:24
 5              THE COURT REPORTER:  You have to ask --
 6              THE WITNESS:  The sender.
 7   BY MR. HUGGETT:
 8        Q.    And what purpose do you make of them?       14:52:28
 9              MR. MASE:  Objection to form.               14:52:30
10              THE WITNESS:  I'll usually read them, and   14:52:33
11        file them.                                        14:52:36
12   BY MR. HUGGETT:
13        Q.    Okay.  Do you attempt to implement what    14:52:38
14   decisions you see?                                     14:52:42
15              MR. MASE:  Objection to form.               14:52:43
16              THE WITNESS:  No, that's not my -- my job.  14:52:44
17   BY MR. HUGGETT:
18        Q.    Not your role, okay.                        14:52:48
19              But it is part of your job to make sure     14:53:31
20   that the company complies with the requirements of    14:53:33
21   the POEA?                                              14:53:35
22        A.    That's correct.                             14:53:37
23              MR. MASE:  Objection to the form of the     14:53:39
24        question.                                         14:53:39
25   BY MR. HUGGETT:
```

| | | |
|---|---|---|
| 1 | Q.  Okay.  And is that part of your job or is | 14:53:48 |
| 2 | that the legal department? | 14:53:48 |
| 3 | A.  I don't think I understand your question. | 14:53:50 |
| 4 | Q.  Well, is that part of your duties in human | 14:53:53 |
| 5 | resources to follow the rules and regulations of the | 14:53:56 |
| 6 | POEA and the Philippine government or is that | 14:54:01 |
| 7 | strictly the legal department? | 14:54:04 |
| 8 | A.  I -- then I missing the point, but -- | 14:54:14 |
| 9 | THE COURT REPORTER:  I'm sorry.  Speak up. | |
| 10 | THE WITNESS:  I must be missing the point | 14:54:16 |
| 11 | in your question. | 14:54:16 |
| 12 | BY MR. HUGGETT: | |
| 13 | Q.  Well, is it part of your job to see that | 14:54:18 |
| 14 | your NCL, insofar as working with the Philippine | 14:54:22 |
| 15 | seamen, follows the rules and the regulations of the | 14:54:27 |
| 16 | POEA? | 14:54:31 |
| 17 | A.  Yes. | 14:54:31 |
| 18 | Q.  Okay.  Now -- | 14:54:31 |
| 19 | MR. MASE:  This is going to be about the | 14:54:32 |
| 20 | fifth time he's testified to that. | 14:54:34 |
| 21 | BY MR. HUGGETT: | |
| 22 | Q.  Now, is that your job or the legal | 14:54:36 |
| 23 | department's job? | 14:54:38 |
| 24 | A.  Well, I must be -- or I may be missing your | 14:54:44 |
| 25 | point completely.  What I just said is that in legal | 14:54:51 |

230

| | | |
|---|---|---|
| 1 | cases, legal -- in cases that have gone through the | 14:54:57 |
| 2 | Labor Arbitration Board, and we get a decision from | 14:55:04 |
| 3 | them, it is sent to our legal department with a copy | 14:55:06 |
| 4 | to me. | 14:55:10 |
| 5 | Q.   Okay. | 14:55:11 |
| 6 | A.   When it comes to following POEA | 14:55:12 |
| 7 | requirements, it's an HR issue. | 14:55:17 |
| 8 | Q.   It's a what? | 14:55:19 |
| 9 | A.   A human resources issue. | 14:55:20 |
| 10 | Q.   Okay.  And how do you find out those POEA | 14:55:23 |
| 11 | rules and regulations that's an HR duty? | 14:55:30 |
| 12 | A.   How do I find out? | 14:55:41 |
| 13 | Q.   Yeah, how do you find out what you're | 14:55:43 |
| 14 | supposed to do? | 14:55:45 |
| 15 | A.   By follow the requirements from the POEA. | 14:55:48 |
| 16 | Q.   Okay.  And how do you learn those? | 14:55:51 |
| 17 | A.   Well, we have the standard terms and | 14:56:02 |
| 18 | conditions which is part of the conditions by POEA. | 14:56:05 |
| 19 | Q.   Is that the only thing that you follow or | 14:56:07 |
| 20 | do you seek any other advice? | 14:56:09 |
| 21 | A.   We have hired manning agents in the | 14:56:12 |
| 22 | Philippines to conduct business on our behalf. | 14:56:14 |
| 23 | Q.   Okay. | 14:56:18 |
| 24 | A.   To make sure that we follow the | 14:56:18 |
| 25 | requirements by POEA. | 14:56:20 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | Q.   Okay.  And you rely on their advice or do | 14:56:26 |
| 2 | you seek to learn it independently yourself; and that | 14:56:31 |
| 3 | is, you, meaning the department of human resources? | 14:56:34 |
| 4 | A.   I think a combination. | 14:56:36 |
| 5 | Q.   Okay.  And how do you do it independently? | 14:56:38 |
| 6 | I understand the part about relying on their advice, | 14:56:40 |
| 7 | and as far as the combination, how do you do it | 14:56:44 |
| 8 | otherwise? | 14:56:48 |
| 9 | A.   If we receive memorandums from the POEA | 14:56:48 |
| 10 | with changes of the requirements, we make sure that | 14:56:52 |
| 11 | our manning agent implements the same changes. | 14:57:01 |
| 12 | MR. HUGGETT:  Let me read that back. | |
| 13 | MR. MASE:  Can you read that back, please. | |
| 14 | (Thereupon, the pending question was read | |
| 15 | by the reporter as above-recorded.) | |
| 16 | MR. MASE:  Okay. | |
| 17 | BY MR. HUGGETT: | |
| 18 | Q.   So, then part of your regular work is to | 14:57:25 |
| 19 | receive memorandum or rulings from the POEA, and then | 14:57:27 |
| 20 | you somehow make sure that your manning agents do | 14:57:31 |
| 21 | that? | 14:57:33 |
| 22 | A.   I -- you're referring to rulings.  I'm not | 14:57:34 |
| 23 | -- I'm not sure what you refer to. | 14:57:37 |
| 24 | Q.   Okay.  Well, let's stick to just your | 14:57:39 |
| 25 | answer.  When you receive memorandums from the POEA, | 14:57:41 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

232

```
 1  how do you make sure that your manning agencies          14:57:45
 2  follow those?                                             14:57:49
 3       A.   We usually get them through the manning         14:57:49
 4  agents.                                                   14:57:52
 5       Q.   So it's just a circle right back?               14:57:52
 6            MR. MASE:  Is that a question?                   14:57:57
 7            MR. HUGGETT:  I'll rephrase it for you,          14:58:00
 8       sir.
 9  BY MR. HUGGETT:
10       Q.   Do have you any independent means of            14:58:06
11  getting -- of learning what is the rules and              14:58:08
12  regulations of the POEA aside from what your manning      14:58:10
13  agents send you?                                          14:58:15
14            MR. MASE:  Objection to the form of the         14:58:15
15       question.                                            14:58:17
16            THE WITNESS:  Yeah, I think I testified to      14:58:19
17       that yesterday, that all the rules and               14:58:21
18       regulations are available on-line.                   14:58:23
19  BY MR. HUGGETT:
20       Q.   Okay.  Do you read them and use them?           14:58:27
21       A.   I have -- do I read them and use them?  I       14:58:32
22  read them, yes.                                           14:58:35
23       Q.   What I'm trying to find out is -- does the      14:58:36
24  human resources department, which you are a director      14:58:40
25  of, use any form that's available, website or             14:58:44
```

233

```
 1  otherwise, in telling your manning agencies what        14:58:50
 2  rules and regulations to follow?                        14:58:53
 3       A.   No.                                            14:58:55
 4       Q.   You don't, okay.                               14:58:55
 5            In other words, you rely on them to learn      14:59:05
 6  it and them to follow it?                                14:59:07
 7            MR. MASE:  Objection to form.                  14:59:09
 8            THE WITNESS:  That's one of the reasons why    14:59:13
 9       we have --
10            THE COURT REPORTER:  I can't hear you.
11            THE WITNESS:  That's one of the reasons why
12       we have a manning agent.                            14:59:14
13  BY MR. HUGGETT:
14       Q.   Is that, the answer to that, yes, we do?       14:59:16
15       A.   Yes, we do.                                    14:59:19
16            MR. HUGGETT:  Okay.  We'll take --
17            THE VIDEOGRAPHER:  We'll go off the record.
18       Standby.  And we're off.                            15:17:07
19            (Thereupon, a brief recess was taken, after
20  which the following proceedings were had:)               15:17:14
21            THE VIDEOGRAPHER:  All right.  Standby.        15:17:15
22       We're back on the record, sir.                      15:17:20
23  BY MR. HUGGETT:
24       Q.   If the law of the Philippines is that tort     15:17:25
25  claims for injuries are not within the jurisdiction      15:17:35
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

234

| | | |
|---|---|---|
| 1 | of the labor arbitrators, would NCL attempt to see | 15:17:38 |
| 2 | that its manning agents implement that? | 15:17:47 |
| 3 | MR. MASE:  Objection, speculative, lack of | 15:17:52 |
| 4 | qualification. | 15:17:55 |
| 5 | THE WITNESS:  I -- I can't answer that. | 15:17:55 |
| 6 | I'm not -- I'm not a lawyer, so I don't know. | 15:17:57 |
| 7 | BY MR. HUGGETT: | |
| 8 | Q.   You don't know? | 15:17:59 |
| 9 | A.   No, I don't know. | 15:18:00 |
| 10 | Q.   Will NCL attempt to have its manning agents | 15:18:03 |
| 11 | instruct and tell the seamen whatever is the correct | 15:18:12 |
| 12 | law as NCL understands it? | 15:18:17 |
| 13 | MR. MASE:  Objection, speculative, lack of | 15:18:19 |
| 14 | qualification. | 15:18:22 |
| 15 | THE WITNESS:  I can't answer it. | 15:18:22 |
| 16 | BY MR. HUGGETT: | |
| 17 | Q.   Don't know? | 15:18:24 |
| 18 | A.   I don't know. | 15:18:25 |
| 19 | Q.   All right, sir. | 15:18:28 |
| 20 | At the present time is NCL having its | 15:18:30 |
| 21 | manning agents in the predeparture orientation | 15:18:37 |
| 22 | instruct the seamen that they must arbitrate their | 15:18:43 |
| 23 | disputes? | 15:18:47 |
| 24 | A.   They're instructed to follow the POEA | 15:18:50 |
| 25 | requirements. | 15:18:54 |

235

| | |
|---|---|
| 1    Q.    And does that include instructing the | 15:18:54 |
| 2  seamen that they must arbitrate their disputes? | 15:18:56 |
| 3    A.    Yes. | 15:19:00 |
| 4    Q.    And does that include instructing the | 15:19:02 |
| 5  seamen that they must arbitrate a tort claim for | 15:19:02 |
| 6  injuries? | 15:19:09 |
| 7    A.    I can't -- I don't have a legal opinion on | 15:19:10 |
| 8  that. | 15:19:12 |
| 9    Q.    All right.  I'll change -- does NCL | 15:19:16 |
| 10  instruct its manning agencies to orient the seamen in | 15:19:20 |
| 11  their -- tell the seamen in their predeparture that | 15:19:23 |
| 12  they must bring an arbitration claim if they're | 15:19:29 |
| 13  injured on the ship and seek compensation? | 15:19:32 |
| 14        MR. MASE:  Asked and answered. | 15:19:35 |
| 15        THE WITNESS:  They're instructed to follow | 15:19:37 |
| 16      the POEA requirements. | 15:19:38 |
| 17  BY MR. HUGGETT: | |
| 18    Q.    And does that include, as you understand | 15:19:39 |
| 19  it, telling them that they must bring an injury claim | 15:19:42 |
| 20  for an accident and loss of earnings in the | 15:19:46 |
| 21  arbitration process? | 15:19:49 |
| 22        MR. MASE:  Asked and answered. | 15:19:50 |
| 23        THE WITNESS:  They have to follow the -- | 15:19:52 |
| 24      what's set out in their standard terms and | 15:19:53 |
| 25      conditions. | 15:19:56 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | BY MR. HUGGETT: | 15:19:56 |
| 2 | Q.    But I'm asking you whether that includes | 15:19:56 |
| 3 | telling them that they must arbitrate an injury claim | 15:19:58 |
| 4 | that asks for loss of wages? | 15:20:02 |
| 5 | A.    I don't know. | 15:20:06 |
| 6 | Q.    You don't know, okay. | 15:20:06 |
| 7 | In looking at Section 20 of the document | 15:20:59 |
| 8 | before you in the Standard Terms and Conditions, | 15:21:02 |
| 9 | specifically 20 (a)(4)(c), are you familiar with that | 15:21:24 |
| 10 | provision which requires the payment of $1,000, U.S., | 15:21:32 |
| 11 | for burial expenses in the case of a death? | 15:21:36 |
| 12 | A.    Yes, I am. | 15:21:40 |
| 13 | Q.    Okay.  And has the $1,000 burial benefit | 15:21:41 |
| 14 | been paid to the widows in this case? | 15:21:49 |
| 15 | A.    I don't know. | 15:21:51 |
| 16 | Q.    Have you flown to the Philippines since | 15:21:52 |
| 17 | this case? | 15:21:55 |
| 18 | A.    Yes, I have. | 15:21:56 |
| 19 | Q.    And did you meet with or talk to, or have | 15:21:57 |
| 20 | your manning agencies talk to any of the widows about | 15:22:06 |
| 21 | receiving the $1,000 burial expenses? | 15:22:09 |
| 22 | A.    I have, yes.  The answer is yes. | 15:22:20 |
| 23 | Q.    And did you attempt to pay the $1,000 | 15:22:29 |
| 24 | burial expenses pursuant to this contract? | 15:22:31 |
| 25 | A.    We did to two families. | 15:22:33 |

```
 1        Q.   Two families.  Two of the families in this    15:22:35
 2   lawsuit or two of the others deaths?                    15:22:38
 3        A.   I think one of the families in this           15:22:39
 4   lawsuit.                                                15:22:41
 5        Q.   Okay.  And what is the reason that all of     15:22:42
 6   the widows were not paid the $1,000 burial expenses?    15:22:45
 7        A.   I don't -- my testimony is I don't know       15:22:50
 8   whether it has been paid or not, so I can't speculate   15:22:52
 9   on the reason if it has not been paid.                  15:22:55
10        Q.   Okay.  But you know that one -- you know      15:23:00
11   that two have been paid?                                15:23:02
12        A.   No, I don't know that.                        15:23:04
13        Q.   Oh, I'm sorry.  I thought you --
14        A.   We attempted to pay two.                      15:23:05
15        Q.   Oh, you attempted to pay two?                 15:23:06
16        A.   Yes.                                          15:23:08
17        Q.   But you don't know whether they have?         15:23:08
18        A.   I know one of the families didn't want it     15:23:09
19   at the time.                                            15:23:12
20        Q.   Okay.  Is it your understanding, as          15:23:12
21   director of human resources, that they -- that each     15:23:17
22   widow is entitled to $1,000 burial?                     15:23:21
23        A.   Yes.                                          15:23:24
24        Q.   And if the widow, through its attorney,       15:23:25
25   made a claim, would you honor it?                       15:23:28
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1      A.    Yes.                                          15:23:29

 2      Q.    Do you know who built the boilers on the      15:24:29

 3   Norway?                                                15:24:31

 4      A.    No, I do not.                                 15:24:32

 5      Q.    Do you know who maintained the boilers on     15:24:33

 6   the Norway?                                            15:24:36

 7      A.    No, I do not.                                 15:24:37

 8      Q.    Other than the NCL people?                    15:24:37

 9      A.    No, I do not.                                 15:24:39

10      Q.    Do you know who inspected the boilers?        15:24:39

11      A.    No, I do not.                                 15:24:43

12      Q.    Do you know where the ship goes -- the        15:24:44

13   NORWAY went for its last dry-dock?                     15:24:48

14      A.    I believe they went to Germany.               15:24:58

15      Q.    Do you know which would be the name of the    15:25:00

16   dry-dock company within Germany?                       15:25:04

17      A.    Again, I believe it's Lloyd worth             15:25:07

18   (phonetic).

19           THE COURT REPORTER:  I'm sorry, I believe

20       it's --

21           THE WITNESS:  Lloyd worth -- Lloyd Yard, in    15:25:13

22       Bremerhaven.

23           MR. HUGGETT:  As in Galliano.                  15:25:16

24   BY MR. HUGGETT:

25      Q.    And has -- to your knowledge has NCL come     15:25:28
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | to any conclusions as to why the boiler exploded? | 15:25:34 |
| 2 | A.    I have no idea.  I'm not involved in it. | 15:25:38 |
| 3 | Q.    Has NCL limited ever been convicted of a | 15:25:58 |
| 4 | crime? | 15:26:05 |
| 5 | A.    I don't know. | 15:26:05 |
| 6 | Q.    Let me hand you a judgment in a criminal | 15:26:10 |
| 7 | case, signed by Joan Leonard, reflecting that NCL, | 15:26:15 |
| 8 | Norwegian Cruise Lines, was convicted of the offense | 15:26:23 |
| 9 | of failing to report and falsely reporting oil | 15:26:25 |
| 10 | overboard discharges of oil-contaminated bilge waste, | 15:26:28 |
| 11 | and ask you if that refreshes your memory? | 15:26:30 |
| 12 | MR. MASE:  I hope you'll also hand him the | 15:26:34 |
| 13 | minutes -- | |
| 14 | THE COURT REPORTER:  I'm sorry? | |
| 15 | MR. MASE:  I hope you'll also hand him the | |
| 16 | minutes of the transcript of the plea deal where | 15:26:37 |
| 17 | she publicly commended NCL for being a good | 15:26:40 |
| 18 | corporate citizen, voluntarily disclosing | 15:26:44 |
| 19 | environmental violations, and working through | 15:26:46 |
| 20 | issues to the plea agreement with the U.S. | 15:26:50 |
| 21 | Attorney's Office, because if you're going to | 15:26:52 |
| 22 | ask him about stuff like this, Mr. Huggett, you | 15:26:53 |
| 23 | ought to make it balanced and fair. | 15:26:56 |
| 24 | MR. HUGGETT:  That's your job. | 15:26:59 |
| 25 | MR. MASE:  Okay.  Well, don't worry, I | 15:27:00 |

```
 1    will.                                                15:27:03

 2          THE WITNESS:  Does it refresh my memory?        15:27:05

 3          MR. HUGGETT:  Yeah.                             15:27:08

 4          THE WITNESS:  No.  I thought we had entered     15:27:08

 5    into a plea bargain, and so it does not refresh       15:27:10

 6    my memory to --                                       15:27:13

 7          MR. HUGGETT:  Okay.

 8          THE WITNESS:  -- to your question.              15:27:13

 9  BY MR. HUGGETT:

10     Q.   So "you don't know" is the answer?  You         15:27:15

11  don't know if NCL was ever convicted of a crime?        15:27:17

12     A.   Well, I do now, after you're showing me         15:27:21

13  that.

