FILED

DEC 16 2003

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

| | |
|---|---|
| RIZALYN BAUTISTA, etc., et al. | CASE NO.:03-21642-CIV-SEITZ/BANDSTRA |
| PAUL PERALTA | CASE NO.: 03-21643-CIV-SEITZ/BANDSTRA |
| RAYMOND LOVINO | CASE NO.: 03-21644-CIV-SEITZ/BANDSTRA |
| RONALDO MARCELINO | CASE NO.: 03-21645-CIV-SEITZ/BANDSTRA |
| ROLANDO TEJERO | CASE NO.: 03-21646-CIV-SEITZ/BANDSTRA |
| ABDI COMEDIA | CASE NO.: 03-21647-CIV-SEITZ/BANDSTRA |
| CRISTINA L. VALENZUELA, etc., et al. | CASE NO.: 03-21648-CIV-SEITZ/BANDSTRA |
| MARILEN S. BERNAL, etc., et al. | CASE NO.: 03-21649-CIV-SEITZ/BANDSTRA |
| WILLY I. VILLANEUVA, etc., et al. | CASE NO.: 03-21650-CIV-SEITZ/BANDSTRA |
| MARCIA GRACIA L. ROSAL, etc., et al. | CASE NO.: 03-21651-CIV-SEITZ/BANDSTRA |

        Plaintiffs,

v.

STAR CRUISES and NORWEGIAN
CRUISE LINE, LTD.,

        Defendants.
_____/

## DEFENDANT'S MOTION FOR SANCTIONS FOR VIOLATION OF THIS COURT'S SEPTEMBER 10, 2003, MEDIATION ORDER

        Defendant, Norwegian Cruise Line ("NCL"), by and through undersigned counsel, hereby files this Motion for Sanctions for violation of this Court's September 10, 2003, Mediation Order and in support thereof states:

        1.      On September 10, 2003, this Court entered an Order for Expedited Mediation.  See September 10, 2003, Order attached hereto as Exhibit A.  Therein, this Court ordered an expedited mediation and further ordered that  "[a]ll discussions, representations and statements made at the expedited mediation conference shall be confidential and privileged."  See id. at ¶ 6.

**MASE & GASSENHEIMER, P.A.**
**80 SW Eighth Street, Suite 2700, Miami, Florida  33130 (305) 377-3770**

2.      In addition, it was stated explicitly that "[t]he Court may impose sanctions against parties and/or counsel who do not comply with the attendance or settlement authority requirements herein or who otherwise violate the terms of this Order." <u>See id.</u> at ¶ 8.

3.      The expedited mediation conference was held on September 29, 2003 and continued through September 30, 2003.   Although both sides engaged in lengthy settlement discussions, no settlement was reached at the mediation.

4.      Notwithstanding this Court's Order directing that all communications made at the mediation remain confidential and privileged, Plaintiff's counsel, William Huggett, disclosed to the media a monetary figure that the Defendant had allegedly offered to the Plaintiffs, at the mediation, to settle the lawsuit. This disclosure, first reported by the AP wire service, was most recently carried by The Bradenton Herald on November 26, 2003. Specifically, the article reported and printed that "Huggett said Norwegian had offered $11 million to settle lawsuits filed by 10 victims to avoid a potential U.S. court decision against cruise lines." <u>Families of Killed Cruise Ship Sailors Sue For Donated Money</u>, The Bradenton Herald, Nov. 26, 2003 attached hereto as Exhibit B.[1]

---

[1]   Notably, Huggett's interview with the AP Wire is not the first breach of confidentiality of the mediation order by the Plaintiffs or Plaintiffs' counsel.  On October 16, 2003, in a Sun-Sentinel Article, the Plaintiffs disclosed that they "turned down an $8.5 million settlement offer from Norwegian Cruise Line."   <u>See</u> <u>SS Norway Victims, Widows Rejected $8.5 Million Settlement</u>, Noaki Schwartz, Sun-Sentinel, Oct. 16, 2003 attached hereto as Exhibit C.

