UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

Case No. 03 - 21642 CIV SEITZ / O'SULLIVAN

RIZALYN BAUTISTA, *et al.*,

    Plaintiffs,
vs.

STAR CRUISES LIMITED and
NORWEGIAN CRUISE LINE LIMITED,

    Defendants.
_____/

PLAINTIFFS' NOTICE OF CLARIFICATION and
MOTION FOR RECONSIDERATION

    COME NOW the Plaintiffs RIZALYN BAUTISTA, *et al.*, by and through undersigned counsel and, file this, their Notice of Clarification, and respectfully request this Honorable Court also consider this Motion for Reconsideration of the prior Order Denying Relief from Prior Order and Denying Motion to Supplement or Amend Complaint ("Order"), D.E. 228, and state:

**CLARIFICATION**

1.   Plaintiffs respectfully clarify an important matter which they hope will demonstrate why this Court should reconsider its prior Order: NORWEGIAN CRUISE LINE LIMITED's ("NCL") conviction resulted from criminal law enforcement by the U.S. Coast Guard Investigative Service ("CGIS"), *not* the civil transportation safety investigation of the National Transportation Safety Board ("NTSB"). The Court's Order (and the Sanctions Order, D.E. 229) appears founded upon the Plaintiffs' knowledge of the NTSB's safety investigation well before both the settlement of the Plaintiffs' claims and NCL's conviction. However, the NTSB's investigation did not lead to NCL's conviction;[1]

---

[1]   Clarification is provided as the Court's analysis in both Orders contain the same language, with the Denial Order, p. 4, and the Sanctions Order, p. 4, setting forth:

"Immediately after the explosion, **the National Transportation Safety Board (NTSB) began an investigation into the cause of the explosion**. On May 2, 2008, a one count criminal information was filed against NCL, alleging that NCL operated a vessel in a grossly negligent manner in violation of 46 U.S.C. §

Page 1 of 7

      rather, it was the CGIS' investigation and the enforcement of U.S. criminal law that resulted in NCL's conviction.

2. Indeed, the NTSB has no criminal investigative authority. Its report, D.E. 205-10, p. 3, plainly states "the [NTSB] investigated the *Norway* accident under the authority of the Independent Safety Board Act of 1974 and according to Safety Board rules." The Independent Safety Board Act of 1974, at 49 U.S.C. § 1131 (a)(2)(A) – (B), conveys *no* criminal investigative authority. No matter what conclusion NTSB's investigation reached, it had no jurisdiction to determine criminal liability.

3. In contrast, the CGIS' Investigative Service has criminal investigative authority. Consolidated Reply, D.E. 206, n. 8. ("[the CGIS'] authority is instead derived from Title 14 U.S. Code, and who have arrest powers and investigate criminal activities.").

4. NCL's conviction resulted from the CGIS' investigation, not the NTSB's investigation.

5. The unrebutted record evidence is Plaintiffs were unaware of the CGIS' criminal investigation at all times, including when they settled their claims against NCL:

> [N]or were we ever aware that the U.S. Coast Guard had mounted a criminal investigation. We were all told and led to believe there was only a routine safety investigation in order to discover the cause of the explosion. The [NTSB] never sent us copies of their report. Joint Declaration, D.E. 205-02, p. 2.

Further, Plaintiffs did not learn of NCL's conviction when it happened, but only after the fact, with revelation of the CGIS investigation occurring in July, 2008, only *after* Plaintiffs' counsel spoke with the Assistant U.S. Attorney handling the prosecution. Declaration of Ross B. Toyne, D.E. ---, ¶ 4 (b). The CGIS investigation was unknown to

---

    2302(b)." (emphasis added)

With regards to the Denial Order, the analysis continues:

"Plaintiffs seek leave to file supplemental claims **based on the NTSB investigation of the explosion, the subsequent criminal information**, and NCL's guilty plea." Denial Order, p. 5. (emphasis added)

"[I]n their reply, footnote 14, Plaintiffs quote a blog posting dated December 5, 2007 regarding the NTSB investigation into the explosion. Thus, **Plaintiffs' implied claim that it did not know of the NTSB investigation until the criminal information was filed appears questionable**." Denial Order, n. 14. (emphasis added)

"Further, Plaintiffs have not shown that they justifiably relied on Defendants' alleged representation that the explosion was an accident **or that they were not negligent in failing to discover the NTSB** and other investigations into the explosion." Denial Order, pp. 10-11. (emphasis added)

all parties except NCL, and presumably STAR. Plaintiffs' counsel attempted to obtain the CGIS' investigative file for months prior to filing the <u>Omnibus Motion</u> so as to have more information, *see* D.E. 205-8 and 9, but to no avail. On the anniversary of the conviction (not of Plaintiffs learning of the CGIS investigation), Plaintiffs sought relief.