14          MR. HUGGETT:  Hold on, gentlemen.

15  BY MR. HUGGETT:

16     Q.   Okay.  Is the CBA -- and I'm showing you        15:27:26

17  copy attached to a pleading filed by your attorneys     15:29:34

18  on their Motion to Compel Arbitration, dated            15:29:42

19  October 1, 2001, the latest one?                        15:29:45

20     A.   Yes, it is.                                     15:29:56

21     Q.   And is that supposed to be, and currently       15:29:59

22  in effect at the present time?                          15:30:01

23     A.   Yes, it is.                                     15:30:02

24     Q.   Does this one attached contain of all          15:30:11

25  the -- take a second and look through it -- contain     15:30:14
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1   all of the CBA and any attachments or schedules or        15:30:16
 2   what have you?                                            15:30:26
 3       A.   It appears to.                                   15:30:42
 4       Q.   And NCL would consider this binding upon         15:30:44
 5   the ten men in this case, whether they knew about it      15:30:48
 6   or not?                                                   15:30:55
 7            MR. MASE:  Object to the form of the             15:30:56
 8       question.                                             15:30:56
 9            THE WITNESS:  No.                                15:30:56
10   BY MR. HUGGETT:
11       Q.   They don't consider it binding?                 15:30:56
12       A.   You said for the ten people.  This is           15:30:59
13   only -- only, I believe, five.                           15:31:01
14       Q.   Okay, the deck and engine.  NCL consider        15:31:04
15   this CBA binding on the ten -- five deck and engine      15:31:09
16   personnel, whether they know about it or not?            15:31:12
17       A.   I think we're contending they know about it     15:31:22
18   and they have again -- have been given a copy.           15:31:25
19       Q.   Okay.  Are you contending that it's binding     15:31:28
20   upon them?                                               15:31:30
21            MR. MASE:  Objection, calls for a legal         15:31:33
22       conclusion on the part of the witness, no           15:31:35
23       qualification, speculative.                          15:31:38
24            THE WITNESS:  I can't speculate.                 15:31:39
25   BY MR. HUGGETT:
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1        Q.    You don't know?                            15:31:41

 2        A.    No, I don't know                           15:31:51

 3        Q.    Okay.  Do you contend that the CBA is      15:31:51

 4   binding upon and covers the six non-deck and engine   15:31:54

 5   personnel?                                            15:31:59

 6            MR. MASE:  Objection.  Calls for a legal

 7        conclusion, lack of qualification, lack of       15:31:59

 8        predicate, speculative.                          15:32:02

 9            THE WITNESS:  Not the CBA you just showed     15:32:05

10        me.

11   BY MR. HUGGETT:

12        Q.    No?  There's another --

13            THE COURT REPORTER:  I'm sorry.  Not the

14        CB --

15            THE WITNESS:  Not the CBA he just showed

16        me.

17   BY MR. HUGGETT:

18        Q.    Is there another one?                       15:32:11

19        A.    Yes, one for catering.                      15:32:12

20        Q.    Okay.  I'm sorry, I didn't ask.             15:32:18

21            Is the one for -- is there a different and    15:32:23

22   a separate CBA for catering personnel?                15:32:24

23        A.    Yes, there is.                              15:32:28

24        Q.    Okay.  And it's not attached here?          15:32:29

25        A.    I don't know.                               15:32:31
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

1      Q.    Well, you didn't -- is it -- you have a          15:32:31
2  copy in your office, I presume?                            15:32:44
3      A.    Yes, I do.                                       15:32:45
4      Q.    And is it the contention that the CBA            15:32:49
5  for -- there is a CBA that covers catering --              15:32:56
6  Filipino catering personnel?                               15:33:01
7      A.    All catering personnel.                          15:33:02
8      Q.    All catering?                                    15:33:05
9      A.    Yes.                                             15:33:05
10     Q.    And that includes the Filipinos?                 15:33:06
11     A.    Yes.                                             15:33:08
12     Q.    And is it your contention that the CBA for       15:33:09
13 the -- is for hotel workers, includes the five hotel       15:33:18
14 workers in this case?                                      15:33:25
15         MR. MASE:  Objection, calls for a legal            15:33:26
16     conclusion, lack of qualification and predicate.       15:33:29
17         THE WITNESS:  In my opinion, yes.                  15:33:31
18 BY MR. HUGGETT:
19     Q.    And do you know if that CBA for the hotel        15:33:58
20 workers has been produced in this case?                    15:34:08
21     A.    I have no idea.                                  15:34:14
22     Q.    You don't know.  And is it your position         15:34:15
23 that the CBA for the hotel workers either would have       15:34:18
24 or should have been given to the hotel workers in          15:34:26
25 this case?                                                 15:34:29

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | MR. MASE:  Objection to the form of the | 15:34:30 |
| 2 | question, calls for a legal conclusion, lack of | 15:34:31 |
| 3 | qualification and predicate. | 15:34:34 |
| 4 | THE WITNESS:  A copy should have been given | 15:34:37 |
| 5 | to them. | 15:34:39 |
| 6 | BY MR. HUGGETT: | |
| 7 | Q.   And when would it be given to them? | 15:34:40 |
| 8 | A.   It should be given to them prior to | 15:34:42 |
| 9 | departing Manila. | 15:34:46 |
| 10 | Q.   Okay. | |
| 11 | THE COURT REPORTER:  Prior to departing -- | |
| 12 | THE WITNESS:  Departing Manila. | |
| 13 | BY MR. HUGGETT: | |
| 14 | Q.   And are they instructed or told by your | 15:34:49 |
| 15 | manning agents that it is binding upon them or are | 15:34:55 |
| 16 | they simply given a copy? | 15:34:58 |
| 17 | A.   I don't know. | 15:35:00 |
| 18 | MR. HUGGETT:  Okay.  You may ask questions. | 15:35:45 |
| 19 | MR. MASE:  That means you are finished. | 15:35:47 |
| 20 | MR. HUGGETT:  Unless your questions provoke | 15:35:49 |
| 21 | something further. | 15:35:52 |
| 22 | MR. MASE:  Okay. | |
| 23 | MR. HUGGETT:  If you have none, then I am | 15:35:52 |
| 24 | through. | 15:35:56 |
| 25 | MR. FARKAS:  Do you want a break, Kjell? | 15:35:56 |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

```
 1              (Thereupon, a brief discussion was held off
 2      the record.)
 3              MR. MASE:  What's that?
 4              THE COURT REPORTER:  I just said, be
 5          careful to speak up, because when he turns his
 6          head, it will be hard to hear him.
 7              MR. MASE:  Yeah.  I mean unfortunately with
 8          the whole video setup, he's looking one way, and
 9          you're off to the other side.  It's kind of -- I
10          don't know what that's going to look like on
11          video, so -- but I have my other objection with
12          respect to that as it is.                          15:36:03
13                      CROSS-EXAMINATION
14      BY MR. MASE:                                           15:36:10
15          Q.   All right.  Mr. Hjartnes, let me ask you      15:36:31
16      just some follow-up questions.                         15:36:33
17              Yesterday you'll remember that Mr. Huggett     15:36:37
18      showed you the plaintiff's notice of Rule 30 (b)(6)    15:36:39
19      deposition, and that was marked as an exhibit in this  15:36:42
20      deposition.  Do you remember that?                     15:36:45
21          A.   Yes.                                          15:36:46
22          Q.   And that exhibit designates a number of       15:36:48
23      areas of inquiry that he indicated that he wanted to   15:36:52
24      make to a representative of NCL, and that's how you    15:36:57
25      got to be here for the deposition for two days.        15:37:00
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | I want to go over that and ask you some | 15:37:03 |
| 2 | questions.  All right? | 15:37:06 |
| 3 | A.  Okay. | 15:37:06 |
| 4 | Q.  All right.  My first question is -- | 15:37:07 |
| 5 | (Thereupon, a brief discussion was held off | |
| 6 | the record.) | |
| 7 | BY MR. MASE: | |
| 8 | Q.  My first question, Mr. Hjartnes, is this: | 15:37:09 |
| 9 | Do you, yourself, personally know the dates and | 15:37:31 |
| 10 | locations that the arbitration agreement, which is | 15:37:34 |
| 11 | incorporated into the Standard Terms and Conditions, | 15:37:39 |
| 12 | was negotiated? | 15:37:44 |
| 13 | A.  No, I do not, because we are not a part to | 15:37:46 |
| 14 | the negotiations. | 15:37:49 |
| 15 | Q.  Do you have any reason to believe anyone at | 15:37:51 |
| 16 | NCL would know that? | 15:37:53 |
| 17 | A.  No, I don't. | 15:37:54 |
| 18 | Q.  Okay.  Do you know the participants, the | 15:37:56 |
| 19 | people, that is, that actually were involved in the | 15:37:58 |
| 20 | negotiations to come up with the arbitration | 15:38:01 |
| 21 | agreement? | 15:38:03 |
| 22 | A.  No, I do not know. | 15:38:03 |
| 23 | Q.  We've heard some discussion about unions, | 15:38:05 |
| 24 | and union membership, and I want to see if I can get | 15:38:09 |
| 25 | that clear and oriented in my mind. | 15:38:12 |

1        In this case you have a number of Filipino    15:38:15

2   nationals who served as seamen onboard NCL's ship the   15:38:21

3   NORWAY, right?                                          15:38:28

4        A.   That's correct.                              15:38:28

5        Q.   All right.  Explain to us, if you would,     15:38:28

6   please, how each of these seamen had any               15:38:30

7   representation or involvement with any union; and      15:38:36

8   explain what that union is.                            15:38:39

9             MR. HUGGETT:  Objection.  He's already said  15:38:41

10       he doesn't know.                                   15:38:42

11            MR. MASE:  You can answer.                    15:38:45

12            THE WITNESS:  Well, the -- both Collective    15:38:46

13       Bargaining Agreements are negotiated with          15:38:50

14       Norwegian Seafarers Union.                         15:38:54

15   BY MR. MASE:

16       Q.   When you say "both," you're referring to      15:38:57

17   catering personnel and non-catering, or deck           15:38:59

18   personnel?                                             15:39:01

19       A.   Catering -- catering and deck and engine.     15:39:01

20   The catering CBA is negotiated by NSU on behalf of     15:39:08

21   the seafarers.                                         15:39:13

22            The deck and engine CBA is negotiated with    15:39:19

23   NSU on behalf of the different unions involved with    15:39:25

24   the seafarers, being AMOSUP for the Filipino National  15:39:35

25   Deck and Engine personnel; the Norwegian engineers --  15:39:38

```
 1   or Norwegian Marine Engineer's Union for engineers;        15:39:44
 2   and the Norwegian Officers Union for other officers.       15:39:52
 3            And each of the seafarers are deducted            15:40:03
 4   union dues, which is paid to their respective unions.      15:40:06
 5       Q.   Does the union receive any payment from           15:40:09
 6   NCL?                                                       15:40:12
 7       A.   No, they do not.                                  15:40:13
 8       Q.   So the sole source of the union's payment         15:40:14
 9   is from the crew members that the union represents?        15:40:18
10       A.   Well, let me clarify that.  The NCL pays          15:40:21
11   the union on behalf of the seafarer based on               15:40:25
12   deductions from each seafarer.                             15:40:29
13       Q.   In other words, NCL collects the money and        15:40:29
14   sends it over?                                             15:40:33
15       A.   That's correct.                                   15:40:34
16       Q.   But it is not NCL paying the union; it's          15:40:34
17   the NCL transmitting the dollars the seafarers pay?        15:40:36
18       A.   That's correct.                                   15:40:39
19       Q.   And the NSU, the Norwegian Seafarer's             15:40:40
20   Union, you mentioned that it has a relationship to         15:40:43
21   the ITF, International Transport Federation.               15:40:45
22       A.   That's correct, it's an affiliated union.         15:40:46
23       Q.   And is the -- does the ITF have any               15:40:48
24   affiliation with any unite -- any unions here in the       15:40:51
25   United States?                                             15:40:54
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1       A.    Yes.  They're affiliated with the -- help      15:40:54

 2  me out with the letters.   A-C -

 3            THE COURT REPORTER:   With the?

 4  BY MR. MASE:

 5       Q.    With the AFLCIO?

 6       A.    AFLCIO, yes.  They're an affiliated union.     15:41:01

 7       Q.    The Collective Bargaining Agreements, or       15:41:13

 8  CBAs that we've heard you talk about, how often are      15:41:16

 9  those renegotiated or negotiated?                        15:41:19

10       A.    Usually every three years, with updates on    15:41:24

11  a yearly basis.  Sometimes they're updated more than     15:41:32

12  that through protocols, where we -- we can change the    15:41:36

13  salary levels, we can change position, but usually       15:41:40

14  the CBA itself is renegotiated every -- every two or     15:41:43

15  three years.                                             15:41:47

16       Q.    You've been involved in the process of        15:41:47

17  negotiating the Collective Bargaining Agreements with    15:41:51

18  the Seafarer's Union for sometime now; is that right?    15:41:51

19       A.    Yes, since 19 -- since 1999, the end of       15:41:58

20  1999.                                                    15:42:01

21       Q.    Now, I know you're not a lawyer, but I want   15:42:01

22  to ask you whether or not you know if the Collective     15:42:04

23  Bargaining agreements and the negotiations by the        15:42:07

24  Norwegian Seafarer's Union in connection with the        15:42:11

25  Collective Bargaining Agreements, have resulted in       15:42:14
```

250

```
 1   seaman getting benefits that they otherwise were not      15:42:15
 2   entitled?                                                  15:42:21
 3            MR. HUGGETT:  Objection to the form.              15:42:22
 4            MR. MASE:  I'll rephrase it.                      15:42:23
 5   BY MR. MASE:
 6       Q.   You understand there are certain things           15:42:24
 7   which seamen are entitled to under U.S. law, under        15:42:25
 8   Norwegian law, under other laws, correct?                 15:42:31
 9       A.   Yes.                                              15:42:33
10       Q.   Under the Collective Bargaining Agreements       15:42:34
11   are there other benefits beyond the minimum which the     15:42:37
12   seamen are given?                                          15:42:40
13            MR. HUGGETT:  Object to the form.                 15:42:41
14   BY MR. MASE:
15       Q.   For example, vacation pay, overtime pay,          15:42:46
16   limits on overtime, that kind of thing?                   15:42:50
17       A.   Yes.                                              15:42:52
18       Q.   Are they also given certain forms of             15:42:53
19   insurance?                                                 15:42:55
20       A.   Yes.                                              15:42:56
21            MR. HUGGETT:  Object to the form to all          15:42:58
22       these.
23   BY MR. MASE:
24       Q.   Retirement benefits.                              15:42:59
25       A.   For some of them, yes.                            15:43:01
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