MASE & GASSENHEIMER, P.A.
80 SW Eighth Street, Suite 2700, Miami, Florida  33130 (305) 377-3770

5.      It is clear that Plaintiffs' counsel and Plaintiffs willfully and deliberately violated this Court's Order by disclosing confidential and privileged communications from the mediation conference to the media.  This violation is inexcusable and should subject Mr. Huggett to the severest of sanctions, including but not limited to a monetary sanction, disqualification of Mr. Huggett from practicing before the Southern District of Florida and disqualification of Mr. Huggett and his firm from any further representation of the Plaintiffs in this matter.[2]

## MEMORANDUM OF LAW

Federal Courts have the inherent power to impose appropriate sanctions against attorneys for failure to comply with court orders.  See Carlucci v. Piper Aircraft Corp., Inc., 775 F.2d 1440 (11th Cir. 1985). These sanctions include assessment of attorneys' fees and costs, monetary penalties and disqualification of counsel.  See Burden v. Yates, 644 F.2d 503 (5th Cir. Unit B 1981).  In Kleiner v. The First Nat'l Bank of Atlanta, 751 F.2d 1193 (11th Cir. 1985), the Eleventh Circuit affirmed the disqualification of the defendant's counsel after its attorneys violated a court order that prohibited informal contact with plaintiff class members. Not only were the attorneys disqualified from further representation in the case, a fine of $50,000 was imposed against each attorney and attorneys' fees and costs were levied against the defendant bank.

---

[2]   Huggett's ethical behavior in this case has been an issue on two separate prior occasions with regard to his misrepresenting the law to the Court.  This latest misstep, however, is much more egregious.  First, the two articles support this Court's belief that Huggett is more concerned about the money in this case than his clients' best interests and display Huggett's willingness to use his clients as conduit for himself in the media and his own readiness to undermine the integrity of the mediation process.

As a sanction, disqualification of counsel is subject to a two-part test. First, there must be "at least a reasonable possibility that some specifically identifiable impropriety did occur." Woods v. Covington County Bank, 537 F.2d 804, 813 (5th Cir. 1976). Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case." Id. In the case at bar, Plaintiffs' counsel unequivocally violated this Court's Order by disclosing confidential and privileged communication from the mediation conference to the media. See Affidavit of Robyn Lustgarten, Esq. attached hereto as Exhibit D. Mr. Huggett's statement to the media is clearly an "identifiable impropriety." In addition, the violation of this Court's Order and the egregious and prejudicial consequences to the Defendant therefrom merits a finding that the "likelihood of public suspicion" outweighs the "social interest" to be served by Mr. Huggett's continued participation in this case.

Certainly, Mr. Huggett's disclosure of the Defendants' alleged last offer of settlement to the media is enormously prejudicial and its damage cannot be undone. Should this case ever be tried to a jury, there now exist issues of a tainted jury pool due to Mr. Huggett's statement, leaving NCL unable to have the claim heard by unbiased jurors. Moreover, due to the disclosure, there are the obvious repercussions of a juror having knowledge of confidential settlement discussions, which include a juror having a preconceived notion of the Defendant's liability due to its willingness, during the mediation conference, to offer the Plaintiffs a substantial monetary sum to settle this case.

Even more important than the prejudice to NCL, however, is that the integrity of the mediation process has been undermined through the actions of Huggett and his clients. Quite simply, mediation fails if courts cannot vigilantly protect the process and

guarantee confidentiality.   If parties feel that the courts cannot safeguard the confidentiality of the process, then parties will be constrained from making their best offer to settle a case at mediation.  Without sanctions to enforce the mediation order, the ability of the Court to utilize mediation as a tool to resolve cases is harmed and the fundamental fairness of the process is eroded.

Confidentiality of mediation is vital to entice the litigant to settle a case.  It is widely recognized and has been discussed by numerous legal scholars that:

> Confidentiality lies at the heart of the mediation process. Mediation would not be nearly as effective if the parties were not assured their discussions would remain private ....  It is therefore essential to the success of the process that parties freely disclose information relating to the dispute.
>
> Beyond its trust-facilitating function, the existence of confidentiality in mediation also lures parties to choose mediation over litigation. Parties often prefer to "keep their dispute out of the public eye." In many cases, the threat of media coverage and bad public relations can be a major concern.[3] Confidentiality, especially of any settlement agreement, can be a powerful mechanism to address the "slippery slope" fears of oft-sued defendants such as the media and large employers. Without confidentiality, these defendants may opt to avoid settling cases for fear that a landslide of additional lawsuits will follow.