6. NCL admits no one had knowledge of a pending criminal case when the cases settled, D.E. 205-13, p. 29-30:

> THE COURT: Let me ask you all this. When you settled this case --
> MR. MASE: Yes, sir.
> THE COURT: -- were you thinking about the criminal case and restitution?
> MR. MASE: Of course not, Your Honor. There was no criminal case, Judge.

7. The unrebutted record evidence, however, is NCL was completely aware of the CGIS' criminal investigation. <u>Omnibus Motion</u>, at p. 6-7:

> [W]ithin a week of the explosion, the United States opened a criminal investigation. And in fact the day of the explosion, federal criminal investigators were aboard that ship. The company was aware of it because they specifically asked that they be excluded from certain meetings, and the Coast Guard investigative service was excluded thereafter . . . The claimants have pointed out that they were unaware, and in any settlement discussions it never came up that the company may have been severely negligent, the history of the boilers, knowledge of the company and others was not something disclosed and they were unaware of criminal conduct. Assistant U.S. Attorney Thomas Watts-Fitzgerald. D.E. 205-13, p. 56-57.

8. Prior to filing this action, the Plaintiffs attempted to obtain the CGIS' investigative file, but to no avail. The Plaintiffs never said – nor did they intend to imply – that they did not know about the NTSB's routine safety investigation. The Plaintiffs above <u>Clarification</u>, their declarations, NCL's own admission and the Assistant U.S. Attorney's statements, <u>Omnibus Motion</u>, at p. 6-7 and D.E. 205-13, p. 56-57, all show the Plaintiffs were unaware of the CGIS' criminal investigation into NCL's behavior and had no way to know of the criminal origin of their injuries when they settled their claims. This clarification hopefully also responds to the Court's inquiry in Note 10 of the <u>Order</u> as to why the Plaintiffs waited so long to request relief.

## **MOTION FOR RECONSIDERATION**

9. Based upon this <u>Clarification</u>, several conclusions should, respectfully, be reconsidered with regard to the decision to:

   a) disallow amendment as to NCL and STAR CRUISES, LTD. ("STAR"),

      b)     disallow supplementation for newly created and discovered statutory causes of action, against NCL and STAR, and

      c)     not extend the applicable law to find there were extraordinary circumstances meriting relief under Rule 60 (b)(6).

## APPLICABLE STANDARD

10.     The relevant standard for reconsideration is found in the previously filed <u>Motion for Reconsideration of Order Granting Motion for Sanctions</u> [D.E. 232], with reliance in particular upon "the need to correct clear error or prevent manifest injustice." *Ortiz v. Celebrity Cruises Inc.*, 2009 WL 3413880, *1 (S.D. Fla., Oct. 22, 2009).

## RECONSIDERATION OF RELEASE ANALYSIS

11.     Based on an apprehension that the NTSB investigation was what led to NCL's conviction, the Court *correctly* held the Plaintiffs failed to demonstrate any justifiable reliance, or that under their releases would not be enforced. <u>Order</u>, at pp. 10-11.

12.     Plaintiffs submit that the above <u>Clarification</u> as to which investigation led to NCL's criminal conviction and, further, the timing of the Plaintiffs learning of the CGIS' investigation shows neither the Plaintiffs nor the Defendants intended for the releases to settle the criminal liability that resulted from the CGIS' investigation.

13.     Given this <u>Clarification</u>, the Court should reevaluate the Plaintiffs' preliminary evidentiary allegations, which show: i) the Plaintiffs lacked knowledge of the CGIS criminal investigation when they settled their cases and signed the releases, and ii) there was an actionable misrepresentation by NCL in concealing the CGIS criminal investigation and affirmatively calling the explosion an accident. Based on this reevaluation, the Court should then determine whether to allow amendment or supplementation. This should yield the result of *allowing* amendment or supplementation. The undisclosed criminal activity was not capable of being released, as it was completely outside the parties' intention to do so. <u>Omnibus Reply</u>, D.E. 206, p. 17. To hold the releases preclude both amendment and supplementation to assert criminally derived claims is an unintended and unexpected "legal effect of the release," <u>Order</u>, at 10, *citing Defiguieiredo v. Publix Super Markets, Inc.*, 648 So. 2d 1256, 1257 (Fla. 4th DCA 1995), as the <u>Clarification</u> shows the Plaintiffs, *and the Defendants*, had no intention of releasing criminal behavior, only civil claims capable of being regulated by

contract. Amendment and supplementation to assert criminally derived claims is warranted, especially as the Plaintiffs had no duty to investigate what NCL knew or did not know, justifiably relying upon NCL's representation the explosion was an accident. Omnibus Reply, D.E. 206, p. 6-21.

14. Plaintiffs submit that another consequence of the Court equating the Plaintiffs' knowledge of the NTSB investigation with knowledge of NCL's criminal behavior in relation to the explosion is that the Court precluded the filing of amended and supplemental claims.

15. The anticipated order of litigation in a case involving criminal behavior would be: i) crime, ii) injury, iii) civil suit, iv) investigation and indictment, v) resolution of criminal action, vi) criminal restitution and, finally, vii) resolution of civil action.