251

```
 1        Q.    Okay.  Now, we've heard some discussion    15:43:04
 2   about a Tripartite Working Group.  Can you explain to  15:43:22
 3   us what your understanding is of what the Tripartite   15:43:28
 4   Working Group is.                                      15:43:31
 5        A.    It's a -- as I understand it, it's an       15:43:31
 6   advisory working group to the POEA consisting of       15:43:38
 7   members from the Department of Labor in the            15:43:43
 8   Philippines --
 9             THE COURT REPORTER:  I'm sorry?
10             THE WITNESS:  Department of Labors --         15:43:53
11        Department of Labor, representative for the        15:43:55
12        union, and representatives from the industry,      15:43:57
13        being the manning, manning agencies.               15:44:01
14   BY MR. MASE:
15        Q.    When you say the "industry," do you mean     15:44:03
16   like NCL, the cruise lines, that kind of thing?        15:44:05
17        A.    No.                                          15:44:07
18        Q.    Did NCL have any representation at all in    15:44:08
19   the Tripartite Working Group?                          15:44:11
20        A.    No.  This was an internal Filipino          15:44:12
21   government commission that we have no -- no            15:44:18
22   representation of.                                     15:44:23
23        Q.    What about the POEA itself in the Circular  15:44:23
24   Number 4 and the memorandum -- or                     15:44:26
25   Memorandum 4 and Circular 9 -- or I guess it's        15:44:27
```

| | | |
|---|---|---|
| 1 | Department Order 4 and Memorandum Circular | 15:44:32 |
| 2 | Number 9, and the terms of conditions, did NCL have | 15:44:35 |
| 3 | any input into those? | 15:44:38 |
| 4 | A.    No. | 15:44:40 |
| 5 | Q.    Was NCL consulted about those? | 15:44:40 |
| 6 | A.    No. | 15:44:42 |
| 7 | Q.    Why does NCL use these? | 15:44:43 |
| 8 | A.    That's part of the -- part of the agreement | 15:44:47 |
| 9 | we have with the Filipino government in order to do | 15:44:53 |
| 10 | business in the Filipinos, we have agreed to abide by | 15:45:05 |
| 11 | the POEA rules and regulations and their | 15:45:05 |
| 12 | requirements, including using an accredited manning | 15:45:05 |
| 13 | agent in the Philippines. | 15:45:10 |
| 14 | Q.    Why don't you just use a nonaccredited, and | 15:45:10 |
| 15 | disregard the POEA stuff? | 15:45:14 |
| 16 | A.    Well, there are many reasons for that, but | 15:45:16 |
| 17 | one of them is that a Filipino seafarer, unless he | 15:45:19 |
| 18 | holds in his hand an approved contract from the POEA, | 15:45:24 |
| 19 | he's not allowed to leave the country. | 15:45:31 |
| 20 | MR. HUGGETT:  Your memory's gotten so much | 15:45:36 |
| 21 | better.  I'm just overwhelmed.  It's a good | 15:45:39 |
| 22 | thing this is on video. | 15:45:42 |
| 23 | MR. MASE:  Did you finish your answer? | 15:45:46 |
| 24 | THE WITNESS:  I forgot what I was talking | 15:45:48 |
| 25 | about. | |

| | | |
|---|---|---|
| 1 | I don't know if you've ever been to the | 15:45:50 |
| 2 | Philippines, but when you get to the airport in | 15:45:53 |
| 3 | Manila, there are -- you have to go through | 15:45:55 |
| 4 | immigration to exit the country. | 15:45:59 |
| 5 | Anybody visiting, you and I, will go | 15:46:02 |
| 6 | through the visitors' line.  Any overseas | 15:46:07 |
| 7 | workers has to go through designated lines.  And | 15:46:10 |
| 8 | unless they have documents approved by the POEA, | 15:46:14 |
| 9 | they cannot leave the country. | 15:46:17 |
| 10 | BY MR. MASE: | |
| 11 | Q.   What does POEA stand for? | 15:46:19 |
| 12 | A.   Philippine Overseas Employment | 15:46:22 |
| 13 | Administration. | 15:46:29 |
| 14 | Q.   Are there any signs about the POEA in the | 15:46:29 |
| 15 | Philippines that you've seen? | 15:46:33 |
| 16 | A.   Any signs? | 15:46:35 |
| 17 | Q.   Uh-huh.  How about at the airport? | 15:46:36 |
| 18 | A.   Yeah, at the airport it clearly states that | 15:46:41 |
| 19 | you have to have POEA-approved documents to exit the | 15:46:44 |
| 20 | country, if you're an overseas worker. | 15:46:48 |
| 21 | Q.   Based upon your understanding and knowledge | 15:47:10 |
| 22 | from working at NCL, can you describe the process | 15:47:12 |
| 23 | which you understand the Philippine citizen goes | 15:47:17 |
| 24 | through if he seeks to become employed with NCL, kind | 15:47:21 |
| 25 | of walk me through that process? | 15:47:25 |

```
 1              MR. HUGGETT:  Objection to the form.  He's    15:47:27
 2       just been -- spent hours saying he hadn't the       15:47:30
 3       foggiest idea.                                       15:47:34
 4  BY MR. MASE:
 5       Q.   Go ahead, Mr. Hjartnes.                         15:47:34
 6       A.   Well, the -- if you start from the              15:47:35
 7  recruitment process, we -- we would ask the manning      15:47:47
 8  agent to -- or we would tell the manning agent the       15:47:55
 9  requirements we have for hiring, how many people we      15:48:00
10  need from each category.                                 15:48:05
11              They would then do the prescreening for us,  15:48:07
12  including interview, background check.  We would then    15:48:12
13  send somebody to the Philippines to interview them       15:48:19
14  and select those candidates who are eligible to be       15:48:23
15  hired.                                                   15:48:34
16              The next step would be they would go         15:48:34
17  through a medical exam.  And of course all the other     15:48:38
18  documentation, including seaman's book, basic --         15:48:42
19  basic safety training, passport, visa, and all those     15:48:47
20  requirements.                                            15:48:55
21              Providing they past all the medical          15:49:00
22  background check, visa requirements, training, we        15:49:03
23  would then initiate the -- the hiring -- the             15:49:09
24  documentation of them.                                   15:49:14
25       Q.   All right.  And how would that work?           15:49:15
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | MR. HUGGETT:  Objection to the form. | 15:49:17 |
| 2 | THE WITNESS:  We would issue -- the | 15:49:22 |
| 3 | candidate would come into the office, to the | 15:49:28 |
| 4 | manning agent's office, where they would sign | 15:49:30 |
| 5 | their contract of -- that we have here. | 15:49:37 |
| 6 | BY MR. MASE: | |
| 7 | Q.   You're thumbing through the document which | 15:49:43 |
| 8 | Mr. Huggett marked earlier on in the deposition as an | 15:49:46 |
| 9 | exhibit, as Exhibit A -- well, no, I'm sorry, | 15:49:50 |
| 10 | Exhibit 1 to your deposition? | 15:49:56 |
| 11 | A.   That's correct. | 15:49:57 |
| 12 | Q.   Okay.  You said they'd execute the | 15:49:58 |
| 13 | contract? | 15:50:01 |
| 14 | A.   Yes. | 15:50:02 |
| 15 | Q.   And then what? | 15:50:02 |
| 16 | A.   That would then go to the POEA for | 15:50:03 |
| 17 | approval.  Which, by the way, is not an automatic | 15:50:07 |
| 18 | approval from POEA.  They do their own background | 15:50:12 |
| 19 | check/investigation of these people, and if | 15:50:17 |
| 20 | everything checked out, they would then stamp it and | 15:50:21 |
| 21 | approve it. | 15:50:24 |
| 22 | Q.   Do you know anything about how the POEA | 15:50:24 |
| 23 | came about, how it came into existence or why? | 15:50:26 |
| 24 | MR. HUGGETT:  Object to the form. | 15:50:30 |
| 25 | MR. MASE:  You can answer. | 15:50:33 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | THE WITNESS:  Okay.  Yes, I do.  And in | 15:50:34 |
| 2 | their charter, the first -- their first | 15:50:40 |
| 3 | guideline or their first paragraph of their | 15:50:45 |
| 4 | mission, in their mission statement is to | 15:50:49 |
| 5 | protect Filipino seafarers, protect their human | 15:50:52 |
| 6 | rights and to give them the best possible terms | 15:50:58 |
| 7 | and conditions and equal opportunity and | 15:51:05 |
| 8 | employment overseas. | 15:51:09 |
| 9 | And it was actually -- I think it was found | 15:51:14 |
| 10 | in 1980 -- was it 1982 or '84? | 15:51:16 |
| 11 | BY MR. MASE: | |
| 12 | Q.   Mr. Huggett asked you some questions about | 15:51:23 |
| 13 | whether or not if you thought that if NCL had to | 15:51:26 |
| 14 | abide by the POEA, the dollar limits and so forth in | 15:51:28 |
| 15 | the POEA, whether or not that would work out as kind | 15:51:32 |
| 16 | of a windfall or a benefit to NCL as compared to | 15:51:35 |
| 17 | U.S. law.  Remember those questions? | 15:51:41 |
| 18 | A.   Yes, I do. | 15:51:42 |
| 19 | Q.   Let me ask you this:  Do you have any idea | 15:51:43 |
| 20 | whether or not a Filipino seaman who gets injured in | 15:51:46 |
| 21 | Croatia has the right to recover anything under | 15:51:50 |
| 22 | Croatian law? | 15:51:54 |
| 23 | A.   No, I don't. | 15:51:54 |
| 24 | Q.   Okay.  Do you have any idea whether or not | 15:51:55 |
| 25 | a Filipino seaman who gets injured in Singapore has a | 15:51:56 |

| | | |
|---|---|---|
| 1 | right to recover anything under the Singapore system? | 15:52:00 |
| 2 | A.   No, I don't. | 15:52:04 |
| 3 | Q.   Do you have any idea whether or not a | 15:52:04 |
| 4 | Filipino seaman who gets injured in India has the | 15:52:07 |
| 5 | right to recover under their system? | 15:52:10 |
| 6 | A.   No, I don't. | 15:52:10 |
| 7 | Q.   Let me ask you this, then:  Wouldn't it be | 15:52:13 |
| 8 | equally fair in relation to his | 15:52:16 |
| 9 | 700-odd-thousand-dollar compilation question to say | 15:52:17 |
| 10 | that while in relation to the U.S., the recovery | 15:52:19 |
| 11 | under the Philippine law and under the POEA might be | 15:52:22 |
| 12 | less in relation to other countries, it might be a | 15:52:24 |
| 13 | whole lot more? | 15:52:27 |
| 14 | MR. HUGGETT:  Objection to the form. | 15:52:28 |
| 15 | THE WITNESS:  I -- it would appear to be | 15:52:29 |
| 16 | speculation on my part. | 15:52:32 |
| 17 | MR. MASE:  Okay.  Well, I don't want you to | 15:52:33 |
| 18 | speculate. | 15:52:35 |
| 19 | BY MR. MASE: | |
| 20 | Q.   You -- would you agree with me that if | 15:52:38 |
| 21 | there are countries where no recovery is allowed, | 15:52:39 |
| 22 | that if an employer hires through the POEA, and | 15:52:43 |
| 23 | agrees to be bound by the POEA terms, that the | 15:52:48 |
| 24 | employee would get more than in that country where | 15:52:53 |
| 25 | nothing was allowed? | 15:52:56 |

```
1              MR. HUGGETT:  Objection --              15:52:57
2              THE WITNESS:  Clearly.                  15:52:58
3              MR. HUGGETT:  -- to the form.  You can't 15:52:58
4      have POEA in a country that doesn't have it.   15:53:00
5   BY MR. MASE:
6       Q.    Isn't that true?
7       A.    Clearly, in essence, that was one of the 15:53:01
8   reasons why POEA was created, to protect the Filipino 15:53:03
9   overseas; not only seafarers, overseas workers.   15:53:09
10      Q.    Mr. Huggett asked you some questions     15:53:15
11  yesterday, showing you Exhibit 1, about the dates on 15:53:17
12  this document that's signed here by crew member Abdi 15:53:19
13  Comedia, and he pointed out to you that the type was 15:53:23
14  the 10th day of March, 2003, and that appears to be 15:53:27
15  the date when Lope --                             15:53:30
16      A.    Parragatos.                             15:53:33
17      Q.    -- Parragatos signed and Abdi Comedia    15:53:34
18  signed.  And then I think he also pointed out there's 15:53:37
19  another date down below verified by the POEA, and  15:53:39
20  that was some two weeks later, on March 25th.      15:53:41
21            Can you explain to us what you think may 15:53:44
22  account for the difference?                       15:53:46
23            MR. HUGGETT:  Objection to the form.  He 15:53:48
24      already said he didn't know.  Is he suddenly   15:53:49
25      going to know all these things just because you 15:53:52
```

```
 1      asked him?                                    15:53:55

 2            THE WITNESS:  That was not my testimony   15:53:56

 3      yesterday.  You asked me about this part, and  15:53:57

 4      that I still don't know.                      15:54:04

 5            But this would be normal because the     15:54:05

 6      contract is executed at the manning agent's   15:54:09

 7      office.  It's then sent to the POEA for        15:54:12

 8      approval.  That could take -- it could take    15:54:16

 9      three days, it could take ten days.            15:54:20

10  BY MR. MASE:

11      Q.   Okay.                                     15:54:23

12      A.   And this is -- this is quite normal.  It's 15:54:24

13  nothing abnormal about that.  And we discussed that 15:54:28

14  yesterday.  What I still don't know is the -- when  15:54:31

15  the other one was signed.                          15:54:33

16      Q.   Now, Mr. Huggett showed you and marked an  15:54:37

17  exhibit to this deposition, a case.                15:54:40

18            MR. MASE:  Could I see that exhibit,

19      please?

20            MR. HUGGETT:  Which one you want?         15:54:48

21            MR. MASE:  I think it's Exhibit 3, the

22      case, Tolosa.