Pamela A. Kentra, Alternative Dispute Resolution Symposium: Hear No Evil, See No Evil, Speak No Evil: The Intolerable Conflict for Attorney-Mediators Between the Duty to Maintain Mediation Confidentiality and the Duty to Report Fellow Attorney Misconduct, 1997 B.Y.U.L.Rev. 715, 722-23 (1997).

In mediation, confidentiality is necessary to assure candid participation in the process itself and to allow the mediator to work actively to facilitate the parties' attempt

---

[3]   Certainly as this Court is well aware, there has been considerable media coverage of the facts, which give rise to this lawsuit. Given the underlying nature of this incident, that is to be expected. Unfortunately, Huggett's willful disregard of this Court's Order precipitated additional adverse media

to reach a solution. The serious breaches of confidentiality by Huggett and his clients have undermined the process and run afoul of this Court's Order. As gatekeepers of the mediation process, the courts must ensure that this mainstay in the ability to settle cases is protected and that parties adhere to the tenets of the process. Huggett's blatant disregard of this Court's Order is worthy of this Court's most severe sanctions, including stiff monetary penalties and disqualification of him as well as his firm from any further representation in this matter.

This is not the first instance of Huggett disrespecting this Court. Early on in the case he contended in a pleading that a CFR cited by the Defendants did not exist. When Defendants filed the CFR and his associate Jay Wingate, Esq. was questioned about it in open court, he offered no explanation for the "error." In connection with Defendants' Motion to Compel Arbitration, the copies of the Philippine opinion <u>Tolosa</u>, filed by Huggett, were missing a critical page. When Defendants brought this matter to the attention of the court, Huggett offered no explanation for the "error." Here Huggett's violation of this Court's Order is unmistakably intentional. A court's excusing of mistakes is appropriate and understandable. A court's overlooking "good faith errors" is equally appropriate. But a court faced with a lawyer who has demonstrated a pattern of misconduct and who willfully and contumaciously defies an order of the court, is duty bound to act in order to preserve and protect its own authority and the integrity of the judicial process.

---

coverage, which has prejudiced NCL. It is for precisely this reason, among others, that this Court must vigilantly protect confidentiality in the mediation process.

CASE NO.: 03-21642-03-21651CIV-SEITZ/BANDSTRA

CONCLUSION

Based on the foregoing, Defendant NCL respectfully requests this Court to enter

sanctions specifically requested above and to grant all further relief that the Court deems

just and proper.

Respectfully submitted,

MASE & GASSENHEIMER, P.A.
Attorneys for Defendant
80 Southwest Eighth Street, Suite 2700
Miami, Florida 33130
Telephone No.: (305) 377-3770
Telefax No.: (305) 377-0080

By _____
CURTIS J. MASE
Florida Bar No. 478083
ROBYN LUSTGARTEN
Florida Bar No. 0227640

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was

furnished via Facsimile and by U.S. mail on this 16 day of December, 2003, to all

parties listed on the attached list.

By _____
Curtis J. Mase

CASE NO.: 03-21642-03-21651CIV-SEITZ/BANDSTRA

# SERVICE LIST
### (ATTORNEYS FOR PLAINTIFF)

William T. Huggett, Esq.                    Facsimile: (305) 539-0533
The Huggett Law Firm
66 W. Flagler Street
Suite 400
Miami, Florida  33130

Elizabeth K. Russo, Esq.                    Facsimile: (305) 666-4477
Russo Appellate Firm
6101 S.W. 76th Street
Miami, Florida  33143

Harley S. Tropin, Esq.                 Facsimile: (305) 372-3508
Kozyak Tropin & Throckmorton
200 S. Biscayne Blvd., Suite 2800
Miami, Florida  33131

Charles L. Lipcon, Esq.                    Facsimile: (305) 373-6204
Lipcon, Margulies & Alsina
2 South Biscayne Blvd.
Suite 2480
Miami, Florida  33131