16. In this case, the order was reversed due to i) the victim's lack of knowledge of the CGIS criminal investigation, and ii) NCL's failure to disclose it.

17. Can a criminal not disclose the pendency of a criminal investigation, compel arbitration under an illegal and void contract, settle the civil claims against it, plead guilty to their crime and then bar subsequent civil actions by asserting the settlement and release?

18. That is the procedural posture of this case and it is a case of first impression, both factually and legally.

19. Plaintiffs submit that:
    a) there was a duty to disclose the CGIS investigation, Omnibus Reply, D.E. 206, p. 6-21;
    b) the contracts' object, the hiring of crew to operate an unreasonably dangerous vessel which was substantially certain to result in injury or death, was in violation of applicable statutes and regulations, and thus illegal, *Dickson v. Uhlmann Grain Co.,* 288 U.S. 188, 197-8 (1933); *Harris v. Runnels*, 53 U.S. 79, 83 (1851) ("Contracts in violation of statutes are void; and they are so whether the consideration to be performed or the act to be done be a violation of the statute.");
    c) had these litigants had any inkling of illegal behavior, a stay would have been requested pending the criminal investigation's outcome; and, finally,
    d) even if the cases had been compelled to arbitration, the arbitable (now settled) portions of the Plaintiffs claims would have been severed from the non-arbitable

portions, *Dean Witter Reynolds, Inc. v. Byrd*, 740 U.S. 213, 217 (1985) ("[T]he Arbitration Act requires district courts to compel arbitration of pendent arbitable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."), and proceeded to a judicial resolution.

20. Respectfully, in light of the unique and unprecedented factual and legal issues presented by this case, the Court should reconsider its prior Order.

## WHY THIS FORUM?

21. Finally, the Plaintiffs would explain the Omnibus Motion was filed here because this is where the explosion and criminal behavior occurred, where the relevant failure to disclose occurred, and because, based on settlement, the arbitration proceeding had merged into the settlement and was closed. "When fairly arrived at and properly entered into, [settlements] are generally viewed as binding, final, and as conclusive of rights as a judgment." *Thomas v. State of La.*, 534 F.2d 613, 615 (5th Cir. 1976). *See also*, *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967) ("[A]n agreement of the parties settling a disputed liability is as conclusive of their rights as a judgment would be if it had been litigated instead of compremised."); *Tambly v. River Bend Marine, Inc*., 837 F.2d 447, 448 (11th Cir. 1988) (*quoting Sunshine Utilities Equip., Inc. v. Treasure Coast Utilitites, Inc.*, 421 So. 2d 1096, 1097 (Fla. 4th DCA 1982)). It was not Plaintiffs' intent to avoid their contractual obligations. If the Court allows their action to proceed, the primary relief these Plaintiffs seek will be through supplemental claims, especially through their VWPA rights.

## CONCLUSION

22. Undersigned counsel respectfully request this Court allow them to submit memorandum on any issue the Court deems relevant, it being their desire that the Court be fully apprised of the applicable law and facts in rendering its decision. An injustice (Plaintiffs assert a manifest one) was worked upon the men who were killed and burned, as well as upon their families. The Court's prior refusal to grant Plaintiffs any relief is understandable and justified when viewed from the perspective that the publically available NTSB report was equivalent to the CGIS criminal investigation. But it is not, and it was that crucial fact - the Defendant knew a crime had been committed, yet kept

the CGIS investigation secret in order to quickly silence its victims' protests - that, respectfully, warrants reconsideration of the Court's prior Order.

WHEREFORE, Plaintiffs RIZALYN BAUTISTA, *et al.*, hereby pray that this Court reconsider its prior Order based upon this Clarification and Motion for Reconsideration and allow these Plaintiffs to petition this Honorable Court for the damages they sustained as a result of the Defendant's criminal conduct, along with such other relief deemed appropriate by this Honorable Court.

Respectfully submitted, this 24th day of March, 2010, in Miami, Florida.

| Toyne & Mayo, P.A. | Nicolas G. Sakellis, P.A. |
|---|---|
| /s/ Ross B. Toyne | /s/ Nicolas G. Sakellis |
| _____ | _____ |
| By:   Ross B. Toyne, Esq. | By: Nicolas G. Sakellis, Esq. |
| Florida Bar Number 57071 | Florida Bar Number 939269 |
| Chase Bank Building | 44 West Flagler Street, Suite 750 |
| 150 S.E. 2nd Avenue, Suite 1025 | Miami, FL 33130 |
| Miami, FL 33131-1577 | Tel  305-577-3341  Fax  305-577-3341 |
| 305-377-1910 Tel   305-377-1915 Fax | nsakellis@att.net |
| rbtoyne@passengerlaw.com | |

### CERTIFICATE OF SERVICE

I hereby certify that on the date hereof, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Ross B. Toyne
Ross B. Toyne

M Clarification or Reconsideration 02.doc