23            THE COURT REPORTER:  You have it.

24            MR. MASE:  Not anymore.  I think           15:54:50

25      Mr. Huggett took it back.  He's got it.  It's   15:54:51
```

| | | |
|---|---|---|
| 1 | right there. | 15:54:52 |
| 2 | MR. HUGGETT:  There you go. | 15:54:52 |
| 3 | BY MR. MASE: | |
| 4 | Q.   Now, you remember he showed you this case | 15:54:54 |
| 5 | here? | |
| 6 | A.   Yes. | 15:54:54 |
| 7 | Q.   All right.  Now, I don't profess to | 15:54:58 |
| 8 | understand Philippine law, but I want to ask you some | 15:55:02 |
| 9 | questions and see you if you know any of this, | 15:55:05 |
| 10 | because he was asking you about it. | 15:55:07 |
| 11 | Do you know whether or not moral damages | 15:55:11 |
| 12 | are available under the POEA?  If you know, fine, and | 15:55:17 |
| 13 | if you don't -- | 15:55:25 |
| 14 | A.   No, I don't know the details of what's | 15:55:26 |
| 15 | available. | 15:55:27 |
| 16 | Q.   Okay.  Do you know whether exemplary | 15:55:28 |
| 17 | damages available under the POEA? | 15:55:30 |
| 18 | A.   No, I do not. | 15:55:31 |
| 19 | Q.   Do you know whether attorney's fees are | 15:55:32 |
| 20 | available under the POEA? | 15:55:35 |
| 21 | A.   No, I do not. | 15:55:37 |
| 22 | Q.   Do you know whether interest on a personal | 15:55:38 |
| 23 | injury award is available under the POEA? | 15:55:41 |
| 24 | A.   No, I do not. | 15:55:44 |
| 25 | Q.   Now, Mr. Huggett was asking you some | 15:55:56 |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

| | | |
|---|---|---|
| 1 | questions, a number questions about NCL being a | 15:55:59 |
| 2 | foreign company and flying Bahamian flags, and so | 15:56:07 |
| 3 | forth.  You remember those questions? | 15:56:09 |
| 4 | A.    Yes. | 15:56:09 |
| 5 | Q.    Has NCL recently set up a separate company | 15:56:10 |
| 6 | known as NCL America? | 15:56:13 |
| 7 | A.    Yes. | 15:56:15 |
| 8 | Q.    Is that company going to -- strike that. | 15:56:15 |
| 9 | Is that company in the process of building | 15:56:16 |
| 10 | and refitting ships which will fly American flags? | 15:56:18 |
| 11 | A.    Yes. | 15:56:22 |
| 12 | Q.    Will that company employ Americans as crew | 15:56:22 |
| 13 | members on its ship? | 15:56:25 |
| 14 | A.    Yes. | 15:56:27 |
| 15 | Q.    Has -- has a separate division been set up | 15:56:27 |
| 16 | to employ the Americans on those ships? | 15:56:29 |
| 17 | A.    Yes. | 15:56:32 |
| 18 | Q.    What's the name of the first U.S. flagged | 15:56:32 |
| 19 | cruise ship that NCL America is going to deploy? | 15:56:36 |
| 20 | A.    PRIDE OF AMERICA. | 15:56:41 |
| 21 | THE COURT REPORTER:  I'm sorry? | |
| 22 | THE WITNESS:  PRIDE OF AMERICA.  PRIDE OF | |
| 23 | AMERICA | 15:56:47 |
| 24 | MR. HUGGETT:  Is all this in the future? | 15:56:47 |
| 25 | MR. MASE:  Actually this is all in the | 15:56:49 |

262

| | | |
|---|---|---|
| 1 | present. | 15:56:50 |
| 2 | BY MR. MASE: | |
| 3 | Q.   Mr. Hjartnes, you were asked questions | 15:56:52 |
| 4 | about the positions that Filipinos occupy onboard the | 15:56:54 |
| 5 | ship by Mr. Huggett. | 15:56:57 |
| 6 | After an incident several years ago, did | 15:56:58 |
| 7 | NCL adopt a policy of having two watchkeepers on the | 15:57:01 |
| 8 | bridge, officers of the watch at all times? | 15:57:06 |
| 9 | A.   Yes. | 15:57:07 |
| 10 | Q.   What nationality are those watchkeepers? | 15:57:07 |
| 11 | A.   A lot of them are Filipinos. | 15:57:12 |
| 12 | Q.   Okay.  I'm sure they vary.  By the way, how | 15:57:14 |
| 13 | many nationalities do you have onboard the ships? | 15:57:17 |
| 14 | And within the crew, I guess I should say. | 15:57:21 |
| 15 | A.   The latest count I saw was 80 -- 88. | 15:57:23 |
| 16 | Q.   88? | 15:57:27 |
| 17 | A.   I think it was 88. | 15:57:28 |
| 18 | Q.   Do you consider the position of officer, | 15:57:29 |
| 19 | watch officer on the bridge -- well, let me ask you, | 15:57:33 |
| 20 | the watch officer on the bridge, is he responsible | 15:57:36 |
| 21 | for making sure the ship stays out of the trouble and | 15:57:38 |
| 22 | out of harm's way? | 15:57:41 |
| 23 | A.   Yes. | 15:57:42 |
| 24 | Q.   Is that a striped officer position? | 15:57:42 |
| 25 | A.   Yes, it is. | 15:57:44 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | Q.   How many stripes? | 15:57:45 |
| 2 | A.   It could be one or two; one, two or | 15:57:50 |
| 3 | three -- | |
| 4 | Q.   Okay. | |
| 5 | A.   -- depending on the position. | 15:57:53 |
| 6 | Q.   Is that what you would characterize as a | 15:57:58 |
| 7 | significant position, a senior position on the ship, | 15:57:58 |
| 8 | particularly if it's three stripe? | 15:58:04 |
| 9 | A.   Yes. | 15:58:04 |
| 10 | Q.   Mr. Huggett asked you about NCL's | 15:58:06 |
| 11 | conviction, and I want to ask you some questions | 15:58:09 |
| 12 | about that. | 15:58:11 |
| 13 | The facts from which that arose came to | 15:58:11 |
| 14 | light in January -- the time frame between January | 15:58:15 |
| 15 | and May of 2000; is that right? | 15:58:20 |
| 16 | MR. HUGGETT:  Well, let me object.  He said | 15:58:23 |
| 17 | he didn't have any idea that they were | 15:58:24 |
| 18 | convicted -- | |
| 19 | MR. MASE:  Do you know? | |
| 20 | MR. HUGGETT:  -- so how's he going to have | 15:58:26 |
| 21 | any idea of all these other things? | 15:58:28 |
| 22 | MR. MASE:  I don't -- that's not what he | 15:58:30 |
| 23 | said, Mr. Huggett. | 15:58:30 |
| 24 | MR. HUGGETT:  Sure, he did. | 15:58:31 |
| 25 | THE WITNESS:  I don't recall. | 15:58:32 |

| | |
|---|---|
| 1 | MR. MASE:  All right.  Fair enough. | 15:58:32 |
| 2 | BY MR. MASE: | |
| 3 | Q.   Do you recall that NCL entered into a plea | 15:58:33 |
| 4 | deal with the United States Government after a | 15:58:36 |
| 5 | voluntarily disclosure that it believed environmental | 15:58:39 |
| 6 | violations may have occurred? | 15:58:43 |
| 7 | A.   Yes.  That, I remember. | 15:58:44 |
| 8 | MR. HUGGETT:  Object to form. | 15:58:45 |
| 9 | BY MR. MASE: | |
| 10 | Q.   Do you remember that the federal judge who | 15:58:45 |
| 11 | took the plea, Judge Joan Leonard, commended NCL | 15:58:47 |
| 12 | extensively.  The Herald reported upon it, and she | 15:58:50 |
| 13 | referred NCL as a model corporate citizen, and the | 15:58:53 |
| 14 | plea deal and the voluntarily disclosure as a model | 15:58:55 |
| 15 | of corporate responsibility. | 15:58:58 |
| 16 | MR. HUGGETT:  Objection to form. | 15:59:00 |
| 17 | BY MR. MASE: | |
| 18 | Q.   Did you read that?  Do you remember that? | 15:59:01 |
| 19 | MR. HUGGETT:  Object to the form. | 15:59:02 |
| 20 | THE WITNESS:  I may have read it.  I'm sure | 15:59:03 |
| 21 | I read it, but I don't remember the details of | 15:59:05 |
| 22 | it. | 15:59:06 |
| 23 | BY MR. MASE: | |
| 24 | Q.   All right.  In describing -- strike that. | 15:59:07 |
| 25 | In answering the various areas of inquiry | 15:59:16 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | in this notice of deposition, and Mr. Huggett asked | 15:59:20 |
| 2 | you yesterday a number of times, are you the person | 15:59:23 |
| 3 | with the most knowledge of this, and you said I think | 15:59:25 |
| 4 | so.  And then you would go on in many cases to say | 15:59:27 |
| 5 | you just didn't know certain things. | 15:59:29 |
| 6 | Is there anyone else in NCL, that you know, | 15:59:30 |
| 7 | who has any greater knowledge of the tiems that are | 15:59:33 |
| 8 | specified by Mr. Huggett in the notice of deposition? | 15:59:36 |
| 9 | Do you know anybody else who would be any better? | 15:59:38 |
| 10 | A.    No, I don't. | 15:59:42 |
| 11 | Q.    Okay.  Is the fact that this is a | 15:59:44 |
| 12 | governmentally-imposed system, is that why NCL | 15:59:49 |
| 13 | doesn't have someone who completely and totally, | 15:59:52 |
| 14 | thoroughly understands all the ins and outs of it? | 15:59:55 |
| 15 | MR. HUGGETT:  Object to the form. | 15:59:59 |
| 16 | BY MR. MASE: | |
| 17 | Q.    Is that why?  Strike that. | 16:00:00 |
| 18 | Do you know why NCL doesn't have someone | 16:00:00 |
| 19 | who has a complete, intimate, total understanding of | 16:00:02 |
| 20 | all the ins and outs of the POEA? | 16:00:05 |
| 21 | MR. HUGGETT:  Object to the form. | 16:00:08 |
| 22 | THE WITNESS:  Well, like I said many times | 16:00:09 |
| 23 | yesterday, POEA is a -- it's a Filipino | 16:00:11 |
| 24 | government administration.  It's a -- it's a | 16:00:18 |
| 25 | government office that we have no | 16:00:19 |

| | | |
|---|---|---|
| 1 | representation, we have no input, we have no | 16:00:24 |
| 2 | influence on them. | 16:00:26 |
| 3 | They implement the laws, and in order for | 16:00:29 |
| 4 | us to be accredited as a foreign principal, we | 16:00:34 |
| 5 | have agreed to abide by their rulings. | 16:00:41 |
| 6 | BY MR. MASE: | |
| 7 | Q.    And you've also testified that you get much | 16:00:52 |
| 8 | of your information from the manning agents? | 16:00:54 |
| 9 | A.    Yes. | 16:00:56 |
| 10 | Q.    Are those regulated in the Philippines? | 16:00:57 |
| 11 | A.    Very much so. | 16:00:59 |
| 12 | Q.    In order for a manning agent to be able to | 16:01:00 |
| 13 | work with the POEA, does he have -- he or she or | 16:01:02 |
| 14 | it -- I guess they're businesses -- have to be | 16:01:07 |
| 15 | accredited by the POEA? | 16:01:09 |
| 16 | A.    Yes. | 16:01:10 |
| 17 | Q.    The same way you have to be accredited? | 16:01:10 |
| 18 | A.    Even more stringent than our accreditation. | 16:01:13 |
| 19 | Q.    And I know you testified earlier that you | 16:01:18 |
| 20 | largely rely upon the manning agents to give you | 16:01:20 |
| 21 | information about the POEA.  In your experience, are | 16:01:23 |
| 22 | the manning agents reliable sources of that | 16:01:25 |
| 23 | information? | 16:01:28 |
| 24 | A.    Yes, absolutely. | 16:01:29 |
| 25 | Q.    Have you had any problems or experiences | 16:01:36 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

1   which suggested unreliability?                         16:01:38

2        A.   Not that I -- not that I can recall, no.     16:01:41

3        Q.   Plaintiff's Exhibit A -- I'm sorry, I keep   16:01:50

4   saying A because it has an Exhibit A sticker.          16:01:55

5            Plaintiff's Exhibit No. 1 to your            16:01:57

6   deposition, the contract of employment with the        16:01:59

7   attached Department Order No. 4, Memorandum Circular   16:02:02

8   Number 9, and the Terms and Conditions, all of these   16:02:06

9   documents taken together are the exhibit.              16:02:11

10            Do Filipino seamen who sign up through the   16:02:13

11   POEA and get a contract, employment with NCL, get      16:02:18

12   these documents?                                       16:02:21

13        A.   Yes, they do.                                16:02:21

14            MR. HUGGETT:   Objection to form.            16:02:22

15   BY MR. MASE:

16        Q.   Describe the process --

17            MR. HUGGETT:   He already testified that he  16:02:23

18        didn't know.                                       16:02:24

19   BY MR. MASE:

20        Q.   Describe the process and when they get the  16:02:24

21   documents.                                              16:02:27

22            MR. HUGGETT:   Objection to the form.        16:02:27

23            THE WITNESS:   They get a copy of all these, 16:02:35

24        as I testified to yesterday, prior departing the  16:02:37

25        Philippines.   Exactly at which point in time     16:02:41

| | | |
|---|---|---|
| 1 | they get them, I don't know, but it would be | 16:02:45 |
| 2 | after they have been approved by the POEA. | 16:02:49 |
| 3 | BY MR. MASE: | |
| 4 | Q.   So when, in relation to the crew member | 16:02:54 |
| 5 | signing that, does he get a copy? | 16:02:58 |
| 6 | MR. HUGGETT:  Objection to the form.  He | 16:03:01 |
| 7 | already testified he didn't know. | 16:03:03 |
| 8 | MR. MASE:  You can answer. | 16:03:04 |
| 9 | THE WITNESS:  After it's been assigned and | 16:03:05 |
| 10 | approved by the POEA. | 16:03:08 |
| 11 | BY MR. MASE: | |
| 12 | Q.   Okay.  You said that you have been to -- | 16:03:09 |
| 13 | you mentioned two meetings yesterday, you talked | 16:03:13 |
| 14 | about.  One was like an orientation meeting, and then | 16:03:15 |
| 15 | I think one was a predeparture conference or | 16:03:18 |
| 16 | something like that.  I forgot the terminology. | 16:03:20 |
| 17 | A.   Predeparture orientation. | 16:03:24 |
| 18 | THE COURT REPORTER:  I'm sorry? | |
| 19 | THE WITNESS:  Predeparture orientation. | |
| 20 | BY MR. MASE: | |
| 21 | Q.   Okay.  But there were two separate things, | 16:03:26 |
| 22 | right? | 16:03:29 |
| 23 | A.   Yes. | 16:03:29 |
| 24 | Q.   You said you've never been to either of | 16:03:29 |
| 25 | them yourself, you just observe them from the | 16:03:31 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

269

| | | |
|---|---|---|
| 1 | outside? | 16:03:36 |
| 2 | A.    Yes. | 16:03:36 |
| 3 | MR. HUGGETT:  One of them. | 16:03:36 |
| 4 | MR. MASE:  One of them. | 16:03:36 |
| 5 | MR. HUGGETT:  Objection to form. | 16:03:39 |
| 6 | MR. MASE:  All right. | 16:03:39 |
| 7 | BY MR. MASE: | |
| 8 | Q.    In the affidavit in which Happy submitted, | 16:03:46 |
| 9 | and which Mr. Huggett referred to, there were various | 16:03:49 |
| 10 | paragraphs which discussed the provision of the POEA | 16:03:56 |
| 11 | documentation and a review of its terms with the | 16:04:04 |
| 12 | seamen.  I think you were directed to those by | 16:04:06 |
| 13 | Mr. Huggett? | 16:04:09 |
| 14 | A.    Yes. | 16:04:09 |
| 15 | Q.    If I understood your testimony, you've | 16:04:10 |
| 16 | never personally witnessed that; is that right? | 16:04:12 |
| 17 | A.    The predeparture orientation? | 16:04:15 |
| 18 | Q.    Well, let me ask you:  Have you ever | 16:04:18 |
| 19 | witnessed where crew members who were coming to work | 16:04:20 |
| 20 | for NCL, or another cruise line, where it's -- the | 16:04:23 |
| 21 | POEA terms are reviewed with them? | 16:04:26 |
| 22 | MR. HUGGETT:  He testified that he had not. | 16:04:30 |
| 23 | THE WITNESS:  No, I have not.  I have seen | 16:04:31 |
| 24 | it take place, but I have not participated in | 16:04:33 |
| 25 | it -- | |

```
 1    BY MR. MASE:

 2         Q.   So you haven't actually --

 3              MR. MASE:  Sure.

 4              (Thereupon, a brief recess was taken, after

 5    which the following proceedings were had:)

 6    BY MR. MASE:

 7         Q.   In the manning agencies that you've been        16:05:10

 8    in, do they have any signs about the POEA.                16:05:13

 9         A.   Yes.                                            16:05:16

10         Q.   Do they hide all the information about the      16:05:19

11    POEA from the seamen so that they don't know anything     16:05:22

12    about it?                                                 16:05:25

13              MR. HUGGETT:  Object to the form.  He don't     16:05:26

14         know.