16438/157306

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| RIZALYN BAUTISTA, etc., et al. | CASE NO. 03-21642-CIV-SEITZ/BANDSTRA |
| PAUL PERALTA | CASE NO. 03-21643-CIV-SEITZ/BANDSTRA |
| RAYMOND LOVINO | CASE NO. 03-21644-CIV-SEITZ/BANDSTRA |
| RONALDO MARCELINO | CASE NO. 03-21645-CIV-SEITZ/BANDSTRA |
| ROLANDO TEJERO | CASE NO. 03-21646-CIV-SEITZ/BANDSTRA |
| ABDI COMEDIA | CASE NO. 03-21647-CIV-SEITZ/BANDSTRA |
| CRISTINA L. VALENZUELA, etc., et al. | CASE NO. 03-21648-CIV-SEITZ/BANDSTRA |
| MARILEN S. BERNAL, etc., et al. | CASE NO. 03-21649-CIV-SEITZ/BANDSTRA |
| WILLY I. VILLANUEVA, etc., et al. | CASE NO. 03-21650-CIV-SEITZ/BANDSTRA |
| MARIA GARCIA L. ROSAL, etc., et al. | CASE NO. 03-21651-CIV-SEITZ/BANDSTRA |

Plaintiffs,

v.

STAR CRUISES and NORWEGIAN
CRUISE LINE, LTD.,

Defendants.

FILED by _____ D.C.

SEP 1 0 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.- MIAMI

---

## ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER FOR EXPEDITED MEDIATION

THIS MATTER is before the Court on Plaintiffs' Motion for Order for Expedited Mediation, filed on September 3, 2003 [DE-56]. In its September 2, 2003 Order [DE-57], this Court encouraged the parties "to make every good faith effort in the coming weeks to resolve this matter in as fair, expeditious and cost-effective a manner as possible," and advised the parties that "the Court stands ready to assist the parties in any capacity in order to achieve this result, including by ordering an expedited mediation." On September 3, 2003, Plaintiffs filed a Motion for an Order for Expedited Mediation [DE-56], advising the Court that counsel for the parties were conferring in an effort to agree on a mediator. Defendants later joined in Plaintiffs' request for an expedited mediation by filing their Response in Agreement With Plaintiffs' Motion for Order for Expedited Mediation [DE-58].

Page 1 of 3





The Court commends the parties for their efforts to consider the merits of the case and to explore mediation. Accordingly, it is hereby

ORDERED that:

(1) Plaintiffs' Unopposed Motion for Order for Expedited Mediation is GRANTED;

(2) The parties shall have until **September 15, 2003** to agree upon a mediator and to advise the Court of its selection. If the parties are unable to agree upon a mediator, the Court will select a name from the List of Certified Mediators maintained on the website of the United States District Court for the Southern District of Florida. Based on its initial review of that list, the Court would consider selecting either Carol Cope, Murray H. Dubbin, Karen Evans, Theodore (Ted) Klein, Richard C. Milstein, or Martin A. Soll. The parties should jointly advise the Court if any of these proposed candidates should be eliminated from consideration;

(3) Counsel for the parties shall agree on a mutually convenient date, time and place for the expedited mediation. Thereafter, Plaintiffs' counsel, with the agreement of defense counsel, shall complete an Order Scheduling Expedited Mediation, in the form set forth in Local Rule 16.2.H, and submit it to the Court for entry by **September 17, 2003**;

(4) The expedited mediation shall be completed no later than **October 1, 2003**;

(5) Except as provided under Local Rule 16.2.E for public-sector entities, the appearance of counsel and each party or representatives of each party with full authority to enter into a full and complete compromise and settlement is mandatory. Appearance shall be in person; telephonic appearance is prohibited. If insurance is involved, an adjustor with authority up to the policy limits or the most recent demand, whichever is lower, shall attend;

(6) All discussions, representations and statements made at the expedited mediation conference shall be confidential and privileged;

(7) At least three days prior to the expedited mediation date, all parties shall present to the mediator a brief written summary of the case identifying the issues to be resolved. Copies of these summaries shall be served on all other parties;

(8) The Court may impose sanctions against parties and/or counsel who do not comply with the attendance or settlement authority requirements herein or who otherwise violate the terms of this Order. The mediator shall report non-attendance and may recommend imposition of sanctions by the Court for non-attendance;

(9) The mediator shall be compensated in accordance with the standing Order of the Court entered pursuant to Rule 16.2.B.6, or on such basis as may be agreed to in writing by the parties and the mediator selected by the parties. The cost of the expedited mediation shall be shared equally by the parties unless otherwise ordered by the Court. All payments shall be remitted to the mediator within 30 days of the date of the bill;

(10) If a full or partial settlement is reached in this case, counsel shall promptly notify the Court of the settlement in accordance with Local Rule 16.2.F, by the filing of a notice of settlement signed by counsel of record within 24 hours of the expedited mediation conference. Thereafter, the parties shall submit an appropriate pleading concluding the case.