15    BY MR. MASE:

16         Q.   You ever been there, to the Philippines?       16:05:28

17         A.   Many times.                                     16:05:30

18         Q.   You ever been in the manning agencies?         16:05:30

19         A.   Many times.                                     16:05:32

20         Q.   Was it your observation that the manning       16:05:33

21    agencies hid all of this information --                   16:05:35

22              MR. HUGGETT:  Object to the form.

23    BY MR. MASE:

24         Q.   -- and concealed it from the seamen?           16:05:37

25              MR. HUGGETT:  Object to form.  He said he'd     16:05:37
```

| | |
|---|---|
| 1 | never seen one preorientation. | 16:05:39 |
| 2 | MR. MASE:  Mr. Huggett, please don't | 16:05:42 |
| 3 | continue to make speaking objections or I will | 16:05:44 |
| 4 | put -- | 16:05:46 |
| 5 | MR. HUGGETT:  Don't lead mislead the | 16:05:46 |
| 6 | witness. | |
| 7 | MR. MASE:  Mr. Huggett, please do not make | 16:05:48 |
| 8 | speaking objections in violation of Federal | 16:05:49 |
| 9 | Civil Procedure, or I will ask the Judge -- | 16:05:50 |
| 10 | MR. HUGGETT:  You may ask him whatever -- | 16:05:52 |
| 11 | ask her whatever you wish.  Please don't lead | 16:05:55 |
| 12 | the witness into misstatements. | 16:05:57 |
| 13 | MR. MASE:  Okay.  I'll rephrase it. | 16:06:03 |
| 14 | THE WITNESS:  Okay.  But you're talking | 16:06:04 |
| 15 | about two totally different things. | 16:06:05 |
| 16 | BY MR. MASE: | |
| 17 | Q.   Here's what I want to know:  From | 16:06:08 |
| 18 | Mr. Huggett's questions, one could get the impression | 16:06:09 |
| 19 | that there was a suggestion that the POEA is not | 16:06:12 |
| 20 | known about by the seamen, that they don't really get | 16:06:18 |
| 21 | any awareness of its term, et cetera.  Is that the | 16:06:21 |
| 22 | case? | 16:06:24 |
| 23 | A.   No. | 16:06:24 |
| 24 | MR. HUGGETT:  Object to the form. | |
| 25 | MR. MASE:  Okay. | 16:06:25 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | |
|---|---|
| 1 | THE WITNESS:  Not at all. | 16:06:25 |
| 2 | BY MR. MASE: |
| 3 | Q.   Are the seamen who are applying to work at | 16:06:26 |
| 4 | these manning agencies made aware of the POEA? | 16:06:30 |
| 5 | A.   Absolutely. | 16:06:32 |
| 6 | MR. HUGGETT:  Object to the form. | 16:06:33 |
| 7 | BY MR. MASE: |
| 8 | Q.   Are they made aware of its terms? | 16:06:33 |
| 9 | A.   Absolutely. | 16:06:35 |
| 10 | MR. HUGGETT:  Object to the form. | 16:06:36 |
| 11 | BY MR. MASE: |
| 12 | Q.   Are there signs that talk about the POEA, | 16:06:37 |
| 13 | articles in the newspapers, that kind of thing. | 16:06:40 |
| 14 | MR. HUGGETT:  Object to the form. | 16:06:42 |
| 15 | THE WITNESS:  All over the manning agencies | 16:06:43 |
| 16 | they have, from posters to newspapers, clippings | 16:06:45 |
| 17 | to signs. | 16:06:50 |
| 18 | BY MR. MASE: |
| 19 | Q.   You ever -- |
| 20 | A.   So -- |
| 21 | Q.   You ever read the paper in Manila? | 16:06:52 |
| 22 | A.   Do I? | 16:06:55 |
| 23 | Q.   Yeah. | 16:06:57 |
| 24 | A.   Yes, every time I'm there. | 16:06:57 |
| 25 | Q.   Ever see anything referencing the POEA when | 16:06:58 |

```
1   you were there in the Philippines?                    16:07:01

2          MR. HUGGETT:  Object to the form.              16:07:01

3          THE WITNESS:  Every day.                       16:07:02

4   BY MR. MASE:

5      Q.   Is the POEA something which is a source of    16:07:03

6   pride to Filipinos?                                   16:07:07

7          MR. HUGGETT:  Object to the form.              16:07:11

8          THE WITNESS:  Yes.                             16:07:12

9   BY MR. MASE:

10     Q.   Why?                                          16:07:13

11     A.   Because it's -- it's probably the only        16:07:16

12  country, at least in Asia, that has a proper system   16:07:21

13  to protect their overseas workers.                    16:07:25

14     Q.   Now, does the POEA only cover seamen?         16:07:27

15         MR. HUGGETT:  Object to the form.              16:07:31

16         THE WITNESS:  No.                              16:07:31

17  BY MR. MASE:

18     Q.   So, for example, if there's a Filipino        16:07:32

19  nurse working here at Doctors Hospital in Coral       16:07:35

20  Gables, to your understanding would she be covered by 16:07:38

21  the POEA?                                             16:07:40

22     A.   She could be covered under POEA or the OWA.   16:07:41

23         THE COURT REPORTER:  I'm sorry?

24         THE WITNESS:  OWA.

25  BY MR. MASE:
```

| | | |
|---|---|---|
| 1 | Q.   What's that? | 16:07:47 |
| 2 | A.   Overseas -- | 16:07:47 |
| 3 | Q.   workers? | 16:07:49 |
| 4 | A.   -- Worker's Administration. | 16:07:50 |
| 5 | Q.   Okay. | 16:07:51 |
| 6 | A.   which is also part of the Department of | 16:07:52 |
| 7 | Labor. | 16:07:55 |
| 8 | Q.   So, in other words, the POEA isn't | 16:07:56 |
| 9 | something that was setup by, say, the shipowners just | 16:07:57 |
| 10 | to stick it to the Philippine workers? | 16:08:01 |
| 11 |       MR. HUGGETT:  Objection to the form. | 16:08:05 |
| 12 |       THE WITNESS:  No. | 16:08:06 |
| 13 | BY MR. MASE: | |
| 14 | Q.   Okay.  Now, Mr. Huggett also asked you a | 16:08:08 |
| 15 | lot of questions about the negotiation process with | 16:08:10 |
| 16 | respect to the grievance procedure provision and the | 16:08:13 |
| 17 | arbitration provision in here.  Remember those | 16:08:17 |
| 18 | questions? | 16:08:20 |
| 19 | A.   Yes. | 16:08:20 |
| 20 | Q.   Okay.  When a Filipino seaman applies to a | 16:08:20 |
| 21 | manning agency to come to work for NCL, can he ask to | 16:08:28 |
| 22 | see a copy of the contracts or documents that he's | 16:08:34 |
| 23 | going to be asked to sign if he decides to proceed | 16:08:38 |
| 24 | with the job before he gets the job? | 16:08:40 |
| 25 |       MR. HUGGETT:  Objection to the form. | 16:08:42 |

1  BY MR. MASE:

2      Q.    Is there anything to prevent him from        16:08:44

3  asking that question?                                   16:08:45

4          MR. HUGGETT:   Object to the form.              16:08:46

5          THE WITNESS:   No.                              16:08:46

6  BY MR. MASE:

7      Q.    If a Filipino seaman applicant asks for a     16:08:48

8  set of those documents, and said I want to have these   16:08:53

9  reviewed by my lawyer before I decide whether I'm       16:08:57

10 going to apply, just hypothetically speaking, would     16:09:00

11 that impact NCL's decision to hire him, based upon      16:09:01

12 what you know as the human resources director?          16:09:04

13         MR. HUGGETT:   Object to the form.              16:09:06

14         THE WITNESS:   Hypothetically, no,              16:09:07

15     absolutely not.   We --                             16:09:09

16 BY MR. MASE:

17     Q.    I mean would -- would you refuse to hire      16:09:09

18 somebody just because they wanted to have the lawyer    16:09:12

19 looks at the documents?                                 16:09:14

20         THE WITNESS:   No.                              16:09:15

21         MR. HUGGETT:   Object to the form.              16:09:15

22 BY MR. MASE:

23     Q.    Okay.   And if a Filipino read the           16:09:16

24 documents, or had his lawyer read them, and decided,   16:09:17

25 you know, I don't want to be bound by these, or I      16:09:18

1  don't like these terms, would he or she be free not                16:09:22
2  to take employment?                                                16:09:26
3          MR. HUGGETT:  Object to the form.                          16:09:27
4          THE WITNESS:  Yes.
5  BY MR. MASE:
6      Q.   Would that be true even after they had                    16:09:27
7  signed the documents, if they came back to you                     16:09:29
8  afterwards and said, you know, I looked at this and                16:09:31
9  I'm not comfortable, I think I don't want to take                  16:09:33
10 this?
11         MR. HUGGETT:  Object to the form.                           16:09:34
12         THE WITNESS:  Yes, documents can be                         16:09:35
13     withdrawn from the POEA after the day they're                   16:09:37
14     departing.                                                      16:09:39
15 BY MR. MASE:
16     Q.   Okay.  Mr. Huggett asked you some questions                16:09:42
17 about -- I'm not entirely sure why he asked, but he                 16:09:47
18 asked you some questions about NCL's -- I guess I'll               16:09:47
19 call it enforcing of the POEA in court, why NCL had                 16:09:55
20 done this, why had it done that.  He rattled off a                  16:09:55
21 number of cases to you.  Remember that yesterday?                   16:09:59
22     A.   Yes.                                                       16:10:00
23     Q.   Are you aware that Amon, A-M-O-N, versus                   16:10:01
24 NCL case, NCL within the last year or so successfully              16:10:04
25 enforced the POEA with Judge Paul Huck entering an                  16:10:08

277

| | | |
|---|---|---|
| 1 | order to that effect? | 16:10:12 |
| 2 | MR. HUGGETT:  Object to the form. | 16:10:13 |
| 3 | THE WITNESS:  I don't have any -- any | 16:10:13 |
| 4 | personal knowledge of it, but I've -- I'm aware | 16:10:16 |
| 5 | of it, yes. | 16:10:18 |
| 6 | BY MR. MASE: | |
| 7 | Q.   Okay.  Do you have any idea whether or not | 16:10:18 |
| 8 | law in the Florida state courts on POEA is any | 16:10:25 |
| 9 | different in the federal courts; do you know that? | 16:10:28 |
| 10 | A.   I have -- | 16:10:30 |
| 11 | MR. HUGGETT:  Object to the form. | 16:10:31 |
| 12 | THE WITNESS:  I have no idea. | 16:10:32 |
| 13 | BY MR. MASE: | |
| 14 | Q.   So then you wouldn't know whether or not | 16:10:33 |
| 15 | that has any bearing on why NCL may or may not have | 16:10:34 |
| 16 | been seeking enforcement? | 16:10:37 |
| 17 | MR. HUGGETT:  Object to the form. | 16:10:39 |
| 18 | THE WITNESS:  I have no idea. | 16:10:39 |
| 19 | BY MR. MASE: | |
| 20 | Q.   Similarly I assume you don't know anything | 16:10:40 |
| 21 | about current legal trends in federal courts? | 16:10:43 |
| 22 | A.   No, I don't. | 16:10:46 |
| 23 | MR. HUGGETT:  Object to the form. | 16:10:47 |
| 24 | BY MR. MASE: | |
| 25 | Q.   Or why NCL might or might not be enforcing | 16:10:47 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1  in federal court?                                    16:10:49

 2          MR. HUGGETT:  Object to the form.             16:10:51

 3          THE WITNESS:  No, I don't.

 4  BY MR. MASE:

 5      Q.  Does NCL have any representatives, members,  16:10:52

 6  any representation at all in the POEA today?          16:10:56

 7      A.  No, we don't.                                 16:10:58

 8      Q.  Anybody on its Board or anything like that?   16:11:01

 9          THE COURT REPORTER:  I'm sorry?               16:11:03

10          MR. HUGGETT:  Object to the form.             16:11:04

11          MR. MASE:  Anybody on its Board or anything

12      like that?                                        16:11:04

13          THE WITNESS:  No.                             16:11:04

14  BY MR. MASE:

15      Q.  Does NCL pay any money to the POEA            16:11:04

16  directly?                                             16:11:07

17      A.  No.                                           16:11:09

18      Q.  Does it get any money from the POEA, like    16:11:09

19  every time it hires a crew member?                    16:11:11

20      A.  No.                                           16:11:13

21      Q.  Does NCL even participate at all in what     16:11:14

22  the POEA does?                                        16:11:17

23          MR. HUGGETT:  Object to the form.

24          THE WITNESS:  Not at all.                     16:11:18

25  BY MR. MASE:
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

1    Q.   If NCL doesn't like something the POEA        16:11:19

2  does, does it have a way to tell them?               16:11:23

3        MR. HUGGETT:  Object to the form.              16:11:25

4        THE WITNESS:  No.                              16:11:32

5        MR. HUGGETT:  Object to the form.              16:11:33

6        THE WITNESS:  It's a government commission.    16:11:34

7     We don't have any -- any input in their           16:11:36

8     business.                                         16:11:42

9  BY MR. MASE:

10   Q.   If you don't want to use the POEA contract,   16:11:42

11 with a Filipino seaman, are you free to change the   16:11:45

12 terms?                                               16:11:49

13   A.   No.                                           16:11:49

14   Q.   In contracts with non-Filipino seamen,        16:11:50

15 NCL's standard contract of employment, does it       16:11:54

16 specifically state in the contract that the seamen   16:11:56

17 are members of the union?                            16:12:00

18       MR. HUGGETT:  Object to the form.              16:12:01

19       THE WITNESS:  I would have to see the          16:12:04

20    contract to answer that question.                 16:12:06

21 BY MR. MASE:

22   Q.   Okay.  Do you remember whether or not in      16:12:08

23 the standard contract of employment for non-Filipino 16:12:11

24 seamen there's reference to the seamen being members 16:12:13

25 of the Norwegian Seaman's Union?                     16:12:17

```
 1              MR. HUGGETT:  Objection to form.          16:12:19
 2              THE WITNESS:  Again, I would have to see   16:12:20
 3         the contract.                                  16:12:23
 4    BY MR. MASE:
 5         Q.   Okay.  The agreement to arbitrate is      16:12:39
 6    contained within the terms and conditions which are 16:12:41
 7    part of the contract per the POEA, correct?         16:12:45
 8              MR. HUGGETT:  Object to the form.          16:12:47
 9              THE WITNESS:  Yes.                         16:12:47
10    BY MR. MASE:
11         Q.   And that's something that the POEA         16:12:49
12    requires?                                           16:12:52
13              MR. HUGGETT:  Object to the form.          16:12:53
14              THE WITNESS:  Yes.                         16:12:53
15    BY MR. MASE:
16         Q.   And the seamen are required to sign the    16:12:55
17    contract with the terms of employment at the time   16:12:58
18    they take employment, right?                        16:13:01
19              MR. HUGGETT:  Object to the form.          16:13:02
20              THE WITNESS:  If they want to work         16:13:02
21         overseas, yes.                                 16:13:05
22    BY MR. MASE:
23         Q.   And they're free, of course, not to work  16:13:06
24    overseas, right?
25         A.   Of course.                                16:13:09
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | | |
|---|---|---|
| 1 | Q.   Stay in their home country and do whatever | 16:13:10 |
| 2 | else they may want to do. | 16:13:13 |
| 3 | A.   Yes. | 16:13:21 |
| 4 | Q.   Does NCL force any of the Filipino workers | 16:14:10 |
| 5 | -- | |
| 6 | THE COURT REPORTER:  I'm sorry. | |
| 7 | MR. MASE:  I'm sorry. | |
| 8 | BY MR. MASE: | |
| 9 | Q.   Does NCL force any of the Filipino seamen | 16:14:14 |
| 10 | who come to work on its ships to take employment with | 16:14:16 |
| 11 | them? | 16:14:19 |
| 12 | MR. HUGGETT:  Objection to the form. | 16:14:19 |
| 13 | THE WITNESS:  No. | 16:14:20 |
| 14 | BY MR. MASE: | |
| 15 | Q.   Are all the Filipinos who work for NCL | 16:14:21 |
| 16 | voluntarily employed of their own choosing? | 16:14:25 |
| 17 | MR. HUGGETT:  Object to the form. | 16:14:27 |
| 18 | THE WITNESS:  I would certainly hope so and | 16:14:27 |
| 19 | think so. | 16:14:30 |
| 20 | MR. MASE:  Okay. | |
| 21 | THE WITNESS:  I haven't heard of anybody | 16:14:30 |
| 22 | else. | |
| 23 | BY MR. MASE: | |
| 24 | Q.   Can they quit if they don't like it? | 16:14:32 |
| 25 | A.   Yes, they can. | 16:14:34 |

```
 1            MR. HUGGETT:  Objection to form.
 2    BY MR. MASE:
 3        Q.   Can they quit if they don't like the        16:14:36
 4    arbitration laws?                                     16:14:38
 5        A.   Yes.                                         16:14:38
 6        Q.   Can they quit if they don't like what the   16:14:39
 7    POEA benefits limit them to or provide them with?     16:14:44
 8        A.   Yes.                                         16:14:47
 9            MR. HUGGETT:  Object to the form.             16:14:47
10            MR. MASE:  I'm just going to quickly skim     16:15:19
11        through some notes I've got and see if there's    16:15:22
12        anything else here.  Just bear with me,           16:15:26
13        Mr. Hjartnes.  I'm sorry.                         16:15:28
14    BY MR. MASE:
15        Q.   How long has the POEA been around, as far    16:16:08
16    as you know?                                          16:16:11
17            MR. HUGGETT:  Object to the form.             16:16:12
18            THE WITNESS:  POEA?                           16:16:12
19    BY MR. MASE:
20        Q.   Uh-huh.                                      16:16:13
21        A.   I think I probably testified since 19 --     16:16:14
22    1982 or 1984.  I can't remember exactly.              16:16:20
23        Q.   Were there some changes made -- strike       16:16:25
24    that.                                                 16:16:35
25            MR. MASE:  Thank you, Mr. Hjartnes.  That's   16:16:36
```