DONE and ORDERED in Miami, Florida, this _10_ day of September, 2003.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:

Magistrate Judge Ted E. Bandstra
William T. Huggett, Esq. (fax: 305-539-0533)
Charles L. Lipcon, Esq. (fax: 305-373-6204)
Curtis J. Mase, Esq. (fax: 305-377-0080)
Elizabeth K. Russo, Esq. (fax: 305-666-4470)
Harley S. Tropin, Esq. (fax: 305-372-3508)





NORTH WEST
CRUISESHIP
ASSOCIATION

## Subscribe

Fill out the form below to
receive E-clips

**Email:**

**First Name:**

**Last Name:**

**Organization:**

**Title:**

( SUBMIT )

### Families of killed cruise ship sailors sue for donated money

By AP Staff
The Bradenton Herald
November 26, 2003

The families of Filipino sailors killed in a boiler explosion on the cruise ship Norway are suing the ship's owner for charitable donations collected for the victims but not given to them.

Norwegian Cruise Line said it had collected $350,000 two months after the explosion, which left eight crew members dead and injured 18 others when the ship was docked in Miami on May 25.

But William Huggett, representing dead and injured crewmen, said Wednesday that families who filed wrongful death and damage suits "have not received one penny."

He sued Tuesday in state court for a share of the donated money, which he said largely came from fellow employees.

Norwegian attorney Curtis Mase said Tuesday that it was like suing United Way for a portion of its donations and that it wasn't up to Huggett to decide how to spend the money. The cruise line said last summer that a board was created to decide how to distribute the donations, and scholarships and vacations would probably be funded.

The Miami-based cruise line used its own money to pay crew members' funeral expenses and fly relatives of hospitalized workers to Miami in the days after the shipboard blast.

Huggett claims Norwegian is withholding the donations in an attempt to financially squeeze the victims' families into settlements that would kill a test case to determine the legal rights of injured Philippine sailors.

Crew members are appealing a decision throwing their lawsuits out of U.S. courts and sending them to the Philippines for arbitration.

Huggett said Norwegian had offered $11 million to settle lawsuits filed by 10 victims to avoid a potential U.S. court decision against cruise lines.

Printer-Friendly Format



EXHIBIT
B

# Sun-Sentinel☺.com

**SOUTH FLORIDA'S LATEST NEWS**

▸ Please register or login   ▸ Home Delivery   **SEARCH**

**CLASSIFIED**
▸ Jobs ▸ Cars ▸ Homes
▸ Place a classified ad

**LOCAL NEWS**
**INSIDE NEWS**

Nation/World
South Florida
Cuba
State legislature
Obituaries
Traffic
Lottery results
Education
Columnists
Photo/video galleries
Consumer news
Condo Law
News quiz
News by e-mail

**COMMUNITY INFO**

Property Records
Immigration
Multicultural Directory
Next Generation

**CHANNELS**

**NEWS**
South Florida
Nation/World
Cuba
Columns
Education
Lotto
Obituaries

**WEATHER**
Hurricane
Web cam

**SPORTS**
Dolphins
Marlins
Heat
Panthers
High school
College
Golf
Outdoors

**BUSINESS**
Local stocks

**ENTERTAINMENT**
Movies
Restaurants
Festivals
Music
TV
Stage
Attractions
Nightlife
Contests

**CLASSIFIED**
Jobs
Homes
Apartments

## *SS Norway* victims, widows rejected $8.5 million settleme

By Noaki Schwartz
Miami Bureau
Posted October 16 2003

MIAMI -- Filipino victims of a cruise ship explosion said they turned down an $8.5 million settlement offer from Norwegian Cruise Line, a number that mocks them now that a federal judge has ruled they must take their case back to the Philippines.