| | | |
|---|---|---|
| 1 | all I have. | 16:16:37 |
| 2 | REDIRECT EXAMINATION | |
| 3 | BY MR. HUGGETT: | |
| 4 | Q.   Mr. Hjartnes, you were just asked a series | 16:16:40 |
| 5 | of questions about the options of the seamen to quit. | 16:16:44 |
| 6 | Remember those? | 16:16:51 |
| 7 | A.   Yes. | 16:16:52 |
| 8 | Q.   What you're saying is, insofar as | 16:16:56 |
| 9 | employment with NCL for a Filipino, it's take it or | 16:17:00 |
| 10 | leave it, the whole package, isn't it? | 16:17:04 |
| 11 | A.   In accordance with Filipino law, yes. | 16:17:08 |
| 12 | Q.   He has no negotiation ability as to one | 16:17:11 |
| 13 | period or one iota of his -- any of the contracts at | 16:17:15 |
| 14 | all, does he? | 16:17:22 |
| 15 | A.   As per Filipino law. | 16:17:23 |
| 16 | Q.   The answer "yes"? | 16:17:25 |
| 17 | A.   Yes. | 16:17:25 |
| 18 | Q.   He either accepts or rejects? | 16:17:29 |
| 19 | A.   Yes. | 16:17:31 |
| 20 | Q.   And if he rejects, he goes back to the back | 16:17:32 |
| 21 | of the line at the manning agency, doesn't he? | 16:17:35 |
| 22 | MR. HUGGETT:  Objection, form. | 16:17:37 |
| 23 | THE WITNESS:  I have no idea. | 16:17:39 |
| 24 | BY MR. MASE: | |
| 25 | Q.   You know all the other things, but you | 16:17:40 |

| | | |
|---|---|---|
| 1 | don't know that one, right, about the POEA? | 16:17:42 |
| 2 | A.   Are you asking about the manning agent or | 16:17:44 |
| 3 | POEA? | 16:17:47 |
| 4 | MR. MASE:   There's no question pending. | 16:17:47 |
| 5 | There's just a statement by Mr. Huggett. | 16:17:49 |
| 6 | BY MR. HUGGETT: | |
| 7 | Q.   Did you make the statement that NCL doesn't | 16:17:51 |
| 8 | or don't have any input in the business of the POEA? | 16:18:00 |
| 9 | A.   That's correct. | 16:18:00 |
| 10 | Q.   And they don't have any input in the | 16:18:00 |
| 11 | business of technical -- Tripartite Technical Working | 16:18:03 |
| 12 | Group? | 16:18:08 |
| 13 | A.   That's correct. | 16:18:08 |
| 14 | Q.   Let me ask you if Mr. Del Rosario, the | 16:18:09 |
| 15 | attorney for NCL that's filed an affidavit, and who | 16:18:14 |
| 16 | represents the insurance companies, stated under oath | 16:18:18 |
| 17 | that the Tripartite Technical Working Group, | 16:18:22 |
| 18 | consisting of groups from three factors, namely, | 16:18:27 |
| 19 | POEA -- and the government, the group of manning | 16:18:32 |
| 20 | agencies representing the employers, and et cetera, | 16:18:35 |
| 21 | to insure the right and interests of both shipowners | 16:18:41 |
| 22 | and seafarers are protected.   Is he right or wrong? | 16:18:44 |
| 23 | A.   I can't testify to his -- | 16:18:49 |
| 24 | Q.   But according to you? | 16:18:51 |
| 25 | A.   -- opinion. | |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

| | |
|---|---|
| 1 | MR. MASE:  Wait, wait, wait.  Let him | 16:18:53 |
| 2 | finish his -- | 16:18:56 |
| 3 | MR. HUGGETT:  Are you done? | 16:18:56 |
| 4 | MR. MASE:  -- answer, Mr. Huggett. | 16:18:57 |
| 5 | THE WITNESS:  No, I was not done. | 16:18:57 |
| 6 | MR. HUGGETT:  Finish. | |
| 7 | THE WITNESS:  I can't testify to his | 16:18:58 |
| 8 | opinion on things. | 16:18:59 |
| 9 | BY MR. HUGGETT: | |
| 10 | Q.   Okay.  He is a Filipino lawyer, right? | 16:19:00 |
| 11 | A.   Yes. | 16:19:03 |
| 12 | Q.   He is there and saying that he's a member | 16:19:03 |
| 13 | of that group, right? | 16:19:06 |
| 14 | A.   I don't know what he's saying. | 16:19:07 |
| 15 | Q.   Well, if he says -- will you accept my | 16:19:10 |
| 16 | statement that he says he's a member of that group? | 16:19:12 |
| 17 | A.   Yes. | 16:19:14 |
| 18 | Q.   Okay.  And if he says that he's a member of | 16:19:15 |
| 19 | that group, and the manning agencies who represented | 16:19:18 |
| 20 | the employers, which includes the shipowners, then | 16:19:21 |
| 21 | that's contrary to what you testified, correct? | 16:19:25 |
| 22 | A.   Yes. | 16:19:27 |
| 23 | Q.   And he would be, to your knowledge, dead | 16:19:31 |
| 24 | wrong? | |
| 25 | MR. MASE:  Objection to the form of the | 16:19:35 |

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

```
 1      question.                                      16:19:36
 2           THE WITNESS:  I can't speak to his --     16:19:36
 3   BY MR. HUGGETT:
 4      Q.   The statement of his --
 5      A.   -- testimony.                             16:19:39
 6      Q.   -- that I'm asking -- you can read it, if 16:19:39
 7   you want --                                       16:19:42
 8      A.   Yeah.
 9      Q.   -- that the manning agencies who represent 16:19:43
10   the employers, meaning shipowners in the Tripartite 16:19:45
11   Technical Working Group is in error according to you? 16:19:49
12           MR. MASE:  Objection to the form of the   16:19:52
13      question.                                      16:19:53
14           THE WITNESS:  I didn't say that.          16:19:53
15           MR. MASE:  Misrepresenting --             16:19:54
16   BY MR. HUGGETT:
17      Q.   Is it true?                               16:19:55
18           MR. MASE:  Misrepresenting prior testimony, 16:19:56
19      and I object.                                  16:20:00
20   BY MR. HUGGETT:
21      Q.   Is that statement true?                   16:20:02
22      A.   I don't know.                             16:20:03
23      Q.   Okay.  But according to you, you are not  16:20:04
24   represented in any way on the -- NCL, on the      16:20:07
25   Tripartite Technical Working Group.               16:20:11
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

| | | |
|---|---|---|
| 1 | A.    That's correct. | 16:20:12 |
| 2 | Q.    And NCL, as a ship owner, has no one | 16:20:15 |
| 3 | representing them on the Tripartite Technical Working | 16:20:19 |
| 4 | Group? | 16:20:22 |
| 5 | A.    That's correct. | 16:20:22 |
| 6 | Q.    So when he says that the technical | 16:20:24 |
| 7 | Tripartite is represented by the manning -- the | 16:20:27 |
| 8 | employers and shipowners represented by the manning | 16:20:31 |
| 9 | agencies, that's not your understanding? | 16:20:34 |
| 10 | A.    My understanding is that NCL is not | 16:20:37 |
| 11 | represented on the Tripartite Working Group. | 16:20:40 |
| 12 | Q.    Now, Mr. Mase asked you a number of | 16:21:00 |
| 13 | questions about the POEA process of who gets what | 16:21:03 |
| 14 | documents.  You have no personal knowledge or | 16:21:06 |
| 15 | evidence of what these ten seamen got or didn't get | 16:21:09 |
| 16 | other than seeing the papers we have in front of us, | 16:21:13 |
| 17 | do you? | 16:21:15 |
| 18 | A.    That's correct. | 16:21:17 |
| 19 | MR. MASE:  Objection to form. | 16:21:17 |
| 20 | THE WITNESS:  That's correct. | 16:21:22 |
| 21 | BY MR. HUGGETT: | |
| 22 | Q.    And regardless of whether they're watchmen | 16:21:27 |
| 23 | or how many stripes they have, you still only have | 16:21:32 |
| 24 | one Filipino that's considered a first officer and | 16:21:35 |
| 25 | above in the entire fleet, correct? | 16:21:46 |

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

Case 1:03-cv-21642-PAS   Document 77   Entered on FLSD Docket 09/23/2003   Page 154 of 182

288

```
 1        A.   Yes.   These are all licensed positions that   16:21:49
 2    require certain licenses.                               16:21:57
 3             THE COURT REPORTER:   They're all?
 4             THE WITNESS:   They're all licensed
 5        positions that require certain licenses.
 6    BY MR. HUGGETT:
 7        Q.   Now, this NCL America, there is no cruise      16:22:00
 8    ship owned by NCL or NCL America that flies an          16:22:07
 9    America flag at this time, is there?                    16:22:11
10        A.   I don't know if they're flying the flag yet   16:22:13
11    or not.   It's being built in Germany as we speak.      16:22:15
12        Q.   It's not in existence and working now, is      16:22:18
13    it?                                                     16:22:21
14        A.   No.   It's not operating now.                  16:22:22
15        Q.   Okay.                                          16:22:24
16             MR. MASE:   It's in existence, Mr. Huggett.    16:22:24
17             MR. HUGGETT:   Kind of like Galliano's was     16:22:27
18        in existence.                                       16:22:30
19    BY MR. HUGGETT:
20        Q.   And all of those line of questions about       16:22:36
21    NCL are plans for the future; is that correct?          16:22:39
22        A.   Well, some are plans.   They're developing     16:22:46
23    plans.                                                  16:22:51
24        Q.   Developing, okay.                              16:22:52
25        A.   Now, some of it is in existence already.       16:22:53
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

| | |
|---|---|
| 1 | The NCL America is an incorporated -- | 16:22:56 |
| 2 | Q.    The corporation exists, but the operations | 16:22:57 |
| 3 | of running a ship with any Americans don't exist yet, | 16:23:01 |
| 4 | flying an American flag? | 16:23:08 |
| 5 | A.    That's correct. | 16:23:09 |
| 6 | Q.    Okay.  Now, you testified for Mr. Mase that | 16:23:11 |
| 7 | the POEA had negotiated the -- I think your terms | 16:23:28 |
| 8 | were the best possible terms for the Filipinos; is | 16:23:32 |
| 9 | that what you said? | 16:23:35 |
| 10 | A.    I don't recall exactly what I said. | 16:23:38 |
| 11 | Q.    Words to that effect.  Do you remember | 16:23:40 |
| 12 | those questions? | 16:23:43 |
| 13 | A.    Yes, one -- that's there -- they're in | 16:23:43 |
| 14 | their charter, they try to protect the Filipino | 16:23:46 |
| 15 | overseas workers to guarantee them their human | 16:23:49 |
| 16 | rights, their -- the equal opportunity to work and to | 16:23:54 |
| 17 | negotiate the best terms and conditions for them. | 16:23:58 |
| 18 | Q.    Do you think that the NCL needs the POEA to | 16:24:01 |
| 19 | guarantee the equal rights of Filipinos or do you do | 16:24:05 |
| 20 | that automatically? | 16:24:09 |
| 21 | A.    No.  And they were certainly not created | 16:24:10 |
| 22 | for NCL employees. | 16:24:13 |
| 23 | Q.    But what is the effect is that if all of | 16:24:14 |
| 24 | these seamen have to bring their injury claims in | 16:24:17 |
| 25 | front of the POEA, they'll be losing millions of | 16:24:20 |

| | | |
|---|---|---|
| 1 | dollars, won't they | 16:24:24 |
| 2 | A.   I don't know they. | 16:24:24 |
| 3 | MR. MASE:  Objection. | 16:24:24 |
| 4 | BY MR. HUGGETT: | |
| 5 | Q.   And that's what the POEA, in the words of | 16:24:27 |
| 6 | Mr. Del Rosario, has negotiated with the manning | 16:24:30 |
| 7 | agencies representing the employers, correct? | 16:24:36 |
| 8 | A.   Is there a question? | 16:24:43 |
| 9 | Q.   Yeah. | 16:24:44 |
| 10 | A.   I -- I don't agree with his statement. | 16:24:45 |
| 11 | Q.   Okay. | |
| 12 | A.   He has to answer for his statement. | 16:24:48 |
| 13 | Q.   Okay. | |
| 14 | A.   And I'll answer for mine. | 16:24:51 |
| 15 | Q.   Okay.  And as -- as to the Filipino union | 16:24:52 |
| 16 | AMOSUP, you still have no knowledge or no evidence | 16:25:28 |
| 17 | that any of these seamen had ever even heard of it? | 16:25:33 |
| 18 | A.   Do I have it physically, no.  I can | 16:25:38 |
| 19 | certainly get it. | 16:25:41 |
| 20 | Q.   That these ten seamen involved here knew | 16:25:43 |
| 21 | about it and heard of AMOSUP? | 16:25:46 |
| 22 | A.   I'm speaking for the deck and engine room. | 16:25:49 |
| 23 | THE COURT REPORTER:  I'm sorry. | |
| 24 | THE WITNESS:  I'm speaking for the five | 16:25:50 |
| 25 | deck and engine people. | 16:25:51 |

```
 1   BY MR. HUGGETT:
 2        Q.   You have none, and in the two days today      16:25:53
 3   that you've been here.                                  16:25:57
 4        A.   No.                                            16:25:58
 5             MR. HUGGETT:  Okay.  Thank you.                16:26:00
 6             Another round or you going to quit?            16:26:05
 7             MR. MASE:  I'll ask one more series of         16:26:12
 8        questions just for fun.                             16:26:15
 9                  RECROSS-EXAMINATION
10   BY MR. MASE:
11        Q.   Does NCL America exist today?                  16:26:18
12        A.   Yes.                                           16:26:20
13        Q.   Who's the managing director?                  16:26:21
14             THE COURT REPORTER:  Who is?
15             MR. MASE:  The managing director.
16             THE WITNESS:  To my knowledge, it's Robert     16:26:25
17        Kritzman.
18   BY MR. MASE:
19        Q.   Where is it based?                             16:26:28
20        A.   Honolulu.                                      16:26:29
21        Q.   Is NCL America currently building ships        16:26:32
22   that will be flagged with American flags?               16:26:35
23        A.   They're building one, and we're going to      16:26:37
24   reflag one next year.                                   16:26:41
25        Q.   And then there are plans for two more after   16:26:41
```

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

```
 1   that?                                                    16:26:44

 2        A.   That's my understanding, yes.                  16:26:45

 3        Q.   So when we talk about that being something     16:26:47

 4   in the future, it's really something that's in the       16:26:50

 5   process now, correct?                                    16:26:52

 6        A.   Yes.                                            16:26:53

 7        Q.   Does NCL America currently employ other        16:26:53

 8   American workers?                                         16:26:57

 9        A.   Yes.                                            16:26:57

10             MR. HUGGETT:  On land or sea?                   16:26:58

11             MR. MASE:  Currently on land.                  16:26:59

12             THE WITNESS:  Both, actually.                  16:27:01

13   BY MR. MASE:

14        Q.   And is NCL currently in the process of         16:27:02

15   hiring American crew members to sail on its vessels      16:27:05

16   in early 2004?                                           16:27:08

17        A.   We actually already have at least four         16:27:10

18   officers sailing in our Bahamas fleet.                   16:27:20

19        Q.   And they're American?                          16:27:23

20        A.   Yes.                                            16:27:24

21        Q.   And they're being trained to sail on the       16:27:25

22   America-flagged vessels?                                 16:27:31

23        A.   That's correct.

24             MR. MASE:  That's all I have.                   16:27:32

25             MR. HUGGETT:  More business.                    16:27:32
```

KLEIN, BURY, REIF & APPLEBAUM   (305) 373-8404

| | | |
|---|---|---|
| 1 | THE WITNESS:  We had a Staff Captain join | 16:27:33 |
| 2 | the NORWEGIAN DAWN on -- | |
| 3 | THE COURT REPORTER:  The NORWEGIAN? | |
| 4 | MR. MASE:  DAWN. | |
| 5 | THE WITNESS:  DAWN. | |
| 6 | MR. HUGGETT:  Okay. | |
| 7 | THE WITNESS:  D-A-W-N. | 16:27:42 |
| 8 | MR. HUGGETT:  Enough. | |
| 9 | MR. MASE:  I agree.  I think it's enough. | |
| 10 | MR. HUGGETT:  Now, make sure you have all | |
| 11 | these attached, okay. | |
| 12 | THE VIDEOGRAPHER:  We'll go off the video | 16:27:49 |
| 13 | record. | 16:27:52 |
| 14 | MR. HUGGETT:  Yeah. | |
| 15 | THE VIDEOGRAPHER:  Standby.  One moment. | 16:28:00 |
| 16 | (Thereupon, the deposition was concluded at | |
| 17 | 4:28 p.m.) | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

1

2

3

4

5

6

7

8                                         _____
                                                WITNESS

9

10        SWORN TO AND SUBSCRIBED BEFORE ME THIS _____
          DAY OF _____, 2003.

11

12

13                          Notary Public-State of Florida
                            My Commission No.
14                          Expires:

15

16

17

18

19

20

21

22

23

24

25

295

1                    CERTIFICATE OF OATH

2

3

4

5   STATE OF FLORIDA)

6                 : SS

7   COUNTY  OF  DADE)

8

9            I, the undersigned authority, certify

10  that KJELL HJARTNES personally appeared before me and

11  was duly sworn.