Law in that country caps awards in the deaths of overseas workers at $50,000, and while the cruise line may pay out more, there is no guarantee.

✉ Email s
🖨 Print st



The company is not commenting. Norwegian Attorney Curtis Mase could not be reached for comment, and William Huggett, who represents crew members injured and women widowed in the blast, said the talks between the two sides are confidential.

On May 25, a boiler exploded on the SS Norway while it was docked in Miami, killing eight men and injuring more than a dozen others. Filipino workers and relatives of the dead filed 10 lawsuits that landed in federal court. U.S. District Court Judge Patricia Seitz ruled Tuesday that U.S. courts were not the place to deal with the lawsuits. They must be arbitrated in the Philippines, she said, in compliance with the government contract all the workers signed in Manila.

At the end of September, before issuing any ruling, Seitz had directed attorneys for the cruise line and for the widows and workers to try to reach a settlement out of court. Those talks broke down, the widows said Wednesday, when Norwegian set its final offer at $8.5 million and their attorney would not go below $13.7 million.

Had they accepted Norwegian's offer, legal experts estimate each family could have gotten about $500,000 -- 10 times the amount



EXHIBIT
C

Cars
Personals
Place a classified ad

**SHOPPING**
Advertisers
Newspaper ads
Furniture Row

**EDITORIALS/LETTERS**
Chan Lowe cartoons

**THE EDGE**
Multimedia games and
graphics.

**HEALTH**

**TRAVEL**

**FEATURES/LIFESTYLE**
Food
Home & Garden
Books

**COMMUNITY**
Calendar

**TRAFFIC**
Broward/Dade
Palm Beach
Maps
Directions

**CORRECTIONS**

**OTHER SERVICES**
Archives
Customer service
News by e-mail

they expect from the Filipino government with its cap on awards.

Instead, they had put their hopes in the American court system.

### Worried widows

Corazon Tejero's husband, Rolando, was the last of the eight to die from burns suffered during the blast. She had hoped money from the lawsuit would give her and her 12-year-old son a new start. In the five months since the explosion, Tejero has been unable to find work in Manila. She is staying with friends and earning what amounts to $50 a month from harvests of the two rice fields she owns.

On Wednesday, she and some of the other widows who have grown close since the blast were just hearing about Seitz's decision.

"Why? Why? Oh my God!" Tejero said. "How can I survive? How can we start a new life if we only get a small amount of money? It's not the money, but I need to move on."

Jennifer Paneguiton, who would have been married by now if her fiancé hadn't died, says she is scared.

"If the lawsuit will be held in the Philippines, we can't have justice for him," she said.

The women and the injured workers say they are trying not to second-guess the potentially costly decision to turn down Norwegian's offer. Their attorney says he is optimistic about appealing Seitz's decision to the 11th Circuit Court of Appeals in Atlanta.

"She'll either go down in flames or be sustained," Huggett said. "To have a chance to change the law and allow an entire nation to have access to our courts ... that's exciting."

### Another case

Huggett said Seitz overlooked a 2003 case in which the same appeals court overturned a lower court decision. The appeals court said the families of workers who died in 1998 when a Miami Beach company's ship sank could pursue their case in the United States. The foreign crew of the Fantome also signed contracts that required them to litigate grievances or injuries before courts in their home country.

Robert Jarvis, a maritime professor at Nova Southeastern Law Center who used to represent ship owners, was not so optimistic. "Litigation is litigation, arbitration is arbitration," he said. "If that's what he's hanging his hat on, he should go home now."

Seitz cited several factors in her ruling including that the United States and Philippines are signatories of a treaty requiring countries to respect each other's arbitration provisions. She also

mentioned a 2002 ruling by the 5th Circuit Court of Appeals that sent a case similar to those connected to the SS Norway back to the Philippines.

In that case, a Filipino worker injured aboard a chemical ship sued the ship's owner in New Orleans. A federal judge there ruled that under the terms of the Filipino government's labor contract, the case had to be arbitrated before a labor board in the Philippines. A three-judge panel for the appeals court agreed, as did the full court and the U.S. Supreme Court.

Bruce McAllister, an admiralty lawyer in Palm Beach who used to work with Seitz, was not so quick to shoot down Huggett's strategy. He thinks the two aren't that different.