12

13           WITNESS my hand and official seal this

14  __13th__ day of ____September____, 2003.

15

16

17                    _____

18                    Jan E. Reyna
                       Notary Public-State of Florida
19                    My Commission No. DD185951
                       Expires:  May 29, 2007

20

21

22

23

24

25

1      REPORTER'S DEPOSITION CERTIFICATE

2

3

4   STATE OF FLORIDA)

5                 : SS

6   COUNTY  OF  DADE)

7

8        I, JAN E. REYNA, a Registered Professional

9   Reporter, certify that I was authorized to and did

10  stenographically report the deposition of

11  KJELL HJARTNES; and that the transcript is a true

12  record of my stenographic notes.

13

14       I further certify that I am not a relative,

15  employee, attorney, or counsel of any of the

16  parties', nor am I a relative or employee of any of

17  the parties' attorney or counsel connected with the

18  action, nor am I financially interested in the

19  action.

20

21       Dated this _____ day of

22  _____, 2003.

23

24       _____
                 Jan E. Reyna
                 Registered Professional Reporter

KLEIN, BURY, REIF & APPLEBAUM  (305) 373-8404

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RIZALYN BAUTISTA, etc., et al.        CASE NO.: 03-21642-CIV-SEITZ/BANDSTRA
PAUL PERALTA,                         CASE NO.: 03-21643-CIV-SEITZ/BANDSTRA
RAYMOND LOVINO,                       CASE NO.: 03-21644-CIV-SEITZ/BANDSTRA
RONALDO MARCELINO,                    CASE NO.: 03-21645-CIV-SEITZ/BANDSTRA
ROLANDO TEJERO,                       CASE NO.: 03-21646-CIV-SEITZ/BANDSTRA
ABDI COMEDIA,                         CASE NO.: 03-21647-CIV-SEITZ/BANDSTRA
CRISTINA L. VALENZUELA, etc., et al.  CASE NO.: 03-21648-CIV-SEITZ/BANDSTRA
MARILEN S. BERNAL, etc., et al.       CASE NO.: 03-21649-CIV-SEITZ/BANDSTRA
WILLY I. VILLANUEVA, etc., et al.     CASE NO.: 03-21650-CIV-SEITZ/BANDSTRA
MARIA GRACIA L. ROSAL, etc., et al.   CASE NO.: 03-21651-CIV-SEITZ/BANDSTRA

                    Plaintiffs,

v.

NORWEGIAN CRUISE LINE, LTD.
and STAR CRUISES,

                    Defendants.
_____/

## PLAINTIFF'S RE-NOTICE OF RULE 30(b)(6) VIDEO-DEPOSITION

Plaintiffs in the above-captioned matter request Defendant Norwegian Cruise Line, Ltd. to

designate a representative(s) to testify with respect to the matters specified below, pursuant to Fed.

R. Civ. P. 30(b)(6). Defendant Norwegian Cruise Line, Ltd. is specifically notified, pursuant to Fed.

R. Civ. P. 30(b)(6), of its duty and obligation to make the requested designation of the

representative(s) to testify on said Defendant's behalf.

        DATE:         Thursday, September 11, 2003.

        TIME:         09:30 a.m.

        LOCATION:     Kozyak Tropin & Throckmorton, P.A.
                      Wachovia Financial Center, Suite 2300
                      200 South Biscayne Boulevard
                      Miami, Florida 33131



Bautista vs NCL
EXHIBIT 2
Deponent K. Hjartnes
Date 9-12-03 Rptr. JR
WWW.DEPOBOOK.COM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| RIZALYN BAUTISTA, etc., et al. | CASE NO.: 03-21642-CIV-SEITZ/BANDSTRA |
| PAUL PERALTA, | CASE NO.: 03-21643-CIV-SEITZ/BANDSTRA |
| RAYMOND LOVINO, | CASE NO.: 03-21644-CIV-SEITZ/BANDSTRA |
| RONALDO MARCELINO, | CASE NO.: 03-21645-CIV-SEITZ/BANDSTRA |
| ROLANDO TEJERO, | CASE NO.: 03-21646-CIV-SEITZ/BANDSTRA |
| ABDI COMEDIA, | CASE NO.: 03-21647-CIV-SEITZ/BANDSTRA |
| CRISTINA L. VALENZUELA, etc., et al. | CASE NO.: 03-21648-CIV-SEITZ/BANDSTRA |
| MARILEN S. BERNAL, etc., et al. | CASE NO.: 03-21649-CIV-SEITZ/BANDSTRA |
| WILLY I. VILLANUEVA, etc., et al. | CASE NO.: 03-21650-CIV-SEITZ/BANDSTRA |
| MARIA GRACIA L. ROSAL, etc., et al. | CASE NO.: 03-21651-CIV-SEITZ/BANDSTRA |

Plaintiffs,

v.

NORWEGIAN CRUISE LINE, LTD.
and STAR CRUISES,

Defendants.
_____/

## PLAINTIFF'S RE-NOTICE OF RULE 30(b)(6) VIDEO-DEPOSITION

Plaintiffs in the above-captioned matter request Defendant Norwegian Cruise Line, Ltd. to

designate a representative(s) to testify with respect to the matters specified below, pursuant to Fed.

R. Civ. P. 30(b)(6). Defendant Norwegian Cruise Line, Ltd. is specifically notified, pursuant to Fed.

R. Civ. P. 30(b)(6), of its duty and obligation to make the requested designation of the

representative(s) to testify on said Defendant's behalf.

DATE:        Thursday, September 11, 2003.

TIME:        09:30 a.m.

LOCATION:    Kozyak Tropin & Throckmorton, P.A.
             Wachovia Financial Center, Suite 2300
             200 South Biscayne Boulevard
             Miami, Florida 33131

Plaintiffs will examine the designated representative(s) with most knowledge regarding the following matters presently placed in issue by Defendant's removal of these actions to federal court and by Defendant's motions to compel arbitration filed in each case:

1.  As to each injured or deceased seaman whose claims are brought by Plaintiffs herein ("the subject seamen"):

    (a)  the dates and locations the agreement to arbitrate upon which Defendant relies was negotiated; and

    (b) the participants in the negotiations.

2.  The unions of which Defendants contend the subject seamen were members, including the dates the seamen joined the unions and any documents they signed reflecting their intent to join a union.

3.  The Tripartite Working Group Defendant contends prepared the document containing the agreement to arbitrate upon which Defendants relied in removing these cases to federal court and moving to compel arbitration.

4.  The persons or entities who represented Defendant Norwegian Cruise Lines or its interests either in the Tripartite Working Group or in drafting the document containing the agreement to arbitrate upon which Defendants relied in removing these cases to federal court and moving to compel arbitration.

5.  Whether any individual Philippine seafarer has ever been allowed to negotiate the terms of his contract of employment with Defendant Norwegian Cruise Lines, whether directly or through its manning agencies;

6.  Whether any individual Philippine seafarer, including the subject seafarers, has ever been allowed to negotiate the agreement to arbitrate upon which Defendants relied in removing these cases to federal court and moving to compel arbitration.

7.  Whether any individual Philippine seafarer, including the subject seafarers, has ever been allowed to eliminate from his contract of employment the agreement to arbitrate upon which Defendants relied in removing these cases to federal court and moving to compel arbitration.

8.  The names and addresses of any union representatives the Defendants claim represented the subject seafarers in negotiating

the agreement to arbitrate that the Defendants presently seek to enforce against the subject seafarers.

9.    The names and addresses of any POEA representatives who participated in negotiating the agreements to arbitrate that the Defendants presently seek to enforce against the subject seafarers.

10.   The circumstances under which the subject seafarers entered into contracts of employment with the Defendant Norwegian Cruise Lines.

11.   The documents that were furnished to the subject seamen as their contracts of employment, and by whom, and when.

12.   The manning agencies used by, or acting for, Defendant Norwegian Cruise Lines in connection with discussing the amended terms and conditions governing the employment of Filipino seafarer as referenced in Memorandum Circular No. 9 filed by Defendants with their motions to compel arbitration.

13.   The procedures that were used by Defendant Norwegian Cruise Lines to comply with Paragraph 5 of Memorandum Circular No. 9 in connection with employing the subject seafarers, including the names, addresses and phone numbers of the persons who performed and complied with the procedures, and the dates, times, and locations the procedures were performed as to each seafarer.

Respectfully submitted,

William T. Huggett, Esquire
Jay Wingate, Esquire
THE HUGGETT LAW FIRM
66 W. Flagler Street, Suite 400
Miami, Florida 33130
Telephone: (305) 371-1321
Facsimile: (305) 539-0533
          -and-          -and-
Charles L. Lipcon, Esquire
LIPCON, MARGULIES & ALSINA
Two South Biscayne Boulevard
Suite 2480
Miami, Florida 33131
Telephone: (305) 373-3016
Facsimile: (305) 373-6204

Harley S. Tropin, Esquire
Janet Humphreys, Esquire
KOZYAK TROPIN & THROCKMORTON
200 South Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

Elizabeth K. Russo, Esquire
RUSSO APPELLATE FIRM, P.A.
6101 S.W. 76th Street
Miami, Florida 33143
Telephone: (305) 666-4660
Facsimile: (305) 666-4470

By

WILLIAM HUGGETT
Florida Bar No.: 094604

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's Re-Notice of Rule 30(b)(6) Deposition has been sent by facsimile and by U.S. mail on this /0th day of September, 2003, to Curtis J. Mase, Esq., and Rachel S. Cohen, Esq., Mase & Gassenheimer, P.A., Counsel for Defendants, 80 S.W. 8th Street, Suite 2700, Miami, FL 33131; Facsimile: (305) 377-0080.

By:_____
     WILLIAM HUGGETT
     Florida Bar No.: 094604

cc: Klein Bury & Associates, Court Reporters & Videographer

## FAXBACK PROGRAM SERVICE LIST

Attorneys for Plaintiff
William T. Huggett, Esquire
Jay Wingate, Esquire
The Huggett Law Firm
66 W. Flagler Street, Suite 400
Miami, Florida 33130
Telephone: 305/371-1821
Facsimile: 305/539-0533

Attorneys for Defendant
Curtis J. Mase, Esquire
Mase & Gassenheimer, P.A.
80 S.W. 8th Street, Suite 2700
Miami, Florida 33131
Telephone: 305/377-3770
Facsimile:  305/377-0080

-and-

Elizabeth K. Russo, Esquire
Russo Appellate Firm
6101 S.W. 76th Street
Miami, Florida 33143
Telephone (305) 666-4660
Facsimile (305) 666-4470

-and-

Harley S. Tropin, Esquire
Janet Humphreys, Esquire
Kozyak Tropin & Throckmorton
200 South Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

-and-

Charles L. Lipcon, Esquire
Lipcon, Margulies & Alsina
Two South Biscayne Boulevard
Suite 2480
Miami, Florida 33131
Telephone: (305) 373-3016
Facsimile: (305) 373-6204



WEBSITE

Baytista vs NCL
Δ(π)EXHIBIT 3
Deponent K. Hjartnes
Date 9-12-03 Rptr. JR
WWW.DEPOBOOK.COM

http://www.supremecourt.gov.ph/welcome_right.htm

9/10/2003





Page 1 of 2


Search this site or the web  powered by FreeFind

 Site search  Web search



| JANUARY | **2003** | MARCH |
| APRIL | FEBRUARY | JUNE |
| JULY | MAY | SEPTEMBER |
| OCTOBER | AUGUST | DECEMBER |
|  | NOVEMBER |  |

| **2000** | **2001** | **2002** |
| JANUARY | JANUARY | JANUARY |
| FEBRUARY | FEBRUARY | FEBRUARY |
| MARCH | MARCH | MARCH |
| APRIL | APRIL | APRIL |
| MAY | MAY | MAY |
| JUNE | JUNE | JUNE |
| JULY | JULY | JULY |
| AUGUST | AUGUST | AUGUST |
| SEPTEMBER | SEPTEMBER | SEPTEMBER |
| OCTOBER | OCTOBER | OCTOBER |
| NOVEMBER | NOVEMBER | NOVEMBER |
| DECEMBER | DECEMBER | DECEMBER |

| | **1999** | |
| JANUARY | FEBRUARY | MARCH |
| APRIL | MAY | JUNE |
| JULY | AUGUST | SEPTEMBER |
| OCTOBER | NOVEMBER | DECEMBER |

http://www.supremecourt.gov.ph/decisions.htm                9/10/2003

# THIRD DIVISION

## [G.R. No. 149578. April 10, 2003]

# EVELYN TOLOSA, *petitioner*, *vs.* NATIONAL LABOR RELATIONS COMMISSION, QWANA KAIUN (through its resident-agent, FUMIO NAKAGAWA), ASIA BULK TRANSPORT PHILS. INC., PEDRO GARATE and MARIO ASIS, *respondents*.

## D E C I S I O N

PANGANIBAN, *J.:*

As a rule, labor arbiters and the National Labor Relations Commission have no power or authority to grant reliefs from claims that do not arise from employer-employee relations. They have no jurisdiction over torts that have no reasonable causal connection to any of the claims provided for in the Labor Code, other labor statutes, or collective bargaining agreements.

### The Case

The Petition for Review before us assails the April 18, 2001 Decision[1] of the Court of Appeals (CA) in CA-GR SP No. 57660, as well as the April 17, 2001 CA Resolution[2] denying petitioner's Motion for Reconsideration. The dispositive portion of the challenged Decision, reads as follows:

"WHEREFORE, premises considered, the instant petition for certiorari is hereby DENIED and accordingly DISMISSED, without prejudice to the right of herein petitioner to file a suit before the proper court, if she so desires. No pronouncement as to costs."[3]

### The Facts

The appellate court narrated the facts of the case in this manner:

"Evelyn Tolosa (hereafter EVELYN), was the widow of Captain Virgilio Tolosa (hereafter CAPT. TOLOSA) who was hired by Qwana-Kaiun, through its manning agent, Asia Bulk Transport Phils. Inc., (ASIA BULK for brevity), to be the master of the Vessel named M/V Lady Dona. CAPT. TOLOSA had a monthly compensation of US$1700, plus US$400.00 monthly overtime allowance. His contract officially began on November 1, 1992, as supported by his contract of employment when he assumed command of the vessel in Yokohama, Japan. The vessel departed for Long Beach California, passing by Hawaii in the middle of the voyage. At the time of embarkation, CAPT. TOLOSA was allegedly shown to be in good health.

"During 'channeling activities' upon the vessel's departure from Yokohama sometime on November 6, 1992, CAPT. TOLOSA was drenched with rainwater. The following day,

November 7, 1992, he had a slight fever and in the succeeding twelve (12) days, his health rapidly deteriorated resulting in his death on November 18, 1992.

"According to Pedro Garate, Chief Mate of the Vessel, in his statement submitted to the U.S. Coast Guard on November 23, 1992 upon arrival in Long Beach, California CAPT. TOLOSA experienced high fever between November 11-15, 1992 and suffered from loose bowel movement (LBM) beginning November 9, 1992. By November 11, 1992, his temperature was 39.5 although his LBM had 'slightly' stopped. The next day, his temperature rose to 39.8 and had lost his appetite. In the evening of that day, November 13, 1992, he slipped in the toilet and suffered scratches at the back of his waist. First aid was applied and CAPT. TOLOSA was henceforth confined to his quarters with an able seaman to watch him 24 hours a day until November 15, 1992, when his conditioned worsened.

"On the same day, November 15, 1992, the Chief Engineer initiated the move and contacted ASIA BULK which left CAPT. TOLOSA's fate in the hands of Pedro Garate and Mario Asis, Second Mate of the same vessel who was in-charge of the primary medical care of its officers and crew. Contact with the U.S. Coast Guard in Honolulu, Hawaii (USCGHH) was likewise initiated to seek medical advice.

"On November 17, 1992, CAPT. TOLOSA was 'losing resistance' and his 'condition was getting serious.' At 2215 GMT, a telex was sent to ASIA BULK requesting for the immediate evacuation of CAPT. TOLOSA and thereafter an airlift was set on November 19, 1992. However, on November 18, 1992, at 0753 GMT, CAPT. TOLOSA was officially recorded as having breathed his last.