"Who could be more deserving of protection than a foreign seaman in a U.S. port who has got no one else to look after his interests?" said McAllister, who was the acting administrator of the U.S. Maritime Administration during the 1980s. "There's every reason to extend protection of U.S. law to him, because after all, he's serving primarily U.S. customers who pay their dollars to an overseas company and in whose service they lost their lives."

Noaki Schwartz can be reached at nschwartz@sun-sentinel.com or 305-810-5004.

*Copyright © 2003, South Florida Sun-Sentinel*

**Sun-Sentinel.com**    Questions or comments? | Paid archives | Start a newspaper subscription | How to advertise | Privac
Copyright 2003, Sun-Sentinel Co. & South Florida Interactive, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| RIZALYN BAUTISTA, etc., et al. | CASE NO.: 03-21642-CIV-SEITZ/BANDSTRA |
| PAUL PERALTA | CASE NO.: 03-21643-CIV-SEITZ/BANDSTRA |
| RAYMOND LOVINO | CASE NO.: 03-21644-CIV-SEITZ/BANDSTRA |
| RONALDO MARCELINO | CASE NO.: 03-21645-CIV-SEITZ/BANDSTRA |
| ROLANDO TEJERO | CASE NO.: 03-21646-CIV-SEITZ/BANDSTRA |
| ABDI COMEDIA | CASE NO.: 03-21647-CIV-SEITZ/BANDSTRA |
| CRISTINA L. VALENZUELA, etc., et al. | CASE NO.: 03-21648-CIV-SEITZ/BANDSTRA |
| MARILEN S. BERNAL, etc., et al. | CASE NO.: 03-21649-CIV-SEITZ/BANDSTRA |
| WILLY I. VILLANEUVA, etc., et al. | CASE NO.: 03-21650-CIV-SEITZ/BANDSTRA |
| MARCIA GRACIA L. ROSAL, etc., et al. | CASE NO.: 03-21651-CIV-SEITZ/BANDSTRA |

     Plaintiffs,

v.

STAR CRUISES and NORWEGIAN
CRUISE LINE, LTD.,

     Defendants.
_____/

## AFFIDAVIT OF ROBYN E. LUSTGARTEN

| | |
|---|---|
| STATE OF FLORIDA | ) |
| | ) SS: |
| COUNTY OF DADE | ) |

BEFORE ME, the undersigned authority personally appeared, Robyn E. Lustgarten, who being first duly sworn, deposes and says:

1. My name is Robyn E. Lustgarten and I am an associate attorney at the Law Firm of Mase & Gassenheimer, P.A.

2. I was assigned to research the contents of the November 26, 2003, article written by the AP Wire, which serves as the basis for Defendant's Motion for Sanctions for Plaintiffs' Violation of this Court's September 10, 2003, order expediting mediation. Specifically, I was



EXHIBIT
D

charged with the responsibility of determining whether the statement, "Huggett said Norwegian had offered $11 million to settle lawsuits filed by 10 victims to avoid a potential U.S. court decision against cruise lines," found in the article entitled "Families of Killed Cruise Ship Sailors Sue For Donated Money," in The Bradenton Herald on November 26, 2003, was a direct quote from Plaintiff's counsel William Huggett.

3. Through my research, I discovered that story originated out of the AP Bureau in Miami, Florida. When I contacted the AP Bureau in Miami, I was told that reporter Kathy Wilson authored the article.

4. On December 8, 2003, I called reporter Kathy Wilson and I personally spoke to her about the article. She informed me that, indeed, the statement that "Norwegian offered 11 million dollars to settle the claims" was a direct quote from Mr. Huggett, himself. She stated that Mr. Huggett told her this during an interview she conducted with him regarding his representation of the Filipino crew injured during an incident aboard the *S/S Norway* on May 25, 2003.

FURTHER AFFIANT SAYETH NAUGHT.

ROBERT E. LUSTGARTEN

SWORN TO and SUBSCRIBED before me, this 16th day of December, 2003 by Robyn E. Lustgarten, who is personally known to me or who has produced _____ as identification.

Notary Public, State of Florida

Print Name: LAURA M. POSTMAN

#158038

My Commission Expires:



Laura M. Postman
My Commission DD236130
Expires July 29, 2007