"Because of the death of CAPT. TOLOSA, his wife, EVELYN, as petitioner, filed a Complaint/Position Paper before the POEA (POEA Case No. 93-06-1080) against Qwana-Kaiun, thru its resident-agent, Mr. Fumio Nakagawa, ASIA BULK, Pedro Garate and Mario Asis, as respondents.

"After initial hearings and submissions of pleadings, the case was however transferred to the Department of Labor and Employment, National Labor Relations Commission (NLRC), when the amendatory legislation expanding its jurisdiction, and removing overseas employment related claims from the ambit of POEA jurisdiction. The case was then raffled to Labor Arbiter, Vladimir Sampang.

x          x          x                    x x x                           x          x

"After considering the pleadings and evidences, on July 8, 1997, the Labor Arbiter Vladimir P. L. Sampang, in conformity with petitioner's plea to hold respondents solidarily liable, granted all the damages, (plus legal interest), as prayed for by the petitioner. The dispositive portion of his Decision reads:

'WHEREFORE, premises considered, the respondents are hereby ordered to jointly and solidarily pay complainants the following:

1. US$176,400.00 (US$2,100.00 x 12 months x 7 years) or P4,586,400.00 (at P26.00 per US$1.00) by way of lost income;

2. interest at the legal rate of six percent (6%) per annum or P1,238,328.00 (from November 1992 to May 1997 or 4 ½ years);

3. moral damages of P200,000.00;

4. exemplary damages of P100,000.00; and

5. 10% of the total award, or P612,472.80, as attorney's fees.'

x          x          x                                                    x          x

x                                  x x x

"On appeal, private respondents raised before the National Labor Relations Commission (NLRC) the following grounds:

(a) the action before the Arbiter, as he himself concedes, is a complaint based on torts due to negligence. It is the regular courts of law which have jurisdiction over the action;

(b) Labor Arbiters have jurisdiction over claims for damages arising from employer-employee relationship (Art. 217, Section (a) (3));

(c) In this case, gross negligence is imputed to respondents Garate and Asis, who have no employer-employee relationship with the late Capt. Virgilio Tolosa;

(d) The labor arbiter has no jurisdiction over the controversy;

x     x       x       x               x x x                        x          x
x

"Despite other peripheral issues raised by the parties in their respective pleadings, the NLRC on September 10, 1998, vacated the appealed decision dated July 8, 1997 of the Labor Arbiter and dismissed petitioner's case for lack of jurisdiction over the subject matter of the action pursuant to the provisions of the Labor Code, as amended."[4] (Citations omitted)


## Ruling of the Court of Appeals


Sustaining the NLRC, the CA ruled that the labor commission had no jurisdiction over the subject matter of the action filed by petitioner. Her cause did not arise from an employer-employee relation, but from a quasi delict or tort. Further, there is no reasonable causal connection between her suit for damages and her claim under Article 217 (a)(4) of the Labor Code, which allows an award of damages incident to an employer-employee relation.

Hence, this Petition.[5]


## Issues


Petitioner raises the following issues for our consideration:

"I

"Whether or not the NLRC has jurisdiction over the case.

"II

"Whether or not Evelyn is entitled to the monetary awards granted by the labor arbiter."[6]

After reviewing petitioner's Memorandum, we find that we are specifically being asked to determine 1) whether the labor arbiter and the NLRC had jurisdiction over petitioner's action, and 2) whether the monetary award granted by the labor arbiter has already reached finality.

Tolosa vs NLRC : 149578 : April 10, 2003 : J. Panganiban : Third Division          Page 4 of 9

### The Court's Ruling

The Petition has no merit.

### First Issue:
### *Jurisdiction over the Action*

Petitioner argues that her cause of action is not predicated on a quasi delict or tort, but on the failure of private respondents – as employers of her husband (Captain Tolosa) – to provide him with timely, adequate and competent medical services under Article 161 of the Labor Code:

> "ART. 161. Assistance of employer. – It shall be the duty of any employer to provide all the necessary assistance to ensure the adequate and immediate medical and dental attendance and treatment to an injured or sick employee in case of emergency."

Likewise, she contends that Article 217 (a) (4)[7] of the Labor Code vests labor arbiters and the NLRC with jurisdiction to award all kinds of damages in cases arising from employer-employee relations.

Petitioner also alleges that the "reasonable causal connection" rule should be applied in her favor. Citing *San Miguel Corporation v. Etcuban*,[8] she insists that a reasonable causal connection between the claim asserted and the employer-employee relation confers jurisdiction upon labor tribunals. She adds that she has satisfied the required conditions: 1) the dispute arose from an employer-employee relation, considering that the claim was for damages based on the failure of private respondents to comply with their obligation under Article 161 of the Labor Code; and 2) the dispute can be resolved by reference to the Labor Code, because the material issue is whether private respondents complied with their legal obligation to provide timely, adequate and competent medical services to guarantee Captain Tolosa's occupational safety.[9]

We disagree. We affirm the CA's ruling that the NLRC and the labor arbiter had no jurisdiction over petitioner's claim for damages, because that ruling was based on a quasi delict or tort per Article 2176 of the Civil Code.[10]

Time and time again, we have held that the allegations in the complaint determine the nature of the action and, consequently, the jurisdiction of the courts.[11] After carefully examining the complaint/position paper of petitioner, we are convinced that the allegations therein are in the nature of an action based on a quasi delict or tort. It is evident that she sued Pedro Garate and Mario Asis for gross negligence.

Petitioner's complaint/position paper refers to and extensively discusses the negligent acts of shipmates Garate and Asis, who had no employer-employee relation with Captain Tolosa. Specifically, the paper alleges the following tortious acts:

> "x x x [R]espondent Asis was the medical officer of the Vessel, who failed to regularly monitor Capt. Tolosa's condition, and who needed the USCG to prod him to take the latter's

Received   08-10-03   04:48pm          From-305 688 4470          To-THE HUGGETT LAWFIRM   Page 12

vital signs. In fact, he failed to keep a medical record, like a patient's card or folder, of Capt. Tolosa's illness."[12]

"Respondents, however, failed Capt. Tolosa because Garate never initiated actions to save him. x x x In fact, Garate rarely checked personally on Capt. Tolosa's condition, to wit:"[13]

"x x x Noticeably, the History (Annex "D") fails to mention any instance when Garate consulted the other officers, much less Capt. Tolosa, regarding the possibility of deviation. To save Capt. Tolosa's life was surely a just cause for the change in course, which the other officers would have concurred in had they been consulted by respondent Garate – which he grossly neglected to do.

"Garate's poor judgement, since he was the officer effectively in command of the vessel, prevented him from undertaking these emergency measures, the neglect of which resulted in Capt. Tolosa's untimely demise."[14]

The labor arbiter himself classified petitioner's case as "a complaint for damages, blacklisting and watchlisting (pending inquiry) for gross negligence resulting in the death of complainant's husband, Capt. Virgilio Tolosa."[15]

We stress that the case does not involve the adjudication of a labor dispute, but the recovery of damages based on a quasi delict. The jurisdiction of labor tribunals is limited to disputes arising from employer-employee relations, as we ruled in *Georg Grotjahn GMBH & Co. v. Isnani*:[16]

"Not every dispute between an employer and employee involves matters that only labor arbiters and the NLRC can resolve in the exercise of their adjudicatory or quasi-judicial powers. The jurisdiction of labor arbiters and the NLRC under Article 217 of the Labor Code is limited to disputes arising from an employer-employee relationship which can only be resolved by reference to the Labor Code, other labor statutes, or their collective bargaining agreement."[17]

The pivotal question is whether the Labor Code has any relevance to the relief sought by petitioner. From her paper, it is evident that the primary reliefs she seeks are as follows: (a) loss of earning capacity denominated therein as "actual damages" or "lost income" and (b) blacklisting. The loss she claims does not refer to the actual earnings of the deceased, but to his earning capacity based on a life expectancy of 65 years. This amount is recoverable if the action is based on a quasi delict as provided for in Article 2206 of the Civil Code,[18] but not in the Labor Code.

While it is true that labor arbiters and the NLRC have jurisdiction to award not only reliefs provided by labor laws, but also damages governed by the Civil Code,[19] these reliefs must still be based on an action that has a reasonable causal connection with the Labor Code, other labor statutes, or collective bargaining agreements.[20]

The central issue is determined essentially from the relief sought in the complaint. In *San Miguel Corporation v. NLRC*,[21] this Court held:

"It is the character of the *principal relief* sought that appears essential in this connection. Where such *principal relief* is to be granted under labor legislation or a collective bargaining agreement, the case should fall within the jurisdiction of the Labor Arbiter and the NLRC, even

though a claim for damages might be asserted as an incident to such claim."[22]

The labor arbiter found private respondents to be grossly negligent. He ruled that Captain Tolosa, who died at age 58, could expect to live up to 65 years and to have an earning capacity of US$176,400.

It must be noted that a worker's loss of earning capacity and blacklisting are not to be equated with wages, overtime compensation or separation pay, and other labor benefits that are generally cognized in labor disputes. The loss of earning capacity is a relief or claim resulting from a quasi delict or a similar cause within the realm of civil law.

"Claims for damages under paragraph 4 of Article 217 must have a reasonable causal connection with any of the claims provided for in the article in order to be cognizable by the labor arbiter. Only if there is such a connection with the other claims can the claim for damages be considered as arising from employer-employee relations."[23] In the present case, petitioner's claim for damages is not related to any other claim under Article 217, other labor statutes, or collective bargaining agreements.

Petitioner cannot anchor her claim for damages to Article 161 of the Labor Code, which does not grant or specify a claim or relief. This provision is only a safety and health standard under Book IV of the same Code. The enforcement of this labor standard rests with the labor secretary.[24] Thus, claims for an employer's violation thereof are beyond the jurisdiction of the labor arbiter. In other words, petitioner cannot enforce the labor standard provided for in Article 161 by suing for damages before the labor arbiter.

It is not the NLRC but the regular courts that have jurisdiction over actions for damages, in which the employer-employee relation is merely incidental, and in which the cause of action proceeds from a different source of obligation such as a tort.[25] Since petitioner's claim for damages is predicated on a quasi delict or tort that has no reasonable causal connection with any of the claims provided for in Article 217, other labor statutes, or collective bargaining agreements, jurisdiction over the action lies with the regular courts[26] — not with the NLRC or the labor arbiters.

### Second Issue:
### *Finality of the Monetary Award*

Petitioner contends that the labor arbiter's monetary award has already reached finality, since private respondents were not able to file a timely appeal before the NLRC.

This argument cannot be passed upon in this appeal, because it was not raised in the tribunals *a quo*. Well-settled is the rule that issues not raised below cannot be raised for the first time on appeal. Thus, points of law, theories, and arguments not brought to the attention of the Court of Appeals need not — and ordinarily will not — be considered by this Court.[27] Petitioner's allegation cannot be accepted by this Court on its face; to do so would be tantamount to a denial of respondents' right to due process.[28]

Furthermore, whether respondents were able to appeal on time is a question of fact that cannot be entertained in a petition for review under Rule 45 of the Rules of Court. In general,

Received   09-10-03   04:48pm       From-305 666 4470           To-THE HUGGETT LAWFIRM   Page 14

the jurisdiction of this Court in cases brought before it from the Court of Appeals is limited to a review of errors of law allegedly committed by the court a quo.[29]

**WHEREFORE,** the Petition is hereby *DENIED,* and the assailed Decision and Resolution *AFFIRMED.* Costs against petitioner.

**SO ORDERED.**

*Puno, (Chairman), Sandoval-Gutierrez, Corona,* and *Carpio-Morales, JJ.,* concur.

---

[1] Penned by Justice Mercedes Gozo-Dadole, with the concurrence of Justices Fermin A. Martin Jr. (Division chairman) and Portia Aliño-Hormachuelos (member); rollo, pp. 8-20.

[2] Id., p. 22.

[3] Id., p. 19.

[4] CA Decision, pp. 1-3; id., pp. 8-13.

[5] This case was deemed submitted for resolution on September 12, 2002, upon receipt by this Court of the Memorandum for private respondents, signed by Atty. Dante H. Cortez. Filed earlier on August 9, 2002 was the Memorandum for petitioner, signed by Attys. Rodelle B. Bolante and Gener C. Sansaet of Sycip Salazar Hernandez & Gatmaitan.

[6] Petitioner's Memorandum dated August 9, 2002, p. 5; rollo, p. 197; original in upper case.

[7] Article 217 of the Labor Code as amended reads:

"ART. 217. JURISDICTION OF LABOR ARBITERS AND THE COMMISSION.

(a)    Except as otherwise provided under this Code the Labor Arbiters shall have original and exclusive jurisdiction to hear and decide, within thirty (30) calendar days after the submission of the case by the parties for decision without extension, even in the absence of stenographic notes, the following cases involving all workers, whether agricultural or non-agricultural:

Unfair labor practice cases;

Termination disputes;

If accompanied with a claim for reinstatement, those cases that workers may file involving wages, rates of pay, hours of work and other terms and conditions of employment;

Claims for actual, moral, exemplary and other forms of damages arising from employer-employee relations;

Cases arising from any violation of Article 264 of this Code, including questions involving the legality of strikes and lockouts; and

Except claims for Employees Compensation, Social Security, Medicare and maternity benefits, all other claims, arising from employer-employee relations, including those of persons in domestic or household service, involving an amount exceeding five thousand pesos (P5,000.00) regardless of whether accompanied with a claim for reinstatement.

b)    The Commission shall have exclusive appellate jurisdiction over all cases decided by Labor Arbiters.

c)    Cases arising from the interpretation of collective bargaining agreements and those arising from the interpretation or enforcement of company personnel policies shall be disposed of by the Labor Arbiter by referring the same to the grievance machinery and voluntary arbitration as may be provided in said agreements."

... vs ..... : 149578 : April 10, 2003 : J. Panganiban : Third Division

[8] 319 SCRA 704, December 3, 1999.

[9] See Petitioner's Memorandum, pp. 8-9; rollo, pp. 200-201.

[10] Article 2176 of the Civil Code reads:

"Art. 2176. Whoever by act or omission causes damage to another, there being fault or negligence, is obliged to pay for the damage done. Such fault or negligence, if there is no pre-existing contractual relation between the parties, is called quasi-delict and is governed by the provisions of this Chapter."

[11] Manila Hotel Corp v. National Labor Relations Commission, 343 SCRA 1, October 13, 2000; Citibank, N.A. v. Court of Appeals, 359 Phil. 719, November 27, 1998; San Miguel Corp. v. National Labor Relations Commission, GR No. 108001, 325 Phil. 401, March 15, 1996.

[12] Complaint/Position Paper dated August 23, 1993, p. 7; CA rollo, p. 47.

[13] Id., pp. 7 & 47.

[14] Id., pp. 9 & 50.

[15] Decision dated July 8, 1997, p. 1; CA rollo, p. 13.

[16] 235 SCRA 218, August 10, 1994.

[17] Id., p. 221, per Puno, J.

[18] Article 2202 of the Civil Code reads:

"Art. 2202. In crimes and quasi-delicts, the defendants shall be liable for all damages which are the natural and probable consequences of the act or omission complained of. It is not necessary that such damages have been foreseen or could have reasonably been foreseen by the defendant.

[19] Bañez v. Valdevilla, 331 SCRA 584, May 9, 2000.

[20] Georg Grotjahn GMBH & Co. v. Isnani, supra; San Miguel Corporation v. Etcuban, supra.

[21] 161 SCRA 719, May 31, 1988.

[22] Id., p. 730, per Feliciano, J.

[23] Dai-Chi Electronics Manufacturing Corp. v. Villarama Jr., 238 SCRA 267, November 21, 1994, per Quiason, J.

[24] Article 162 of the Labor Code as amended provides:

"ART. 162. SAFETY AND HEALTH STANDARDS

"The Secretary of Labor shall, by appropriate orders, set and enforce mandatory occupational safety and health standards to eliminate or reduce occupational safety and health hazards in all workplaces and institute new, and update existing, programs to ensure safe and healthful working conditions in all places of employment."

[25] Bañez v. Valdevilla, supra.

[26] Georg Grotjahn GMBH & Co. v. Isnani, supra; San Miguel Corporation v. Etcuban, supra.

[27] Hufana v. Genato, GR No. 141209, 365 SCRA 384, September 17, 2001; Mendoza v. Court of Appeals, GR

No. 116215, 274 SCRA 527, June 20, 1997.

[25] *Mendoza v. Court of Appeals*, supra.

[26] Ibid.

Received   08-10-03   04:48pm        From-308 688 4470           To-THE HUGGETT LAWFIRM    Page  17